**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ACCOUNTABILITY NOW USA,

       *Plaintiff*,

    v.

KEVIN GRIESS, *et al.*,

       *Defendants*.

No. 26-cv-1385 (RDM)

**<u>PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION</u>**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................... 1

FACTS .................................................................................................................... 3

ARGUMENT ........................................................................................................... 7

I.      Plaintiff Is Likely To Succeed On the Merits Of Its Claim. ............................... 7

      A.   *Plaintiff has standing to pursue its First Amendment pre-enforcement challenge.* ..... 7

      B.   *Plaintiff's signs are protected under the First Amendment.* ...................................... 8

II.     Plaintiff Will Suffer Irreparable Harm Without a Preliminary Injunction. ..................... 12

III.    The Public Interest and Balance of Equities Weigh in Plaintiff's Favor. ....................... 13

CONCLUSION ........................................................................................................ 13

## TABLE OF AUTHORITIES

**Cases**

*Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*,
121 F.4th 1314 (D.C. Cir. 2024) ............................................................................... 7

*Associated Press v. Budowich*,
780 F. Supp. 3d 32 (D.D.C. 2025) ............................................................................ 1

*Associated Press v. Budowich*,
No. 25-5109 (D.C. Cir. argued Nov. 24, 2025) ......................................................... 1

*Boos v. Barry,*
485 U.S. 312 (1988) ................................................................................................. 13

*Changji Esquel Textile Co. Ltd. v. Raimondo*,
40 F.4th 716 (D.C. Cir. 2022) ................................................................................... 7

*Cohen v. California*,
403 U.S. 15 (1971) ....................................................................................... 10, 11, 12

*Common Cause v. Biden*,
909 F. Supp. 2d 9, 18 (D.D.C. 2012) ........................................................................ 7

*Common Cause v. Biden*,
748 F.3d 1280 (D.C. Cir. 2014) ................................................................................ 7

*Connick v. Myers,*
461 U.S. 138 (1983) ................................................................................................... 8

*Conserve Sw. Utah v. U.S. Dep't of the Interior*,
2026 WL 569034 (D.D.C. Mar. 1, 2026) .................................................................. 7

*Doe v. Trump*,
No. 16-cv-7673 (S.D.N.Y. filed Sept. 30, 2016),
available at https://www.documentcloud.org/documents/3130729-DOE-V-TRUMP/ ............. 4

*DSE, Inc. v. United States*,
169 F.3d 21 (D.C. Cir. 1999) ................................................................................... 14

*Elrod v. Burns*,
427 U.S. 347 (1976) ................................................................................................. 12

*Endocrine Soc'y v. Fed. Trade Comm'n*,
2026 WL 1257289 (D.D.C. May 7, 2026) ................................................................ 2

*\*Erznoznik v. City of Jacksonville*,
422 U.S. 205 (1975) ..................................................................................... 10, 11, 12

*Freedberg v. U.S. Dep't of Just.*,
703 F. Supp. 107 (D.D.C. 1988) .............................................................................. 10

*Huffman v. United States*,
502 F.2d 419 (D.C. Cir. 1974) ................................................................................... 9

*J.G.G. v. Trump*,
  2025 WL 1577811 (D.D.C. June 4, 2025) ................................................................ 14

*J.G.G. v. Trump*,
  2025 WL 2317650 (D.C. Cir. Aug. 8, 2025)............................................................. 14

*Kelly v. Hegseth*,
  2026 WL 391777 (D.D.C. Feb. 12, 2026)............................................................. 2, 8

*Kelly v. Hegseth*,
  No. 26-5070 (argued May 7, 2026) ..................................................................... 2, 8

*Khalil v. Trump*,
  784 F. Supp. 3d 705 (D.N.J. 2025)......................................................................... 2

*Khalil v. President, United States*,
  164 F.4th 259 (3rd Cir. 2026)................................................................................. 2

*L.C. v. Trump*,
  2026 WL 1329750 (D.D.C. May 13, 2026) ........................................................... 13

*League of Women Voters of U.S. v. Newby*,
  838 F.3d 1 (D.C. Cir. 2016) .................................................................................. 13

*Mahmoud v. Taylor*,
  606 U.S. 522 (2025) ......................................................................................... 7, 12

*Media Matters for Am. v. Paxton*,
  138 F.4th 563 (D.C. Cir. 2025) ....................................................................... 12, 13

*Media Matters for Am. v. Fed. Trade Comm'n*,
  805 F. Supp. 3d 105 (D.D.C. 2025) ........................................................................ 2

*Media Matters for Am. v. Fed. Trade Comm'n*,
  No. 25-5302, 2026 WL 1354245 (D.C. Cir. May 4, 2026)...................................... 2

*\*Miller v. California*,
  413 U.S. 15 (1973) ............................................................................................ 9, 10

*Monitor Patriot Co. v. Roy*,
  401 U.S. 265 (1971) ................................................................................................ 9

*Nat'l Public Radio, Inc. v. Trump*,
  2026 WL 877434 (D.D.C. Mar. 31, 2026)............................................................... 2

*Nat'l Treasury Emps. Union v. United States*,
  927 F.2d 1253 (D.C. Cir. 1991) ............................................................................ 12

*New York Times Co. v. Dep't of Defense,*
  2026 WL 788689 (D.D.C. Mar. 20, 2026)............................................................... 1

*New York Times Co. v. Dep't of Defense,*
    No. 26-5113 (D.C. Cir. filed Apr. 10, 2026) ................................................................. 1

*New York Times Co. v. Sullivan,*
    376 U.S. 254 (1964) .................................................................................................... 9

*Perkins Coie LLP v. U.S. Dep't of Justice,*
    783 F. Supp. 3d 105 (D.D.C. 2025) ............................................................................ 2

*Perkins Coie LLP v. U.S. Dep't of Justice,*
    No. 25-5241 (D.C. Cir. argued May 14, 2026) ........................................................... 2

*Pursuing Am.'s Greatness v. Fed. Election Comm'n,*
    831 F.3d 500 (D.C. Cir. 2016) ................................................................................... 13

*R.I.L-R v. Johnson,*
    80 F. Supp. 3d 164 (D.D.C. 2015) ............................................................................. 13

*Rankin v. McPherson,*
    483 U.S. 378 (1987) .................................................................................................... 9

*Roth v. United States,*
    354 U.S. 476 (1957) .................................................................................................. 10

*\*Snyder v. Phelps,*
    562 U.S. 443 (2011) ......................................................................................... 8, 11, 13

*Steffel v. Thompson,*
    415 U.S. 452 (1974) .................................................................................................... 8

*\*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) ................................................................................................. 7, 8

*Susman Godfrey LLP v. Exec. Off. of President,*
    789 F. Supp. 3d 15 (D.D.C. 2025) ............................................................................ 13

*Susman Godfrey LLP v. Exec. Off. of President,*
    No. 25-5310 (D.C. Cir. argued May 14, 2026) ......................................................... 13

*Trump v. Dow Jones & Co., Inc.,*
    No. 25-cv-23229 (S.D. Fla. filed July 18, 2025) ........................................................ 3

*Trump v. New York Times Company,*
     No. 25-cv-2487 (M.D. Fla. filed Sept. 15, 2025). ...................................................... 3

*Woodhull Freedom Found. v. United States,*
    948 F.3d 363 (D.C. Cir. 2020) .................................................................................... 7

*Zaid v. Executive Office of the President,*
    815 F.Supp.3d 113 (D.D.C. 2025) .............................................................................. 2

*Zaid v. Executive Office of the President*,
No. 26-5009 (D.C. Cir. argued May 14, 2026) .......................................................................... 2

**Other Authorities**

BrieAnna J. Frank, *National Park Service faces free speech lawsuit over anti-Trump signs*,
USA TODAY (Apr. 23, 2026),
https://www.usatoday.com/story/news/nation/2026/04/23/national-park-service-violated-free-speech-lawsuit-trump-signs/89741004007/ [https://perma.cc/9SKA-KFQ5].......................... 11

Charlie Savage, *Trump Baselessly Claims He 'Took the Freedom of Speech Away' From Flag Burners*,
N.Y. TIMES (Oct. 9, 2025), https://www.nytimes.com/2025/10/09/us/politics/trump-freedom-of-speech-flag-burning.html [https://perma.cc/CW6B-ZABT] ................................................... 3

Chris Hacker, Elahe Izadi & Emily Yahr, *Trump tried to silence late-night hosts. They're mocking him even more*,
THE WASH. POST (May 21, 2026),
https://www.washingtonpost.com/entertainment/tv/2026/05/21/trump-keeps-targeting-late-night-tv-hosts-keep-pushing-back/ [https://perma.cc/JQ7Q-J2H5] ......................................... 2

Doug Burgum, Secretary's Order No. 3440, U.S. Dep't of the Interior (Aug. 25, 2025),
https://www.doi.gov/document-library/secretary-order/so-3440-realignment-supervision-chiefunited-states-park-police [https://perma.cc/7U3H-TYG7] ................................................ 6

*Erotic (adjective)*,
Merriam-Webster, https://www.merriam-webster.com/dictionary/erotic (last visited May 26, 2026)................................................................................................................................. 12

Joe Heim & Liam Bowman, *Park Service removes statue of Trump and Epstein from National Mall*,
THE WASH. POST (Sept. 24, 2025), https://www.washingtonpost.com/dc-md-va/2025/09/24/trump-epstein-statue-removed-dc-national-mall/ [https://perma.cc/YC4K-2PM7]............................................................................................................................... 3, 6

Marissa J. Lang, *The White House Peace Vigil, after standing for decades, is dismantled*,
THE WASH. POST (Sept. 19, 2025), https://www.washingtonpost.com/dc-md-va/2025/09/19/white-house-peace-vigil-dismantled/ [https://perma.cc/554D-2ZD2]. .......... 3, 6

Meredith Kyle, *FBI Received Rape Allegation Against Trump During Epstein Probe*,
PEOPLE MAGAZINE (Dec. 23, 2025), https://people.com/epstein-files-rape-allegation-against-trump-11875364 [https://perma.cc/9ZD8-TAVL] ............................................................... 10

*Presidential Memorandum: Rescinding Security Clearances and Access to Classified Information from Specified Individuals*,
The White House (Mar. 22, 2025), https://www.whitehouse.gov/presidential-actions/2025/03/rescinding-security-clearances-and-access-to-classified-information-from-specified-individuals/ [https://perma.cc/8YJL-GUGH]............................................................. 2

Scott Detrow, Leila Fadel & Steve Inskeep, *NPR finds DOJ withheld, removed some Epstein files related to Trump*,

NPR: TRUMP'S TERMS (Feb. 24, 2026), https://www.npr.org/2026/02/24/nx-s1-5724865/npr-finds-doj-withheld-removed-some-epstein-files-related-to-trump [https://perma.cc/G4A9-HKXD] ................................................................................................................................. 4

Stephen Fowler & Saige Miller, *Justice Department publishes some missing Epstein files related to Trump*,

NPR: ALL THINGS CONSIDERED (Mar. 6, 2026), https://www.npr.org/2026/03/05/nx-s1-5737562/justice-department-missing-epstein-files-trump [https://perma.cc/V7HM-ZFV6] ..... 4

Pursuant to Federal Rule of Civil Procedure 65, Plaintiff Accountability NOW USA moves for a preliminary injunction to prevent Defendants from revoking Plaintiff's demonstration permit or destroying its property based on its display of certain signs that it is entitled to display under the First Amendment. Defendants will oppose this motion.

**INTRODUCTION**

The First Amendment protects political speech from government suppression even when—especially when—the government dislikes its content. Plaintiff was exercising its free speech rights when it displayed two small signs at its ongoing demonstration in Washington, D.C. that called attention to alleged sexual misconduct by President Trump. One sign read "TRUMP RAPED LITTLE GIRLS," while the other read "KIDS, IF YOUR PARENTS ARE MAGA, THEY LOVE CHILD RAPISTS." The U.S. National Park Service ("NPS") labeled these signs "unprotected obscenity," demanded their removal, and threatened further action should Plaintiff refuse to comply.

Labeling critical speech as "obscenity" is the latest twist in this administration's pattern of seeking to suppress speech it dislikes. It has ejected the Associated Press from the Oval Office and Air Force One for insisting on calling the Gulf of Mexico the Gulf of Mexico.[1] It has revoked the press credentials of the Pentagon press corps for refusing to agree to print only authorized news.[2] It

---

[1] *See Associated Press v. Budowich*, 780 F. Supp. 3d 32 (D.D.C. 2025), *appeal pending*, No. 25-5109 (D.C. Cir. argued Nov. 24, 2025).

[2] *See New York Times Co. v. Dep't of Defense,* 2026 WL 788689 (D.D.C. Mar. 20, 2026), *appeal pending*, No. 26-5113 (D.C. Cir. filed Apr. 10, 2026).

1

has revoked the security clearances of whistleblowers[3] and lawyers who represent them.[4] It has

banned law firms that file unwelcome lawsuits from entering federal buildings.[5] It has cut off

funding from National Public Radio.[6] It has initiated pretextual antitrust investigations of media

outlets whose articles it dislikes[7] and of medical societies whose positions on health issues it

opposes.[8] It has sought to reduce the rank and pay of a retired naval officer who reminded

servicemembers of their legal rights and duties, and threatened him with prosecution if he

continued to speak out.[9] It has attempted to deport lawful permanent residents who advocate for

causes it opposes.[10] It has threatened to revoke the broadcast licenses of television networks who

criticize the President.[11] Last October, President Trump announced that he "took the freedom of

---

[3] *See Presidential Memorandum: Rescinding Security Clearances and Access to Classified Information from Specified Individuals*, The White House (Mar. 22, 2025), https://www.whitehouse.gov/presidential-actions/2025/03/rescinding-security-clearances-and-access-to-classified-information-from-specified-individuals/ [https://perma.cc/8YJL-GUGH] (revoking the clearance of Alexander Vindman, who blew the whistle on President Trump's July 25, 2019, telephone call with Ukrainian President Volodymyr Zelenskyy).

[4] *See id.* (revoking the clearance of Mark Zaid, who represented Col. Vindman). *See also Zaid v. Executive Office of the President*, 815 F.Supp.3d 113 (D.D.C. 2025), *appeal pending*, No. 26-5009 (D.C. Cir. argued May 14, 2026).

[5] *See*, *e.g., Perkins Coie LLP v. U.S. Dep't of Justice*, 783 F. Supp. 3d 105 (D.D.C. 2025), *appeal pending*, No. 25-5241 (D.C. Cir. argued May 14, 2026).

[6] *See Nat'l Public Radio, Inc. v. Trump*, 2026 WL 877434 (D.D.C. Mar. 31, 2026).

[7] *See Media Matters for America v. Fed. Trade Comm'n*, 805 F. Supp. 3d 105 (D.D.C. 2025), *appeal dismissed*, No. 25-5302, 2026 WL 1354245 (D.C. Cir. May 4, 2026).

[8] *See, e.g.*, *Endocrine Soc'y v. Fed. Trade Comm'n*, 2026 WL 1257289 (D.D.C. May 7, 2026).

[9] *See Kelly v. Hegseth*, 2026 WL 391777 (D.D.C. Feb. 12, 2026), *appeal pending*, No. 26-5070 (argued May 7, 2026).

[10] *See Khalil v. Trump*, 784 F. Supp. 3d 705 (D.N.J. 2025), *vacated and remanded sub nom. Khalil v. President, United States*, 164 F.4th 259 (3rd Cir. 2026).

[11] *See* Chris Hacker, Elahe Izadi & Emily Yahr, *Trump tried to silence late-night hosts. They're mocking him even more*, THE WASH. POST (May 21, 2026), https://www.washingtonpost.com/entertainment/tv/2026/05/21/trump-keeps-targeting-late-night-tv-hosts-keep-pushing-back/ [https://perma.cc/JQ7Q-J2H5] ("Brendan Carr—the Trump-selected chair of the Federal Communications Commission—suggested that ABC parent company Disney's broadcast licenses could be jeopardized: 'We can do this the easy way, or we can do this the hard way,' Carr said on a podcast.").

speech away" regarding flag burning.[12] The President has also filed extortionate defamation lawsuits against the New York Times seeking $15 billion,[13] and against the Wall Street Journal seeking $10 billion.[14] And during the past eight months, Park Police officers have dismantled peaceful demonstrations and summarily revoked demonstration permits for speech critical of the President and his administration.[15] The only thing that is obscene here, to use the term in a colloquial way, is the administration's ongoing effort to suppress unwelcome speech.

This case is yet another effort to suppress constitutionally protected speech. Plaintiff's signs do not come close to satisfying the narrow and stringent test for legal obscenity. This Court should grant Plaintiff's motion and permit Plaintiff to continue its quintessential First Amendment activities without fear of retaliation.

## **FACTS**

Plaintiff Accountability NOW USA is an unincorporated association that, together with allied groups, maintains an ongoing, permitted demonstration in Washington, D.C., to call attention to the rise of fascism in the United States and demand the impeachment of President Trump. Declaration of Anita Carey ("Carey Decl.") ¶ 2. At an NPS-administered site near the General Meade statue on the 300 block of Constitution Avenue, N.W., volunteers display signs, distribute literature containing political messages, and engage in face-to-face conversations with

---

[12] *See* Charlie Savage, *Trump Baselessly Claims He 'Took the Freedom of Speech Away' From Flag Burners*, N.Y. TIMES (Oct. 9, 2025), https://www.nytimes.com/2025/10/09/us/politics/trump-freedom-of-speech-flag-burning.html [https://perma.cc/CW6B-ZABT].

[13] *See Trump v. New York Times Company,* No. 25-cv-2487 (M.D. Fla. filed Sept. 15, 2025).

[14] *See Trump v. Dow Jones & Co., Inc*., No. 25-cv-23229 (S.D. Fla. filed July 18, 2025).

[15] *See* Marissa J. Lang, *The White House Peace Vigil, after standing for decades, is dismantled*, THE WASH. POST (Sept. 19, 2025), https://www.washingtonpost.com/dc-md-va/2025/09/19/white-house-peace-vigil-dismantled/ [https://perma.cc/554D-2ZD2]; Joe Heim & Liam Bowman, *Park Service removes statue of Trump and Epstein from National Mall*, THE WASH. POST (Sept. 24, 2025), https://www.washingtonpost.com/dc-md-va/2025/09/24/trump-epstein-statue-removed-dc-national-mall/ [https://perma.cc/YC4K-2PM7]; Declaration of Anita Carey ¶¶ 8–9.

members of the public. *Id.* ¶ 2. This demonstration has been ongoing at this site since December 12, 2025, except for a hiatus during the "Snowcrete" weather event in early 2026 and during some high winds on March 16–18. *Id.* NPS issued a permit authorizing Plaintiff to conduct its demonstration on this site on April 13, 2026, and the permit is valid through August 12, 2026. Plaintiff intends to obtain another permit when the current permit expires, at the same or another location on NPS-managed land in the District of Columbia. *Id.* ¶ 3.

On February 24, 2026, the National Public Radio ("NPR") reported that the Department of Justice ("DOJ") was withholding more than 50 pages of Federal Bureau of Investigation ("FBI") interviews with a woman who had accused Donald Trump of sexually abusing her when she was a minor.[16] DOJ released FBI summaries of three of those interviews on March 5, 2026, which described the woman's allegation that when she was between 13 and 15 years old, Jeffrey Epstein introduced her to Trump, who attempted to force her to perform oral sex on him and hit her after she bit his penis in an act of resistance.[17] President Trump has been accused of raping minors on other occasions as well, including in a 2016 lawsuit filed by a woman who alleged that Trump raped her when she was 13 years old.[18]

In response to the allegations in the NPR report, Plaintiff began displaying two signs at its

---

[16] Scott Detrow, Leila Fadel & Steve Inskeep, *NPR finds DOJ withheld, removed some Epstein files related to Trump*, NPR: TRUMP'S TERMS (Feb. 24, 2026), https://www.npr.org/2026/02/24/nx-s1-5724865/npr-finds-doj-withheld-removed-some-epstein-files-related-to-trump [https://perma.cc/G4A9-HKXD].

[17] Stephen Fowler & Saige Miller, *Justice Department publishes some missing Epstein files related to Trump*, NPR: ALL THINGS CONSIDERED (updated Mar. 6, 2026), https://www.npr.org/2026/03/05/nx-s1-5737562/justice-department-missing-epstein-files-trump [https://perma.cc/V7HM-ZFV6]. The FBI summaries are available at https://www.justice.gov/epstein/files/DataSet%2012/EFTA02858481.pdf (Aug. 22, 2019); https://www.justice.gov/epstein/files/DataSet%2012/EFTA02858491.pdf (Aug. 30, 2019); and https://www.justice.gov/epstein/files/DataSet%2012/EFTA02858495.pdf (Oct. 22, 2019).

[18] *See Doe v. Trump*, No. 16-cv-7673 (S.D.N.Y. filed Sept. 30, 2016), available at https://www.documentcloud.org/documents/3130729-DOE-V-TRUMP/.

demonstration, one reading "TRUMP RAPED LITTLE GIRLS," and the other reading "KIDS, IF YOUR PARENTS ARE MAGA THEY LOVE CHILD RAPISTS." The photographs below depict these signs as they were displayed at Plaintiff's demonstration site on April 14, 2026. Carey Decl. ¶ 4.

 

The signs have led to conversations between volunteers at Plaintiff's demonstration and members of the public about President Trump's behavior, morality, and fitness to continue in office. *Id.*

On April 14, NPS agent Marisa Richardson emailed Plaintiff stating that according to Defendant Griess, who is the Superintendent of the National Mall and Memorial Parks, Plaintiff's "first amendment permit is displaying unprotected obscenity in signs or media" and "[t]his is not protected by the first amendment and is therefore prohibited and a violation of law." *Id.* ¶ 5. Plaintiff emailed Griess seeking clarification of NPS's position, in response to which Griess stated that the signs are "deemed unprotected obscenity, which the Court has established is not protected by the First Amendment" and "[b]ecause obscenity is unlawful on federal land, we must ask that the material be removed." *Id.* ¶ 7. Griess's email further stated that NPS "may impose and enforce permit conditions to prevent unlawful conduct, including the display of obscene materials prohibited under federal law" and "[i]f a permittee chooses not to comply with a lawful direction to cease prohibited conduct, the National Park Service may take further steps as appropriate to

ensure compliance." *Id.*

Last summer, Defendant Burgum, the Secretary of the Interior, assumed direct control over the U.S. Park Police, signing an order providing that the Chief "will report to and be directly supervised by the Secretary, or his designee." He thereby removed all non-political NPS officials from any supervisory role over the Park Police.[19] Soon afterward, on September 7, 2025, the Lafayette Park Peace Vigil, which had existed for 44 years, was dismantled by the Park Police after a conservative journalist told President Trump it was "an eyesore."[20] On September 24, a gold-colored statue of President Trump and disgraced financier Jeffrey Epstein holding hands and appearing to be dancing with each other, titled "Best Friends Forever," was knocked down and damaged by Park Police, without notice, in the early morning the day after it had been erected pursuant to a valid permit.[21] On October 3, a group known as FLARE ("For Liberation And Resistance Everywhere") had its demonstration permit revoked and its tents dismantled by Park Police with no notice. Carey Decl. ¶ 9. On December 11, FLARE again had its permit revoked and its demonstration dismantled on short notice. *Id.*

Based on this recent history and Superintendent Griess's communications, Plaintiff has not displayed the signs at issue since April 14 because of its reasonable fear that its permit will be summarily revoked and/or its demonstration forcibly broken up if it continues to display these signs. Plaintiff seeks a preliminary injunction so that it can display these signs again with legal protection from these consequences.

---

[19] Doug Burgum, Secretary's Order No. 3440, U.S. Dep't of the Interior (Aug. 25, 2025), https://www.doi.gov/document-library/secretary-order/so-3440-realignment-supervision-chiefunited-states-park-police [https://perma.cc/7U3H-TYG7].
[20] Lang, *supra* note 15.
[21] Heim & Bowman, *supra* note 15.

**ARGUMENT**

To obtain a preliminary injunction, a party "must show that (1) it 'is likely to succeed on the merits'; (2) it 'is likely to suffer irreparable harm in the absence of preliminary relief'; (3) 'the balance of equities tips in [its] favor'; and (4) the issuance of a preliminary injunction 'is in the public interest.'" *Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*, 121 F.4th 1314, 1324 (D.C. Cir. 2024) (quoting *Changji Esquel Textile Co. Ltd. v. Raimondo*, 40 F.4th 716, 721 (D.C. Cir. 2022)). The last two factors, the balance of the equities and public interest, "merge when, as here, the defendant is the government." *Conserve Sw. Utah v. U.S. Dep't of the Interior*, 2026 WL 569034, at *21 (D.D.C. Mar. 1, 2026).

As set forth below, Plaintiff satisfies all four factors.

**I.      Plaintiff Is Likely To Succeed On the Merits Of Its Claim.**

**A.      *Plaintiff has standing to pursue its First Amendment pre-enforcement challenge.***

It is well settled that "when a deprivation of First Amendment rights is at stake, a plaintiff need not wait for the damage to occur before filing suit. Instead, to pursue a pre-enforcement challenge, a plaintiff must show that 'the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.'" *Mahmoud v. Taylor*, 606 U.S. 522, 559–60 (2025) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) ("*SBA List*")). "[L]ower 'courts' willingness to permit pre-enforcement review is 'at its peak' when claims are rooted in the First Amendment.'" *Woodhull Freedom Found. v. United States*, 948 F.3d 363, 371 (D.C. Cir. 2020) (cleaned up). "In assessing Plaintiff['s] standing, the Court assumes that Plaintiff[] will prevail on the merits of their constitutional claims." *Common Cause v. Biden*, 909 F. Supp. 2d 9, 18 (D.D.C. 2012), *aff'd on other grounds*, 748 F.3d 1280 (D.C. Cir. 2014).

Plaintiff is being prevented from engaging in political speech by the realistic threat that

NPS will summarily revoke Plaintiff's demonstration permit and/or dismantle its demonstration should Plaintiff redisplay its signs that NPS finds objectionable. A warning to stop an allegedly protected activity and the threat of further action if the warning is not heeded constitutes a credible threat of enforcement. *See SBA List*, 573 U.S. at 159 (describing *Steffel v. Thompson*, 415 U.S. 452 (1974), in which the Court "determined that petitioner had alleged a credible threat of enforcement: He had been warned to stop handbilling and threatened with prosecution if he disobeyed . . ."). "When an individual is subject to such a threat, an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *SBA List*, 573 U.S. at 158. Superintendent Griess made clear in his response to Plaintiff that NPS "may take further steps as appropriate to ensure compliance" if Plaintiff "chooses not to comply with a lawful direction to cease prohibited conduct." Carey Decl. ¶ 7. This is exactly the sort of threat that permits a pre-enforcement challenge.

### B. *Plaintiff's signs are protected under the First Amendment.*

Plaintiff is likely to succeed on the merits of its First Amendment claim because its signs are protected speech. The signs "lie[] at the core of First Amendment protection," which "includes speech on 'any matter of political, social, or other concern to the community' or any 'subject of general interest and of value and concern to the public.'" *Kelly v. Hegseth*, 2026 WL 391777, at *8 (D.D.C. Feb. 12, 2026) (quoting *Snyder v. Phelps*, 562 U.S. 443, 451, 453 (2011)). Indeed, "speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Snyder*, 562 U.S. at 452 (quoting *Connick v. Myers,* 461 U.S. 138, 145 (1983) (internal quotation marks omitted)).

There is no doubt that Plaintiff's signs constitute political speech. They are based on publicly reported accusations that go to the President's behavior and fitness to remain in office,

issues that are quintessential matters of public and political concern. *See Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272–74 (1971) (explaining that heightened protections for speech regarding public officials applies not only to speech regarding official conduct, but also to "anything which might touch on an official's fitness for office."). And the potentially "inappropriate or controversial character of a statement is irrelevant to the question whether it deals with a matter of public concern." *Rankin v. McPherson,* 483 U.S. 378, 381, 387 (1987) (holding that a Deputy Constable's remark, after hearing of the attempted assassination of President Reagan, "if they go for him again, I hope they get him," was protected speech). Foundational to the liberties we enjoy as Americans is "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

There is no colorable argument that the signs at issue are legally obscene, a narrow category of unprotected speech. The test for legal obscenity is stringent: speech may be regarded as legally obscene only if "the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest," "the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law," and "the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." *Miller v. California*, 413 U.S. 15, 24 (1973) (cleaned up). Plaintiff's signs do not satisfy any element of the *Miller* test.

Signs that state "Trump raped little girls" and reference "child rapists" do not appeal to prurient interests of the average person; a prurient interest in sex is generally one that is "shameful or morbid," *Huffman v. United States*, 502 F.2d 419, 423 (D.C. Cir. 1974), and at the very least,

9

"erotic," *Cohen v. California*, 403 U.S. 15, 20 (1971). These signs neither appeal to a shameful or morbid interest in sex nor are they even the slightest bit erotic; to the contrary, they simply refer by name to a criminal act that was allegedly committed by Mr. Trump years ago.

Nor do the signs "depict[] or describe[], in a patently offensive way, sexual conduct." *Miller*, 413 U.S. at 24. They do not depict or describe sexual conduct *at all* within the meaning of *Miller*, any more than Paul Robert Cohen's "Fuck the Draft" jacket depicted or described sexual conduct within the meaning of *Miller*. *See generally Cohen*, 403 U.S. 15. Mere reference to a sex act—as in Plaintiff's signs—is not the same as *depicting* or *describing* sexual conduct. "Sex and obscenity, . . . as the Supreme Court has held, are not synonymous." *Freedberg v. U.S. Dep't of Just.*, 703 F. Supp. 107, 109 n.3 (D.D.C. 1988) (citing *Roth v. United States,* 354 U.S. 476, 487 (1957)). If these signs are obscene, then so, necessarily, are all the news reports calling attention to the same alleged crimes.[22]

Finally, the signs are not obscene because they have serious political value. *Miller*, 413 U.S. at 24. As Plaintiff intended by displaying them, they have sparked conversations between its volunteers and members of the public about the President's conduct and his fitness to remain in office, which is the very topic of Plaintiff's demonstration. Accordingly, far from being obscene, Plaintiff's signs are core political speech.

If a person who encounters signs such as these finds them offensive, "the burden normally falls upon the viewer to 'avoid further bombardment of (his) sensibilities simply by averting (his) eyes.'" *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 210–11 (1975) (finding an ordinance that

---

[22] *See, e.g.,* Meredith Kyle, *FBI Received Rape Allegation Against Trump During Epstein Probe*, PEOPLE MAGAZINE (Dec. 23, 2025), https://people.com/epstein-files-rape-allegation-against-trump-11875364 [https://perma.cc/9ZD8-TAVL].

prohibited any depiction of nudity on movie theatre screens visible from public places unconstitutional). "[W]e are often 'captives' outside the sanctuary of the home and subject to objectionable speech" and "[t]he ability of government, consonant with the Constitution, to shut off discourse solely to protect others from hearing it is . . . dependent upon a showing that substantial privacy interests are being invaded in an essentially intolerable manner." *Cohen*, 403 U.S. at 21. The Court has allowed for restrictions on speech to protect "captive audience[s] . . . only sparingly," typically to prevent intrusions from unwanted speech in the privacy of the home. *Synder*, 562 U.S. at 459–60. As would be the case here, "[a]ny broader view of this authority would effectively empower a majority to silence dissidents simply as a matter of personal predilections." *Cohen*, 403 U.S. at 21. Simply put, "the Constitution does not permit government to decide which types of otherwise protected speech are sufficiently offensive to require protection for the unwilling listener or viewer." *Erznoznik*, 422 U.S. at 210.

In response to a news report on the filing of this lawsuit, an Interior Department spokesperson defended the Defendants' position by stating, "[a]s a reminder, we are approaching America's 250th and we have visitors of all ages coming to our nation's capital,"[23] thereby suggesting that Defendants may argue that Plaintiff's signs are obscene as to minors. But the fact that minors may see the signs as they walk along Constitution Avenue does not place them outside the First Amendment's protection. The Supreme Court has made it clear that "under any test of obscenity as to minors," to be obscene, the speech "'must be, in some significant way, erotic.'" *Erznoznik*, 422 U.S. at 213 n.10 (quoting *Cohen*, 403 U.S. at 20). As noted above,

---

[23] BrieAnna J. Frank, *National Park Service faces free speech lawsuit over anti-Trump signs*, USA TODAY (Apr. 23, 2026), https://www.usatoday.com/story/news/nation/2026/04/23/national-park-service-violated-free-speech-lawsuit-trump-signs/89741004007/ [https://perma.cc/9SKA-KFQ5].

11

Plaintiff's signs are not "erotic," as they do not tend to arouse sexual desire. *See Erotic (adjective)*, Merriam-Webster, https://www.merriam-webster.com/dictionary/erotic (last visited May 26, 2026) ("of, devoted to, or tending to arouse sexual love or desire"). Nor do they appeal to the prurient interests of the average minor. "Speech that is neither obscene as to youths nor subject to some other legitimate proscription cannot be suppressed solely to protect the young from ideas or images that a legislative body [or the Secretary of the Interior] thinks unsuitable for them." *Erznoznik*, 422 U.S. at 213–14.

## II.    Plaintiff Will Suffer Irreparable Harm Without a Preliminary Injunction.

Plaintiff will suffer irreparable harm in the absence of a preliminary injunction. "[T]o obtain a preliminary injunction, a party must show that [its] 'First Amendment interests are either threatened or in fact being impaired at the time relief is sought.'" *Media Matters for Am. v. Paxton*, 138 F.4th 563, 585 (D.C. Cir. 2025) (quoting *Nat'l Treasury Emps. Union v. United States*, 927 F.2d 1253, 1254–55 (D.C. Cir. 1991)). "[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Mahmoud*, 606 U.S. at 569; *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (same).

It is clear that Plaintiff's First Amendment interests are threatened. In his response to Plaintiff about the signs, Superintendent Griess deemed them "unprotected obscenity" and demanded that they be removed. Carey Decl. ¶ 7. Griess also threatened that NPS "may take further steps as appropriate to ensure compliance" if Plaintiff "chooses not to comply with a lawful direction to cease prohibited conduct." *Id.* Combined with the recent experiences of other permit holders in Washington, D.C., Plaintiff faces an imminent and realistic threat of harm in the form of revocation of its permit, dismantling of its demonstration, or other sanctions should it continue to display its signs.

**III.    The Public Interest and Balance of Equities Weigh in Plaintiff's Favor.**

If the Court finds that Plaintiff has shown a likelihood that its First Amendment rights are threatened, it follows that the balance of equities and the public interest weigh in Plaintiff's favor. "'[T]here is always a strong public interest in the exercise of free speech rights otherwise abridged by an unconstitutional' government action." *Media Matters*, 138 F.4th at 585 (quoting *Pursuing Am.'s Greatness v. Fed. Election Comm'n*, 831 F.3d 500, 511 (D.C. Cir. 2016)). Indeed, as Judge Leon noted earlier this month, "protecting the freedom of speech is 'always' in the public interest." *L.C. v. Trump*, 2026 WL 1329750, at *12 (D.D.C. May 13, 2026) (quoting *Pursuing Am.'s Greatness*, 831 F.3d at 511). Thus, "in public debate [we] must tolerate insulting, and even outrageous, speech in order to provide adequate 'breathing space' to the freedoms protected by the First Amendment." *Snyder*, 562 U.S. at 458 (quoting *Boos v. Barry*, 485 U.S. 312, 322 (1988) (alteration in original)). Conversely, "the government 'cannot suffer harm from an injunction that merely ends an unlawful practice,'" *Susman Godfrey LLP v. Exec. Off. of President*, 789 F. Supp. 3d 15, 57 (D.D.C. 2025) (quoting *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015)), *appeal pending*, No. 25-5310 (D.C. Cir. argued May 14, 2026); "[t]here is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016).

**<u>CONCLUSION</u>**

For the foregoing reasons, this Court should grant this motion and enter the attached proposed order.[24]

---

[24] Because of the concern that Defendants may revoke Plaintiff's demonstration permit without notice for some other purported reason, the attached proposed order would require Defendants to provide two business days' notice of any such revocation, thereby allowing Plaintiff to seek emergency relief if it believes the revocation is retaliatory.

May 26, 2026                              Respectfully submitted,

                                          /s/ Aditi Shah
                                          Aditi Shah (D.C. Bar No. 90033136)
                                          Laura K. Follansbee (D.C. Bar No. 1782046)
                                          Arthur B. Spitzer (D.C. Bar No. 235960)
                                          AMERICAN CIVIL LIBERTIES UNION FOUNDATION
                                             OF THE DISTRICT OF COLUMBIA
                                          529 14th Street, N.W., Suite 722
                                          Washington, D.C. 20045
                                          (202) 457-0800
                                          ashah@acludc.org
                                          lfollansbee@acludc.org
                                          aspitzer@acludc.org

                                          *Counsel for Plaintiff*[*]

---

Because the entry of an injunction will not cause any financial harm to the Defendants, the security required by Fed. R. Civ. P. 65(c) should be set at $1. *See, e.g.*, *DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999) ("The language 'in such sum as the court deems proper' [in Rule 65(c)] has been read to vest broad discretion in the district court to determine the appropriate amount of an injunction bond."); *J.G.G. v. Trump*, 2025 WL 1577811, at *83 (D.D.C. June 4, 2025), *vacated and remanded on other grounds*, 2025 WL 2317650 (D.C. Cir. Aug. 8, 2025) ("In light of the circumstances and nature of this case, [the Court] finds that a nominal amount is proper and exercises its discretion to require Plaintiffs to collectively post $1.00.").

[*] Counsel wish to express their appreciation to ACLU-D.C. paralegal Ameerah Adetoro for her assistance in the preparation of this motion.

14