**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ACCOUNTABILITY NOW USA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | No. 1:26-cv-01385 |
| KEVIN GRIESS, *et al.*, | ) | |
| | ) | Hon. Randolph D. Moss |
| Defendants | ) | |
| _____ | ) | |

**FEDERAL DEFENDANTS' RESPONSE TO PLAINTIFF'S**
**APPLICATION FOR A TEMPORARY RESTRAINING ORDER**

Freedom of speech is a cherished constitutional right that is a hallmark of our free and prosperous society. Calls and symbols for political violence are not; especially when they are directed at the President of the United States. Indeed, our "Nation undoubtedly has a valid, even an overwhelming, interest in protecting the safety of its Chief Executive and in allowing him to perform his duties without interference from threats of physical violence." *Watts v. United States*, 394 U.S. 705, 707 (1969). For this reason, the Supreme Court has recognized that "the Federal Government can criminalize only those threats of violence that are directed against the President . . . since the reasons why threats of violence are outside the First Amendment (protecting individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur) have special force when applied to the person of the President." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 388 (1992) (citing *Watts*, 394 U.S. at 707).

Tragically, the "threat environment" against the President today "is heightened, real, and dynamic." Declaration of U.S. Secret Service Deputy Director Matthew C. Quinn ¶ 7 (Ex. 1). "Acts of violence against" him "and protected sites are occurring at an ever-increasing pace," including two recent events where shots were fired within his vicinity, leaving law enforcement

1

wounded. *Id*. In this harrowing context, the statement "86-47" is understood by law enforcement and everyday Americans "as a potential call for acts of violence directed at the President." *Id*. ¶ 8. That statement—a familiar "[euphemism] for acts of physical violence"—also "can incite violence by others" to carry out those threats. *Id*. "Use of the statement '86-47' and other variations" are thus "perceived as a potential threat against the [President] and as one that could incite others to engage in an unwanted outcome against" him or others, including the Vice President. *Id*. ¶ 9.

Against this backdrop, Plaintiff applies for extraordinary relief to permit it to continue displaying a symbol calling for physical violence against the President, "86-47," close to where two recent shootings involving him occurred. This Court should deny that request.

"A temporary restraining order is 'an extraordinary remedy that should be granted only when the party seeking relief, by a clear showing, carries the burden of persuasion.'" *State v. Musk*, 769 F. Supp. 3d 1, 4 (D.D.C. 2025) (citation omitted). A party seeking such a remedy must establish (1) that it is likely to succeed on the merits, (2) that it is likely to suffer irreparable harm in the absence of such relief, and (3) that the balance of equities and public interest tip in its favor. *Id*. Plaintiff cannot meet its heavy burden on either the first or last elements.

On the merits, the First Amendment provides no protection for speech that is directed to inciting imminent lawless action and is likely to produce imminent lawless action. *See Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969); *Thompson v. Trump*, 590 F. Supp. 3d 46, 111–18 (D.D.C. 2022) (applying *Brandenburg* to find a "positive instigation of a mischievous act"). Because the evidence shows that 86-47 "can incite violence by others" in this case, the First Amendment does not protect it. Quinn Decl. ¶ 8. And Plaintiff's application does not deny that the statement "86-47" can incite imminent lawless action given the current context. That is reason enough to deny it.

Nor does the First Amendment prohibit the government from preventing true threats. In

*Virginia v. Black*, the Court concluded that the government may prevent the public from using symbols of political violence, such as a burning cross. 538 U.S. 343, 347 (2003). "The First Amendment permits restrictions upon the content of speech . . . which are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." *Id*. at 358–59 (internal quotation marks and citation omitted). "Thus, for example, a State may punish those words 'which by their very utterance . . . tend to incite an immediate breach of the peace'" or constitute a "true threat." *Id*. at 359. A "prohibition on true threats 'protects individuals from the fear of violence' and 'from the disruption that fear engenders,' in addition to protecting people 'from the possibility that the threatened violence will occur.'" *Id*. at 360 (internal brackets omitted); *accord Planned Parenthood of Columbia / Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1085 (9th Cir. 2002) (en banc) (holding that "WANTED" and "GUILTY" posters featuring abortion doctors were "true threats," even though they were not "overtly threatening," in light of recent violence involving doctors). Because the evidence shows that 86-47 can constitute a true potential threat in this case, the First Amendment does not protect it. Quinn Decl. ¶ 9.

Plaintiff contends that 86-47 is "not a threat at all." TRO App. at 2. As Plaintiff tells it, the symbol is "a call for the President's removal" and any other interpretation would be "unreasonable." *Id*. at 3. But the U.S. Secret Service—which "is charged with ensuring the safety of the nation's highest-ranking officials" and is privy to daily threats against those officials—has concluded otherwise. *See* Quinn Decl. ¶¶ 4, 7. Moreover, Plaintiff's *own source* recognizes that "86" can mean "to kill." *What does 'eighty-six' mean?* Merriam-Webster, https://perma.cc/ADD8-K4X4; *see* TRO App. at 2 (citing source). And media outlets have reported for weeks—well before Plaintiff began displaying the statement on May 12, 2026, *see* TRO App. at 3—that "86-47" can be

construed as "encourag[ing] violence against [President] Trump." Kayla Epstein & Madeline Halpert, *Comey surrenders over charge of threatening Trump's life in Instagram post*, BBC (Apr. 29, 2026), *available at* https://perma.cc/4QZU-3C39; *see also, e.g.*, Allana Durkin Richer & Eric Tucker, *Ex-FBI Director Comey indicted again, in a probe over an online post officials call a Trump threat*, AP (Apr. 28, 2026), *available at* https://perma.cc/MQQ8-N9TU (reporting that "folks associate" 86-47 with political violence). It simply strains credulity that Plaintiff—an organization dedicated to undermining the President, *see* Amended Compl. ¶ 4—is unaware of the broader context of 86-47 that can incite imminent lawless action or constitute a true threat.

Plaintiff's cases are distinguishable. In *Watts*, the Court held that a statement about putting the President in the "sights" of a rifle did not constitute a true threat because it was "expressly made conditional upon an event" that "would never occur," *i.e.*, the speaker joining the Armed Forces and obtaining a rifle. 394 U.S. at 707. It was also a joke. *Id*. In *Rankin v. McPherson*, a public employee was discharged for saying "[i]f they go for him again, I hope they get him" in response to an attempt on the life of President Reagan. 483 U.S. 378, 380 (1987). The Court analyzed that statement in the context of an employment dispute in which the words had a "negligible" effect. *Id*. at 392. Neither case dealt with the same context here in which the President faces a heightened threat environment where, given the current situation, the Secret Service has concluded that 86-47 "can incite violence" and constitute a true potential threat. Quinn Decl. ¶¶ 8–9.

Finally, the balance of equities and the public interest weigh in favor of Federal Defendants. Plaintiff mentions platitudes about equities weighing in its favor to exercise First Amendment freedoms, but the required context-dependent analysis in a First Amendment case requires much more. And a rushed restraining order here without adequate time for orderly briefing on an important issue of safety for the President of the United States is itself reason to deny the application. At all

events, it would be inequitable in a context with "ever-increasing" threats against the President to allow Plaintiff to display a symbol of political violence close to where acts of violence occurred within the past few weeks. Quinn Decl. ¶ 7. Moreover, Federal Defendants aren't totally depriving Plaintiff of its right to speak on matters of public concern. They are simply preventing it from displaying a sign with "such slight social value as a step to truth that any benefit that may be derived from [86-47] is clearly outweigh by the social interest in order" and protecting the President and his family. *Black*, 538 U.S. at 358–59.

For these reasons, this Court should deny Plaintiff's application.

Dated: May 28, 2026

Respectfully submitted,

STANLEY E. WOODWARD, JR.
D.C. Bar No. 997320
Associate Attorney General

/s/ John K. Adams
JOHN K. ADAMS
Illinois Bar No. 6323541
Deputy Associate Attorney General

DEVIN A. FROSETH
Florida Bar No. 1074655
Counsel to the Associate Attorney General

U.S. Department of Justice
950 Pennsylvania Ave., Northwest
Washington, D.C. 20530
202-514-2000
John.Adams5@usdoj.gov

*Counsel for Federal Defendants*