**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ACCOUNTABILITY NOW USA <br><br> Plaintiff, <br> v. <br><br> KEVIN GRIESS, *et al.*, <br><br> Defendants. | No. 1:26-cv-1385 (RDM) |

**PLAINTIFF'S SUPPLEMENTAL FILING**

Pursuant to the Court's order of May 28, 2026, Plaintiff hereby provides supplemental information relevant to its pending application for a temporary restraining order.

\*       \*       \*

One of Plaintiff's volunteers made videotape recordings of the two visits by U.S. Secret Service officers to Plaintiff's demonstration on May 12, 2026. The video recordings of both visits can be found at https://photos.app.goo.gl/MyS5T7g7b4JXRYmY6 .

The videos and transcripts show that Plaintiff's volunteer was happy to speak with the Secret Service officers at the first visit and to assure them that the 8647 flag stood for "[no]thing other than Trump shouldn't be in office," and that she hopes he will "live forever and rot in jail where he belongs." They also show that at the second visit, Plaintiff's volunteer reasonably declined to answer questions after being read her *Miranda* rights.

Plaintiff respectfully urges the Court to view these short video recordings as well as reading the transcripts that follow, as the recordings give a more complete impression of the atmosphere of these interactions.

\*       \*       \*

The first visit occurred at 9:49 a.m. on May 12, 2026. The transcript follows:

[Uniformed Secret Service Officers approach]

Officer:      [unintelligible over barking dog]

Volunteer:    I'm sorry?

Officer:      How are you?

Volunteer:    I'm good. I'm recording this 'cause they told me to.

Officer:      That's fine.

Volunteer:    How's it going?

Officer:      Not a problem. Just so you're aware, this is all consensual

Volunteer:    Yeah

Officer:      So at any point in time you don't have to answer any of our questions

Volunteer:    Yeah

Officer:      … we received a phone call because of the flag, in fact the 86 47 and what it can stand for.

Volunteer:    Uh-huh. I never heard of it standing for anything other than Trump shouldn't be in office.

Officer:      OK. Alright. So you have no ill-will towards …

Volunteer:    I want Trump to live forever and rot in jail where he belongs. [Laughs]

Officer:      OK. That's it. That's all, all I needed to know

Volunteer:    OK

Officer:      We just, we got a call so we just wanted to come down here …

Volunteer:    I'm sorry someone wasted your time

Officer:      Oh, you're good. You're good. It's part of our job

Volunteer:     Yup

Officer:      We just want to make sure that your First Amendment rights are protected. They were concerned, so we just want to make sure there's no ill-will.

Volunteer:    OK. Haha. Thank you so much.

Officer:      Alright. Yes ma'am.

Volunteer:    OK

Officer:        Have a good day

Volunteer:      You too.

[Officers depart]

*        *        *

The second visit occurred just 25 minutes later, at 10:14 a.m. The transcript follows:

[Plainclothes officers approach showing badge]

Volunteer:      How's it going. I'm recording.

Officer:        Yes, that's fine

Officer:        Alright, so, you don't have to talk to us. This is a free, consensual conversation. At any point you want to cut the conversation you can say it, I'm on my way. Alright?

Officer:        I'm gonna read you your rights 'cause I want you to know 'em, to be aware of it. OK. So, [reading] You must understand your rights before we ask you any questions. You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to talk to a lawyer and have him present—him or her present with you while you are being questioned. If you cannot afford to hire a lawyer one will be appointed to you—to represent you, before any questions if you wish. You can decide at any time to stop the questioning and not answer any questions or make any statements.

Volunteer:      Hey, I'm not gonna say anything else to you guys.

Officer:        That's awesome. Have a good day.

Volunteer:      You too.

[Officers depart]

Based upon these interactions, the government had no basis to believe that Plaintiff's flag represented a true threat to the life or well-being of the President.

*        *        *

At yesterday's hearing, the Court recalled a news report about the Acting Attorney General recognizing that not all uses of "8647" are criminal. The report recounted Mr. Blanche's comments on a Sunday morning television show:

3

> Asked on NBC's "Meet The Press" whether others who displayed the same numbers, or bought or sold T-shirts with the same message, would face the same prosecution, Mr. Blanche said no.
>
> The "86 47" message, Mr. Blanche said, is "posted constantly — that phrase is used constantly." He added, "Every one of those statements do not result in indictments." What makes Mr. Comey's case different, he argued, is other evidence collected, which he said he could not describe.

*See* Devlin Barrett, *Blanche Says Others Who Post '86 47' Message Won't Be Charged Like Comey* (May 3, 2026), *available at* https://www.nytimes.com/2026/05/03/us/politics/blanche-comey-indictment-seashells.html.

*   *   *

In addition to the suspicious timing of the Park Police visit at 5 a.m. on Wednesday, May 27, fourteen hours after Plaintiff filed its motion for a preliminary injunction on Tuesday, May 26, a Park Service employee visited the demonstration site on Thursday at approximately 9 a.m., before this Court's hearing on Plaintiff's TRO application. The employee took many photographs of the demonstration. This has not happened before. When Anita Carey emailed the Park Service to ask "what the purpose of the photos is, and whether any specific compliance concern prompted them today?," the Park Service representative responded that "The Superintendent asked us to conduct compliance check this morning." *See* Third Declaration of Anita Carey ¶ 3, filed herewith. Plaintiff is concerned that this action suggests that the Defendants are looking for reasons to revoke its permit in retaliation for its defense of its legal rights, and therefore respectfully requests that the Court incorporate the penultimate provision in its proposed preliminary injunction order (ECF 8-2) into any TRO order that the Court may issue, namely "that Defendants shall provide Plaintiff and its counsel with at least two full business days' notice before revoking their demonstration permit for any other purported reason." A revised proposed order is attached.

4

May 29, 2026                              Respectfully submitted,

                                         /s/ Aditi Shah
                                         Aditi Shah (D.C. Bar No. 90033136)
                                         Arthur B. Spitzer (D.C. Bar No. 235960)
                                         Laura K. Follansbee (D.C. Bar No. 1782046)
                                         AMERICAN CIVIL LIBERTIES UNION FOUNDATION
                                           OF THE DISTRICT OF COLUMBIA
                                         529 14th Street, N.W., Suite 722
                                         Washington, D.C. 20045
                                         (202) 457-0800
                                         ashah@acludc.org
                                         aspitzer@acludc.org
                                         lfollansbee@acludc.org

                                         *Counsel for Plaintiff*