**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ACCOUNTABILITY NOW USA,

    *Plaintiff*,

  v.

KEVIN GRIESS, *et al.*,

    *Defendants*.

No. 26-cv-1385 (RDM)

<u>**PLAINTIFF'S RENEWED MOTION FOR A PRELIMINARY INJUNCTION**</u>

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................... iii

INTRODUCTION ....................................................................................................... 1

FACTS AND PROCEDURAL HISTORY .................................................................. 3

I.      Plaintiff Displays Signs Alleging Sexual Misconduct by the President…………………..4

II.     Plaintiff Displays Flag with the Legend "8647" To Call for the Impeachment and Lawful

        Removal of President Trump…………………………………………………………...7

ARGUMENT................................................................................................................ 10

I.      Plaintiff Is Likely To Succeed On the Merits Of Its Claim. ............................................ 10

        A.   *Plaintiff has standing to pursue its First Amendment pre-enforcement challenge...* 10

        B.   *Plaintiff's signs are protected under the First Amendment.* ..................................... 11

        C.   *Plaintiff's flag is protected under the First Amendment* ............................................15

             1.     Plaintiff's display of the 8647 flag is not a "true threat." .........................16

             2.     Plaintiff's display of the 8647 flag does not constitute incitement….…...19

II.      Plaintiff Will Suffer Irreparable Harm Without a Preliminary Injunction. ..................... 23

III.     The Public Interest and Balance of Equities Weigh in Plaintiff's Favor. ....................... 24

IV.     Plaintiff's Requested Relief Is Appropriate and Warranted............................................ 24

CONCLUSION............................................................................................................... 25

**TABLE OF AUTHORITIES**

**Cases**                                                                            **Page(s)**

*Accountability NOW USA v. Griess*,
  2026 WL 1533402 (D.D.C. June 1, 2026) .......................................................... 8, 10, 16, 17, 19

*Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*,
  121 F.4th 1314 (D.C. Cir. 2024) ...................................................................................... 10

*Associated Press v. Budowich*,
  780 F. Supp. 3d 32 (D.D.C. 2025) ...................................................................................... 1

*Associated Press v. Budowich*,
  No. 25-5109 (D.C. Cir. argued Nov. 24, 2025).................................................................... 1

*Blassingame v. Trump*,
  87 F.4th 1 (D.C. Cir. 2023) ............................................................................................... 21

*Boos v. Barry*,
  485 U.S. 312 (1988) ......................................................................................................... 24

*Brandenburg v. Ohio*,
  395 U.S. 444 (1969) ......................................................................................................... 20

*Changji Esquel Textile Co. Ltd. v. Raimondo*,
  40 F.4th 716 (D.C. Cir. 2022) .......................................................................................... 10

*Cohen v. California*,
  403 U.S. 15 (1971) ............................................................................................... 13, 14, 15

*Common Cause v. Biden*,
  748 F.3d 1280 (D.C. Cir. 2014) ....................................................................................... 11

*Common Cause v. Biden*,
  909 F. Supp. 2d 9 (D.D.C. 2012) ..................................................................................... 11

*Connick v. Myers*,
  461 U.S. 138 (1983) ......................................................................................................... 12

*Conserve Sw. Utah v. U.S. Dep't of the Interior*,
  2026 WL 569034 (D.D.C. Mar. 1, 2026)........................................................................... 10

*Counterman v. Colorado*,
  600 U.S. 66 (2023) .............................................................................................. 16, 20, 21

*Doe v. Trump*,
  No. 16-cv-7673 (S.D.N.Y. filed Sept. 30, 2016),
  https://www.documentcloud.org/documents/3130729-DOE-V-TRUMP/................................. 5

*DSE, Inc. v. United States*,
  169 F.3d 21 (D.C. Cir. 1999) ........................................................................................... 26

*Elrod v. Burns*,
  427 U.S. 347 (1976)......................................................................................................... 23

*Endocrine Soc'y v. Fed. Trade Comm'n*,
   2026 WL 1257289 (D.D.C. May 7, 2026) ................................................................................. 2

*\*Erznoznik v. City of Jacksonville*,
   422 U.S. 205 (1975) ...................................................................................................... 14, 15

*Freedberg v. U.S. Dep't of Just.*,
   703 F. Supp. 107 (D.D.C. 1988) ............................................................................................ 13

*Grace v. Barr*,
   965 F.3d 883 (D.C. Cir. 2020) .............................................................................................. 20

*Huffman v. United States*,
   502 F.2d 419 (D.C. Cir. 1974) .............................................................................................. 13

*J.G.G. v. Trump*,
   2025 WL 1577811 (D.D.C. June 4, 2025) .............................................................................. 26

*J.G.G. v. Trump*,
   2025 WL 2317650 (D.C. Cir. Aug. 8, 2025) .......................................................................... 26

*Johnson v. United States*,
   559 U.S. 133 (2010) .............................................................................................................. 20

*Kelly v. Hegseth*,
   2026 WL 391777 (D.D.C. Feb. 12, 2026) ................................................................... 2, 11, 12

*Kelly v. Hegseth*,
   No. 26-5070 (D.D.C. argued May 7, 2026) .............................................................................. 2

*Kennedy v. Bremerton Sch. Dist.*,
   597 U.S. 507 (2022) .............................................................................................................. 20

*Khalil v. President*,
   164 F.4th 259 (3rd Cir. 2026) ................................................................................................. 2

*Khalil v. Trump*,
   784 F. Supp. 3d 705 (D.N.J. 2025) .......................................................................................... 2

*L.C. v. Trump*,
   2026 WL 1329750 (D.D.C. May 13, 2026) ............................................................................ 24

*League of Women Voters of U.S. v. Newby*,
   838 F.3d 1 (D.C. Cir. 2016) .................................................................................................. 24

*Mahmoud v. Taylor*,
   606 U.S. 522 (2025) ........................................................................................................ 10, 23

*Media Matters for Am. v. Paxton*,
   138 F.4th 563 (D.C. Cir. 2025) ....................................................................................... 23, 24

*Media Matters for America v. Fed. Trade Comm'n*,
   805 F. Supp. 3d 105 (D.D.C. 2025) ........................................................................................ 2

*Media Matters for America v. Fed. Trade Comm'n*,
No. 25-5302, 2026 WL 1354245 (D.C. Cir. May 4, 2026) ........................................ 2

*\*Miller v. California*,
413 U.S. 15 (1973) ................................................................................................ 13

*Monitor Patriot Co. v. Roy*,
401 U.S. 265 (1971) .............................................................................................. 12

*N.A.A.C.P. v. Claiborne Hardware Co.*,
458 U.S. 886 (1982) .............................................................................................. 22

*Nat'l Public Radio, Inc. v. Trump*,
2026 WL 877434 (D.D.C. Mar. 31, 2026) ............................................................... 2

*Nat'l Treasury Emps. Union v. United States*,
927 F.2d 1253 (D.C. Cir. 1991) ............................................................................. 23

*New York Times Co. v. Dep't of Defense*,
2026 WL 788689 (D.D.C. Mar. 20, 2026) ................................................................ 1

*New York Times Co. v. Dep't of Defense*,
No. 26-5113 (D.C. Cir. filed Apr. 10, 2026) ............................................................ 1

*New York Times Co. v. Sullivan*,
376 U.S. 254 (1964) .............................................................................................. 12

*Perkins Coie LLP v. U.S. Dep't of Justice*,
783 F. Supp. 3d 105 (D.D.C. 2025) ......................................................................... 2

*Perkins Coie LLP v. U.S. Dep't of Justice*,
No. 25-5241 (D.C. Cir. argued May 14, 2026) .......................................................... 2

*Pursuing Am.'s Greatness v. Fed. Election Comm'n*,
831 F.3d 500 (D.C. Cir. 2016) ............................................................................... 24

*R.I.L-R v. Johnson*,
80 F. Supp. 3d 164 (D.D.C. 2015) .......................................................................... 24

*\*Rankin v. McPherson*,
483 U.S. 378 (1987) ............................................................................... 12, 18, 19

*Roth v. United States*,
354 U.S. 476 (1957) .............................................................................................. 13

*\*Snyder v. Phelps*,
562 U.S. 443 (2011) ........................................................................................ 12, 14

*Steffel v. Thompson*,
415 U.S. 452 (1974) .............................................................................................. 11

*\*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ........................................................................................ 10, 11

*Susman Godfrey LLP v. Exec. Off. of President*,
   789 F. Supp. 3d 15 (D.D.C. 2025) ........................................................................ 24

*Susman Godfrey LLP v. Exec. Off. of President*,
   No. 25-5310 (D.C. Cir. argued May 14, 2026) .................................................... 24

*Thompson v. Trump*,
   590 F. Supp. 3d 46 (D.D.C. 2022) ........................................................................ 21

*Trump v. Dow Jones & Co., Inc.*,
   No. 25-cv-23229 (S.D. Fla. filed July 18, 2025)................................................... 3

*Trump v. New York Times Company*,
   No. 25-cv-2487 (M.D. Fla. filed Sept. 15, 2025)................................................. 3

*United States v. Syring*,
   522 F. Supp. 2d 125 (D.D.C. 2007) ...................................................................... 18

*United States v. Virginia*,
   518 U.S. 515 (1996) ............................................................................................... 20

*Virginia v. Black*,
   538 U.S. 343 (2003) ......................................................................................... 16, 19

*Watts v. United States*,
   394 U.S. 705 (1969) ......................................................................................... 16, 18

*Woodhull Freedom Found. v. United States*,
   948 F.3d 363 (D.C. Cir. 2020) ......................................................................... 10, 11

*Zaid v. Executive Office of the President*,
   815 F.Supp.3d 113 (D.D.C. 2025) ......................................................................... 2

*Zaid v. Executive Office of the President*,
   No. 26-5009 (D.C. Cir. argued May 14, 2026) ..................................................... 2

**Statutes**

**Page(s)**

18 U.S.C. § 871.................................................................................................... 9, 19

**Other Authorities**                                                                                  **Page(s)**

Brett Forrest, *Thousands of National Park Comments Contained '8647'; DOI Says Threats Won't Be Tolerated*,
   KOAA NEWS5 (June 8, 2026, at 17:44),
   https://www.koaa.com/news/local-news/thousands-of-national-park-comments-contained-8647-doi-says-threats-wont-be-tolerated [https://perma.cc/YL8P-KXLA] (last visited June 10, 2026)........................................................................................................................... 22

BrieAnna J. Frank, *National Park Service faces free speech lawsuit over anti-Trump signs*,
   USA TODAY (Apr. 23, 2026),
   https://www.usatoday.com/story/news/nation/2026/04/23/national-park-service-violated-free-

speech-lawsuit-trump-signs/89741004007/ [https://perma.cc/9SKA-KFQ5].................... 15, 18

Charlie Savage, *Trump Baselessly Claims He 'Took the Freedom of Speech Away' From Flag Burners*,
N.Y. TIMES (Oct. 9, 2025),
https://www.nytimes.com/2025/10/09/us/politics/trump-freedom-of-speech-flag-burning.html [https://perma.cc/CW6B-ZABT]...................................................................... 3

Chris Hacker, Elahe Izadi & Emily Yahr, *Trump tried to silence late-night hosts. They're mocking him even more*,
THE WASH. POST (May 21, 2026),
https://www.washingtonpost.com/entertainment/tv/2026/05/21/trump-keeps-targeting-late-night-tv-hosts-keep-pushing-back/....................................................................................... 2

Devlin Barrett, *Blanche Says Others Who Post '86 47' Message Won't Be Charged Like Comey*,
N.Y. TIMES (May 3, 2026),
https://www.nytimes.com/2026/05/03/us/politics/blanche-comey-indictment-seashells.html [https://perma.cc/C5KJ-CD67] .................................................................................. 18

Doug Burgum, Secretary's Order No. 3440,
U.S. Dep't of the Interior (Aug. 25, 2025),
https://www.doi.gov/document-library/secretary-order/so-3440-realignment-supervision-chiefunited-states-park-police [https://perma.cc/7U3H-TYG7] ................................................ 6

*Erotic (adjective)*,
Merriam-Webster, https://www.merriam-webster.com/dictionary/erotic
[https://perma.cc/JJS3-6PQ7] (last visited May 26, 2026) ...................................................... 15

Joe Heim & Liam Bowman, *Park Service removes statue of Trump and Epstein from National Mall*,
THE WASH. POST (Sept. 24, 2025),
https://www.washingtonpost.com/dc-md-va/2025/09/24/trump-epstein-statue-removed-dc-national-mall/ [https://perma.cc/YC4K-2PM7] .................................................................... 3, 6

*Kill (verb)*,
Merriam-Webster, https://www.merriam-webster.com/dictionary/kill (last visited June 10, 2026)........................................................................................................................................ 17

Marissa J. Lang, *The White House Peace Vigil, after standing for decades, is dismantled*,
THE WASH. POST (Sept. 19, 2025),
https://www.washingtonpost.com/dc-md-va/2025/09/19/white-house-peace-vigil-dismantled/ [https://perma.cc/554D-2ZD2]. .............................................................................................. 3, 6

Meredith Kyle, *FBI Received Rape Allegation Against Trump During Epstein Probe*,
PEOPLE MAGAZINE (Dec. 23, 2025),
https://people.com/epstein-files-rape-allegation-against-trump-11875364
[https://perma.cc/9ZD8-TAVL] ............................................................................................... 13

Presidential Memorandum: *Rescinding Security Clearances and Access to Classified Information from Specified Individuals*,
The White House (Mar. 22, 2025), https://www.whitehouse.gov/presidential-actions/2025/03/rescinding-security-clearances-and-access-to-classified-information-from-

specified-individuals/ [https://perma.cc/8YJL-GUGH] ............................................................ 2

Scott Detrow, Leila Fadel & Steve Inskeep, *NPR finds DOJ withheld, removed some Epstein files related to Trump*,
NPR: TRUMP'S TERMS (Feb. 24, 2026),
https://www.npr.org/2026/02/24/nx-s1-5724865/npr-finds-doj-withheld-removed-some-epstein-files-related-to-trump [https://perma.cc/G4A9-HKXD] ................................................ 4

Stephen Fowler & Saige Miller, *Justice Department publishes some missing Epstein files related to Trump*,
NPR: ALL THINGS CONSIDERED (updated Mar. 6, 2026),
https://www.npr.org/2026/03/05/nx-s1-5737562/justice-department-missing-epstein-files-trump [https://perma.cc/V7HM-ZFV6] ................................................................................. 4, 5

*What Does 'Eighty-Six' Mean?*,
Merriam-Webster, https://www.merriam-webster.com/wordplay/eighty-six-meaning-origin [https://perma.cc/3KZD-9LXL] (last visited June 10, 2026) ............................................. 16, 19

Pursuant to Federal Rule of Civil Procedure 65, Plaintiff Accountability NOW USA moves for a preliminary injunction to prevent Defendants from revoking Plaintiff's demonstration permit or destroying its property based on its display of certain signs, flags, and banners that it is entitled to display under the First Amendment. Defendants will oppose this motion.

## **INTRODUCTION**

The First Amendment protects political speech from government suppression even when—especially when—the government dislikes its content. The U.S. National Park Service ("NPS") is targeting Plaintiff for exercising its free speech rights at its ongoing demonstration in Washington, D.C., where Plaintiff displayed signs calling attention to alleged sexual misconduct by President Trump and a flag with the legend "8647" to call for President Trump's impeachment and removal from office. NPS labeled the signs calling attention to President Trump's alleged sexual misconduct "unprotected obscenity," demanded their removal, and threatened further action should Plaintiff refuse to comply. NPS also informed Plaintiff that it views "8647" as a threat against the President, told Plaintiff to take the flag down, and threatened Plaintiff that if it displays the flag again it will be a violation of Plaintiff's demonstration permit.

Labeling critical speech as "obscenity" and calls for the peaceful and lawful removal of the President a "threat" is the latest twist in this administration's pattern of seeking to suppress speech it dislikes. This administration has ejected the Associated Press from the Oval Office and Air Force One for insisting on calling the Gulf of Mexico the Gulf of Mexico.[1] It has revoked the press credentials of the Pentagon press corps for refusing to agree to print only authorized news.[2] It has

---

[1] *See Associated Press v. Budowich*, 780 F. Supp. 3d 32 (D.D.C. 2025), *appeal pending*, No. 25-5109 (D.C. Cir. argued Nov. 24, 2025).

[2] *See New York Times Co. v. Dep't of Defense,* 2026 WL 788689 (D.D.C. Mar. 20, 2026), *appeal pending*, No. 26-5113 (D.C. Cir. filed Apr. 10, 2026).

revoked the security clearances of whistleblowers[3] and lawyers who represent them.[4] It has banned

law firms that file unwelcome lawsuits from entering federal buildings.[5] It has cut off funding from

National Public Radio.[6] It has initiated pretextual antitrust investigations of media outlets whose

articles it dislikes[7] and of medical societies whose positions on health issues it opposes.[8] It has

sought to reduce the rank and pay of a retired naval officer who reminded servicemembers of their

legal rights and duties, and threatened him with prosecution if he continued to speak out.[9] It has

attempted to deport lawful permanent residents who advocate for causes it opposes.[10] It has

threatened to revoke the broadcast licenses of television networks who criticize the President.[11]

Last October, President Trump announced that he "took the freedom of speech away" regarding

---

[3] *See Presidential Memorandum: Rescinding Security Clearances and Access to Classified Information from Specified Individuals*, The White House (Mar. 22, 2025), https://www.whitehouse.gov/presidential-actions/2025/03/rescinding-security-clearances-and-access-to-classified-information-from-specified-individuals/ [https://perma.cc/8YJL-GUGH] (revoking the clearance of Alexander Vindman, who blew the whistle on President Trump's July 25, 2019, telephone call with Ukrainian President Volodymyr Zelenskyy).

[4] *See id.* (revoking the clearance of Mark Zaid, who represented Col. Vindman). *See also Zaid v. Executive Office of the President*, 815 F.Supp.3d 113 (D.D.C. 2025), *appeal pending*, No. 26-5009 (D.C. Cir. argued May 14, 2026).

[5] *See*, *e.g., Perkins Coie LLP v. U.S. Dep't of Justice*, 783 F. Supp. 3d 105 (D.D.C. 2025), *appeal pending*, No. 25-5241 (D.C. Cir. argued May 14, 2026).

[6] *See Nat'l Public Radio, Inc. v. Trump*, 2026 WL 877434 (D.D.C. Mar. 31, 2026).

[7] *See Media Matters for America v. Fed. Trade Comm'n*, 805 F. Supp. 3d 105 (D.D.C. 2025), *appeal dismissed*, No. 25-5302, 2026 WL 1354245 (D.C. Cir. May 4, 2026).

[8] *See, e.g.*, *Endocrine Soc'y v. Fed. Trade Comm'n*, 2026 WL 1257289 (D.D.C. May 7, 2026).

[9] *See Kelly v. Hegseth*, 2026 WL 391777 (D.D.C. Feb. 12, 2026), *appeal pending*, No. 26-5070 (argued May 7, 2026).

[10] *See Khalil v. Trump*, 784 F. Supp. 3d 705 (D.N.J. 2025), *vacated and remanded sub nom. Khalil v. President, United States*, 164 F.4th 259 (3rd Cir. 2026).

[11] *See* Chris Hacker, Elahe Izadi & Emily Yahr, *Trump tried to silence late-night hosts. They're mocking him even more*, THE WASH. POST (May 21, 2026), https://www.washingtonpost.com/entertainment/tv/2026/05/21/trump-keeps-targeting-late-night-tv-hosts-keep-pushing-back/ [https://perma.cc/JQ7Q-J2H5] ("Brendan Carr—the Trump-selected chair of the Federal Communications Commission—suggested that ABC parent company Disney's broadcast licenses could be jeopardized: 'We can do this the easy way, or we can do this the hard way,' Carr said on a podcast.").

flag burning.[12] The President has also filed extortionate defamation lawsuits against the New York

Times seeking $15 billion,[13] and against the Wall Street Journal seeking $10 billion.[14] And during

the past eight months, Park Police officers have dismantled peaceful demonstrations and

summarily revoked demonstration permits for speech critical of the President and his

administration.[15] The only thing that is obscene here, to use the term colloquially, is the

administration's ongoing effort to restrain unwelcome speech and its true threat against the First

Amendment.

The administration's actions here are yet another effort to suppress constitutionally

protected speech. Plaintiff's sexual assault allegation signs do not come close to satisfying the

narrow and stringent test for legal obscenity. Nor can Plaintiff's display of the 8647 flag in the

context of its peaceful demonstration reasonably be construed as a threat or an incitement of

violence against the President. This Court should grant Plaintiff's motion and permit Plaintiff to

continue its quintessential First Amendment activities without fear of retaliation.

## FACTS AND PROCEDURAL HISTORY

Plaintiff Accountability NOW USA is an unincorporated association that, together with

allied groups, maintains an ongoing, permitted demonstration in Washington, D.C., to "call

attention to the rise of fascism in the United States and demand the impeachment of President

---

[12] *See* Charlie Savage, *Trump Baselessly Claims He 'Took the Freedom of Speech Away' From Flag Burners*, N.Y. TIMES (Oct. 9, 2025), https://www.nytimes.com/2025/10/09/us/politics/trump-freedom-of-speech-flag-burning.html [https://perma.cc/CW6B-ZABT].

[13] *See Trump v. New York Times Company,* No. 25-cv-2487 (M.D. Fla. filed Sept. 15, 2025).

[14] *See Trump v. Dow Jones & Co., Inc.*, No. 25-cv-23229 (S.D. Fla. filed July 18, 2025).

[15] *See* Marissa J. Lang, *The White House Peace Vigil, after standing for decades, is dismantled*, THE WASH. POST (Sept. 19, 2025), https://www.washingtonpost.com/dc-md-va/2025/09/19/white-house-peace-vigil-dismantled/ [https://perma.cc/554D-2ZD2]; Joe Heim & Liam Bowman, *Park Service removes statue of Trump and Epstein from National Mall*, THE WASH. POST (Sept. 24, 2025), https://www.washingtonpost.com/dc-md-va/2025/09/24/trump-epstein-statue-removed-dc-national-mall/ [https://perma.cc/YC4K-2PM7]; First Declaration of Anita Carey ¶¶ 8–9.

Trump." Declaration of Anita Carey ("First Carey Decl.") ¶ 2 (ECF 8-1). At an NPS-administered site near the General Meade statue on the 300 block of Constitution Avenue, N.W., volunteers display signs, distribute literature containing political messages, and engage in face-to-face conversations with members of the public. *Id.* ¶¶ 1-2. This demonstration has been ongoing at this site since December 12, 2025, except for a hiatus during the "Snowcrete" weather event in early 2026 and during some high winds on March 16–18. *Id* ¶ 2. NPS issued a permit authorizing Plaintiff to conduct its demonstration on this site on April 13, 2026, and the permit is valid through August 12, 2026. Permit at 1 (ECF 17). The stated "Purpose" on Plaintiff's permit is "A 24/7 Vigil to Exercise Our First Amendment Rights." *Id.* Plaintiff intends to obtain another permit when the current permit expires, at the same or another location on NPS-managed land in the District of Columbia. First Carey Decl. ¶ 3.

## I.      Plaintiff Displays Signs Alleging Sexual Misconduct by the President.

On February 24, 2026, the National Public Radio ("NPR") reported that the Department of Justice ("DOJ") was withholding more than 50 pages of Federal Bureau of Investigation ("FBI") interviews with a woman who had accused Donald Trump of sexually abusing her when she was a minor.[16] DOJ released FBI summaries of three of those interviews on March 5, 2026, which described the woman's allegation that when she was between 13 and 15 years old, Jeffrey Epstein introduced her to Trump, who attempted to force her to perform oral sex on him and hit her after she bit his penis in an act of resistance.[17] President Trump has been accused of raping minors on

---

[16] Scott Detrow, Leila Fadel & Steve Inskeep, *NPR finds DOJ withheld, removed some Epstein files related to Trump*, NPR: TRUMP'S TERMS (Feb. 24, 2026), https://www.npr.org/2026/02/24/nx-s1-5724865/npr-finds-doj-withheld-removed-some-epstein-files-related-to-trump [https://perma.cc/G4A9-HKXD].

[17] Stephen Fowler & Saige Miller, *Justice Department publishes some missing Epstein files related to Trump*, NPR: ALL THINGS CONSIDERED (updated Mar. 6, 2026), https://www.npr.org/2026/03/05/nx-s1-5737562/justice-department-missing-epstein-files-trump

other occasions as well, including in a 2016 lawsuit filed by a woman who alleged that Trump raped her when she was 13 years old.[18]

In response to the allegations in the NPR report, Plaintiff began displaying two signs at its demonstration, one reading "TRUMP RAPED LITTLE GIRLS," and the other reading "KIDS, IF YOUR PARENTS ARE MAGA THEY LOVE CHILD RAPISTS." The photographs below depict these signs as they were displayed at Plaintiff's demonstration site on April 14, 2026. First Carey Decl. ¶ 4.




The signs have led to conversations between volunteers at Plaintiff's demonstration and members of the public about President Trump's behavior, morality, and fitness to continue in office. *Id.* On April 14, NPS agent Marisa Richardson emailed Plaintiff stating that according to Defendant Griess, who is the Superintendent of the National Mall and Memorial Parks, Plaintiff's "first amendment permit is displaying unprotected obscenity in signs or media" and "[t]his is not protected by the first amendment and is therefore prohibited and a violation of law." *Id.* ¶ 5.

---

[https://perma.cc/V7HM-ZFV6].    The    FBI    summaries    are    available    at https://www.justice.gov/epstein/files/DataSet%2012/EFTA02858481.pdf (Aug. 22, 2019); https://www.justice.gov/epstein/files/DataSet%2012/EFTA02858491.pdf (Aug. 30, 2019); and https://www.justice.gov/epstein/files/DataSet%2012/EFTA02858495.pdf (Oct. 22, 2019).

[18] *See Doe v. Trump*, No. 16-cv-7673 (S.D.N.Y. filed Sept. 30, 2016), available at https://www.documentcloud.org/documents/3130729-DOE-V-TRUMP/.

Plaintiff emailed Griess seeking clarification of NPS's position, in response to which Griess stated that the signs are "deemed unprotected obscenity, which the Court has established is not protected by the First Amendment" and "[b]ecause obscenity is unlawful on federal land, we must ask that the material be removed." *Id.* ¶ 7. Griess's email further stated that NPS "may impose and enforce permit conditions to prevent unlawful conduct, including the display of obscene materials prohibited under federal law" and "[i]f a permittee chooses not to comply with a lawful direction to cease prohibited conduct, the National Park Service may take further steps as appropriate to ensure compliance." *Id.*

Last summer, Defendant Burgum, the Secretary of the Interior, assumed direct control over the U.S. Park Police, signing an order providing that the Chief "will report to and be directly supervised by the Secretary, or his designee." He thereby removed all non-political NPS officials from any supervisory role over the Park Police.[19] Soon afterward, on September 7, 2025, the Lafayette Park Peace Vigil, which had existed for 44 years, was dismantled by the Park Police after a conservative journalist told President Trump it was "an eyesore."[20] On September 24, a gold-colored statue of President Trump and disgraced financier Jeffrey Epstein holding hands and appearing to be dancing with each other, titled "Best Friends Forever," was knocked down and damaged by Park Police, without notice, in the early morning the day after it had been erected pursuant to a valid permit.[21] On October 3, a group known as FLARE ("For Liberation And Resistance Everywhere") had its demonstration permit revoked and its tents dismantled by Park Police with no notice. First Carey Decl. ¶ 9. On December 11, FLARE again had its permit revoked

---

[19] Doug Burgum, Secretary's Order No. 3440, U.S. Dep't of the Interior (Aug. 25, 2025), https://www.doi.gov/document-library/secretary-order/so-3440-realignment-supervision-chiefunited-states-park-police [https://perma.cc/7U3H-TYG7].

[20] Lang, *supra* note 15.

[21] Heim & Bowman, *supra* note 15.

and its demonstration dismantled on short notice. *Id.*

Based on this recent history and Superintendent Griess's communications, Plaintiff has not displayed the signs at issue since April 14 because of its reasonable fear that its permit will be summarily revoked and/or its demonstration forcibly broken up if it continues to display these signs. *Id.* ¶ 11. Plaintiff initiated this case on April 23 to challenge the government's violation of Plaintiff's First Amendment right to display these signs.

## II. Plaintiff Displays Flag with the Legend "8647" To Call for the Impeachment and Lawful Removal of President Trump.

In addition to the above two signs, Plaintiff has displayed on its demonstration site a red, white, and blue flag, purchased from Amazon.com, with the legend "8647." Second Declaration of Anita Carey ("Second Carey Decl.") ¶¶ 3-5 (ECF 10-2). The photograph below depicts the flag Plaintiff was displaying:



*Id.* ¶ 3. Plaintiff's purpose for displaying this flag is to call for the impeachment and lawful removal of the President from office. *Id.* ¶ 6.

When Plaintiff displayed this flag at its demonstration site on May 12, 2026, two Secret

Service officers approached a volunteer at the site and asked about the flag. They engaged in the following conversation:

Officer:    [W]e received a phone call because of the flag, in fact the 8647 and what it can stand for.

Volunteer:  Uh-huh. I never heard of it standing for anything other than Trump shouldn't be in office.

Officer:    OK. Alright. So you have no ill-will towards . . .

Volunteer:  I want Trump to live forever and rot in jail where he belongs.

Officer:    OK. That's it. That's all, all I needed to know

Volunteer:  OK

Officer:    We just, we got a call so we just wanted to come down here . . .

Volunteer:  I'm sorry someone wasted your time

Officer.    Oh, you're good. You're good. It's part of our job

Volunteer:  Yup

Officer:    We just want to make sure that your First Amendment rights are protected. They were concerned, so we just want to make sure there's no ill-will.

Volunteer:  OK. Haha. Thank you so much.

Officer:    Alright. Yes, ma'am.

Volunteer:  OK.

Pl.'s Suppl. Filing at 2 (ECF 15) (first of the two videos available at https://photos.app.goo.gl/MyS5T7g7b4JXRYmY6). Approximately 25 minutes after this conversation, two different, plain-clothed officers approached the same volunteer and read the volunteer her *Miranda* rights. *Id*. at 3. "Understandably, the volunteer declined to speak with the officers." Memorandum Opinion ("Mem. Op.") at 5 (ECF 20). It was revealed through a declaration submitted by a Secret Service official that the Secret Service opened an investigation "into the potential threat" and that "investigation remains ongoing." Declaration of Matthew C. Quinn ("Quinn Decl.") ¶ 10 (ECF 13-1). The declaration does not state when the Secret Service

8

opened the investigation.

On May 26, Plaintiff filed a motion for a preliminary injunction to allow it to redisplay the signs discussed above without facing the threat of NPS revoking its permit and/or destroying its demonstration for displaying the signs. Pl.'s Mot. for Prelim. Inj. (ECF 8). Sixteen hours after Plaintiff filed its motion, at 5 a.m. on May 27, four cars of U.S. Park Police officers pulled up to Plaintiff's demonstration site, at which of Plaintiff's "8647" flag was on display—and had been on display for more than two weeks. Second Carey Decl. ¶¶ 2-4. An NPS officer approached the volunteer on site and, reading from a clipboard, announced: "18 U.S. Code 8741 Threats against the President. Right now, we're looking at the 8647 as a threat against the President. Can I ask you to take it down please? The sign here?" *Id.* ¶ 2; Fifth Declaration of Anita Carey ("Fifth Carey Decl.") ¶ 8. After it was taken down, he said "Thanks so much. And please refrain from putting it back up. If it comes back up we'll be by here again, OK, and then it will be a violation of the permit." Second Carey Decl. ¶ 2. Because 18 U.S. Code 8741 does not exist, the officer presumably was referring to 18 U.S.C. § 871, which makes it a crime to threaten "to take the life of, to kidnap, or to inflict bodily harm upon the President of the United States." *Id.* § 871(a). According to Defendants, on May 26, the Secret Service shared information with the U.S. Department of the Interior about its ongoing investigation of Plaintiff's volunteer holding the 8647 flag on May 12. Defs.' Suppl. Filing at 1-2 (ECF 16).

Later on May 27, Plaintiff filed an amended complaint adding a First Amendment claim for Plaintiff's right to display the flag and moved for a temporary restraining order ("TRO") to prevent Defendants from taking enforcement actions against Plaintiff for its display of the flag. Defendants submitted an opposition to the TRO motion on May 28, and this Court heard argument on the TRO motion that afternoon. Both parties made supplemental submissions on May 29, ECF

15, 16, 18, and this Court granted Plaintiff's TRO motion on June 1. Mem. Op.; *Accountability NOW USA v. Griess*, 2026 WL 1533402 (D.D.C. June 1, 2026).

Plaintiff now seeks a preliminary injunction so that it can display these and similar signs and flags with legal protection from enforcement actions threatened by Defendants.

**ARGUMENT**

To obtain a preliminary injunction, a party "must show that (1) it 'is likely to succeed on the merits'; (2) it 'is likely to suffer irreparable harm in the absence of preliminary relief'; (3) 'the balance of equities tips in [its] favor'; and (4) the issuance of a preliminary injunction 'is in the public interest.'" *Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*, 121 F.4th 1314, 1324 (D.C. Cir. 2024) (quoting *Changji Esquel Textile Co. Ltd. v. Raimondo*, 40 F.4th 716, 721 (D.C. Cir. 2022)). The last two factors, the balance of the equities and public interest, "merge when, as here, the defendant is the government." *Conserve Sw. Utah v. U.S. Dep't of the Interior*, 2026 WL 569034, at *21 (D.D.C. Mar. 1, 2026).

As set forth below, Plaintiff satisfies all four factors.

**I.      Plaintiff Is Likely To Succeed On the Merits Of Its Claim.**

**A.      *Plaintiff has standing to pursue its First Amendment pre-enforcement challenge.***

It is well settled that "when a deprivation of First Amendment rights is at stake, a plaintiff need not wait for the damage to occur before filing suit. Instead, to pursue a pre-enforcement challenge, a plaintiff must show that 'the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.'" *Mahmoud v. Taylor*, 606 U.S. 522, 559–60 (2025) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) ("*SBA List*")). "[L]ower 'courts' willingness to permit pre-enforcement review is 'at its peak' when claims are rooted in the First Amendment.'" *Woodhull Freedom Found. v. United States*, 948 F.3d 363, 371 (D.C. Cir.

10

2020) (cleaned up). "In assessing Plaintiff['s] standing, the Court assumes that Plaintiff[] will prevail on the merits of their constitutional claims." *Common Cause v. Biden*, 909 F. Supp. 2d 9, 18 (D.D.C. 2012), *aff'd on other grounds*, 748 F.3d 1280 (D.C. Cir. 2014).

Plaintiff is being prevented from engaging in political speech by the realistic threat that NPS will summarily revoke Plaintiff's demonstration permit and/or dismantle its demonstration should Plaintiff redisplay its signs and/or its flag. A warning to stop an allegedly protected activity and the threat of further action if the warning is not heeded constitute a credible threat of enforcement. *See SBA List*, 573 U.S. at 159 (describing *Steffel v. Thompson*, 415 U.S. 452 (1974), in which the Court "determined that petitioner had alleged a credible threat of enforcement: He had been warned to stop handbilling and threatened with prosecution if he disobeyed . . ."). "When an individual is subject to such a threat, an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *SBA List*, 573 U.S. at 158.

Superintendent Griess made clear in his April 15 response to Plaintiff that NPS "may take further steps as appropriate to ensure compliance" if Plaintiff "chooses not to comply with a lawful direction to cease prohibited conduct." First Carey Decl. ¶ 7. Likewise, an NPS officer warned Plaintiff's volunteer on May 27 that if the 8647 flag is redisplayed, "we'll be by here again" and "then it will be a violation of the permit." Second Carey Decl. ¶ 2; Fifth Carey Decl. ¶ 8. These are exactly the sorts of threats that permit a pre-enforcement challenge.

### B.    *Plaintiff's signs are protected under the First Amendment.*

Plaintiff is likely to succeed on the merits of its First Amendment claim that its signs are protected speech. The signs "lie[] at the core of First Amendment protection," which "includes speech on 'any matter of political, social, or other concern to the community' or any 'subject of general interest and of value and concern to the public.'" *Kelly v. Hegseth*, 2026 WL 391777, at

11

*8 (D.D.C. Feb. 12, 2026) (quoting *Snyder v. Phelps*, 562 U.S. 443, 451, 453 (2011)). Indeed, "speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Snyder*, 562 U.S. at 452 (quoting *Connick v. Myers,* 461 U.S. 138, 145 (1983) (internal quotation marks omitted)).

There is no doubt that Plaintiff's signs constitute political speech. They are based on publicly reported accusations that go to the President's behavior and fitness to remain in office, issues that are quintessential matters of public and political concern. *See Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272–74 (1971) (explaining that heightened protections for speech regarding public officials applies not only to speech regarding official conduct, but also to "anything which might touch on an official's fitness for office."). And the potentially "inappropriate or controversial character of a statement is irrelevant to the question whether it deals with a matter of public concern." *Rankin v. McPherson,* 483 U.S. 378, 381, 387 (1987) (holding that a Deputy Constable's remark, after hearing of the attempted assassination of President Reagan, "if they go for him again, I hope they get him," was protected speech). Foundational to the liberties we enjoy as Americans is "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

There is no colorable argument that the signs at issue are legally obscene, a narrow category of unprotected speech. The test for legal obscenity is stringent: speech may be regarded as legally obscene only if "the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest," "the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law," and "the

12

work, taken as a whole, lacks serious literary, artistic, political, or scientific value." *Miller v. California*, 413 U.S. 15, 24 (1973) (cleaned up). Plaintiff's signs do not satisfy any element of the *Miller* test.

Signs that state "Trump raped little girls" and reference "child rapists" do not appeal to prurient interests of the average person; a prurient interest in sex is generally one that is "shameful or morbid," *Huffman v. United States*, 502 F.2d 419, 423 (D.C. Cir. 1974), and at the very least, "erotic," *Cohen v. California*, 403 U.S. 15, 20 (1971). These signs neither appeal to a shameful or morbid interest in sex nor are they even the slightest bit erotic; to the contrary, they simply refer by name to a criminal act that was allegedly committed by Mr. Trump years ago.

Nor do the signs "depict[] or describe[], in a patently offensive way, sexual conduct." *Miller*, 413 U.S. at 24. They do not depict or describe sexual conduct *at all* within the meaning of *Miller*, any more than Paul Robert Cohen's "Fuck the Draft" jacket depicted or described sexual conduct within the meaning of *Miller*. *See generally Cohen*, 403 U.S. 15. Mere reference to a sex act—as in Plaintiff's signs—is not the same as *depicting* or *describing* sexual conduct. "Sex and obscenity, . . . as the Supreme Court has held, are not synonymous." *Freedberg v. U.S. Dep't of Just.*, 703 F. Supp. 107, 109 n.3 (D.D.C. 1988) (citing *Roth v. United States,* 354 U.S. 476, 487 (1957)). If these signs are obscene, then so, necessarily, are all the news reports calling attention to the same alleged crimes.[22]

Finally, the signs are not obscene because they have serious political value. *Miller*, 413 U.S. at 24. As Plaintiff intended by displaying them, they have sparked conversations between its

---

[22] *See, e.g.,* Meredith Kyle, *FBI Received Rape Allegation Against Trump During Epstein Probe*, PEOPLE MAGAZINE (Dec. 23, 2025), https://people.com/epstein-files-rape-allegation-against-trump-11875364 [https://perma.cc/9ZD8-TAVL].

volunteers and members of the public about the President's conduct and his fitness to remain in office, which is the very topic of Plaintiff's demonstration. First Carey Decl. ¶ 4. Accordingly, far from being obscene, Plaintiff's signs are core political speech.

If a person who encounters signs such as these finds them offensive, "the burden normally falls upon the viewer to 'avoid further bombardment of (his) sensibilities simply by averting (his) eyes.'" *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 210–11 (1975) (finding an ordinance that prohibited any depiction of nudity on movie theatre screens visible from public places unconstitutional). "[W]e are often 'captives' outside the sanctuary of the home and subject to objectionable speech" and "[t]he ability of government, consonant with the Constitution, to shut off discourse solely to protect others from hearing it is . . . dependent upon a showing that substantial privacy interests are being invaded in an essentially intolerable manner." *Cohen*, 403 U.S. at 21. The Court has allowed for restrictions on speech to protect "captive audience[s] . . . only sparingly," typically to prevent intrusions from unwanted speech in the privacy of the home. *Synder*, 562 U.S. at 459–60. As would be the case here, "[a]ny broader view of this authority would effectively empower a majority to silence dissidents simply as a matter of personal predilections." *Cohen*, 403 U.S. at 21. Simply put, "the Constitution does not permit government to decide which types of otherwise protected speech are sufficiently offensive to require protection for the unwilling listener or viewer." *Erznoznik*, 422 U.S. at 210.

In response to a news report on the filing of this lawsuit, an Interior Department spokesperson defended the Defendants' position by stating, "[a]s a reminder, we are approaching

14

America's 250th and we have visitors of all ages coming to our nation's capital,"[23] thereby suggesting that Defendants may argue that Plaintiff's signs are obscene as to minors. But the fact that minors may see the signs as they walk along Constitution Avenue does not place them outside the First Amendment's protection. The Supreme Court has made it clear that "under any test of obscenity as to minors," to be obscene, the speech "'must be, in some significant way, erotic.'" *Erznoznik*, 422 U.S. at 213 n.10 (quoting *Cohen*, 403 U.S. at 20). As noted above, Plaintiff's signs are not "erotic," as they do not tend to arouse sexual desire. *See Erotic (adjective)*, Merriam-Webster, https://www.merriam-webster.com/dictionary/erotic [https://perma.cc/JJS3-6PQ7] (last visited May 26, 2026) ("of, devoted to, or tending to arouse sexual love or desire"). Nor do they appeal to the prurient interests of the average minor. "Speech that is neither obscene as to youths nor subject to some other legitimate proscription cannot be suppressed solely to protect the young from ideas or images that a legislative body [or the Secretary of the Interior] thinks unsuitable for them." *Erznoznik*, 422 U.S. at 213–14.

### C.    *Plaintiff's flag is protected under the First Amendment.*

Plaintiff is also likely to succeed on the merits of its claim that its flag with the legend 8647 is protected by the First Amendment. Like its signs, its flag is core political speech, and is being used by Plaintiff "to mean 'get rid of President Trump' in a political manner (through impeachment or the 25th Amendment)." Second Carey Decl. ¶ 6. Both of Defendants' contentions that Plaintiff's flag is unprotected speech—that the flag is a "true threat" and that it constitutes incitement—fail.

---

[23] BrieAnna J. Frank, *National Park Service faces free speech lawsuit over anti-Trump signs*, USA TODAY (Apr. 23, 2026), https://www.usatoday.com/story/news/nation/2026/04/23/national-park-service-violated-free-speech-lawsuit-trump-signs/89741004007/ [https://perma.cc/9SKA-KFQ5].

1.      Plaintiff's display of the 8647 flag is not a "true threat."

The First Amendment does not protect "true threats." *Virginia v. Black*, 538 U.S. 343, 359 (2003). "'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Id.* As this Court explained, "[t]he question whether '8647' constitutes a true threat cannot be resolved in the abstract, without consideration of context, and, here, the relevant context makes clear that no reasonable observer could have viewed Plaintiff's display of the flag as a threat to the President's life or physical safety." Mem. Op. at 13. *See, e.g.*, *Watts v. United States*, 394 U.S. 705, 708 (1969) (per curiam) (emphasizing the context of the defendant's speech to determine whether it was a true threat against the President); *Counterman v. Colorado*, 600 U.S. 66, 74 (2023) ("The 'true' in [the term 'true threat'] distinguishes what is at issue from jests, 'hyperbole,' or other statements that when taken in context do not convey a real possibility that violence will follow.").

Both parties agree that "[n]ot every use of the slang phrase '86' constitutes a threat of violence." Mem. Op. at 9; 14. In fact, it is most often used to mean "to throw out," "to get rid of," or "to refuse service to," as "[i]t comes from 1930s soda-counter slang meaning that an item was sold out." *What Does 'Eighty-Six' Mean?*, Merriam-Webster, https://www.merriam-webster.com/wordplay/eighty-six-meaning-origin [https://perma.cc/3KZD-9LXL] (last visited June 10, 2026). In the 1950s, the word started being used as a verb, with the initial meaning being "to refuse to serve a customer" and later taking on "the slightly extended meaning of 'to get rid of; to throw out.'" *Id.* Although eighty-six can in some circumstances mean "to kill," Merriam-Webster did not "enter this sense" in its definition of the term "due to its relative recency and sparseness of use." *Id.* And, of course, the verb "kill" is very often used to mean something other

16

than taking a life, for example, "killed the amendment," "kill a quote," "killed the pain," "kill the lights," "she killed the audience," "kill time," "killing herself to get the project done on time," "killed his drink and held out the glass." *Kill*, Merriam-Webster (italics omitted), https://www.merriam-webster.com/dictionary/kill (last visited June 10, 2026).

The context in which Plaintiff displayed the flag makes clear that the flag did not convey a threat to the President. As Plaintiff explained, the flag was "not in any way a threat against the President"; instead, it is part of Plaintiff's months-long protest demanding "the impeachment and removal of President Trump." Second Carey Decl. ¶ 6. Plaintiff displayed the flag as part of its peaceful, permitted, long-running political demonstration where Plaintiff calls for the impeachment and lawful removal of the President from office. *See id.* The site where Plaintiff displayed the flag makes this clear: indeed, when Secret Service visited Plaintiff on May 12, there were large signs at the demonstration site that said "IMPEACH. CONVICT. REMOVE." Pl.'s Reply to Defs.' Suppl. Filing at 1-2 (ECF 18). Likewise, a videotape of Plaintiff's demonstration site that was filmed on May 14 while the 8647 flag was on display makes clear that the whole message of the demonstration is impeachment and removal and that the flag is part of that message.[24] As this Court determined, "[i]n short, the surrounding signage urged Congress 'to throw out' the President." Mem. Op. at 13.

The government expressly understood that Plaintiff did not intend to convey any threat to the President by displaying the flag. During the May 12 visit by Secret Service, Plaintiff's volunteer made clear that the flag did not "stand[] for anything other than Trump shouldn't be in office" and that all she wants is for "Trump to live forever and rot in jail where he belongs." Pl.'s

---

[24] A link to the videotape was submitted to the Court as ECF 19. The video is available at https://photos.app.goo.gl/sgb28v6FSz6jLEQbA.

Suppl. Filing at 1-2. The Secret Service officers confirmed that "that's all, all I needed to know" and told the volunteer repeatedly "you're good." *Id.* at 2. While the Deputy Director of the Secret Service may "regard the statement '86-47' as a potential call for acts of violence directed at the President of the United States," Quinn Decl. ¶ 8, the relevant standard is not the Deputy Director's opinion, but "whether a reasonable person would consider the statement a serious expression of an intent to inflict harm." *United States v. Syring*, 522 F. Supp. 2d 125, 129 (D.D.C. 2007). In the circumstances in which Plaintiff displayed the flag—a peaceful demonstration where Plaintiff's volunteer confirmed its non-violent purpose and the demonstration's prominent signage made its political message unambiguously clear—no reasonable person would consider Plaintiff's display of the flag to be "a serious expression of an intent to inflict harm." *Id.*

Indeed, the Acting Attorney General of the United States has confirmed this very point:

> The "86 47" message, Mr. Blanche said, is "posted constantly — that phrase is used constantly." He added, "Every one of those statements do not result in indictments." What makes Mr. Comey's case different, he argued, is other evidence collected, which he said he could not describe.
> Mr. Blanche … acknowledged that proving Mr. Comey's intent would be crucial to his prosecution.[25]

Supreme Court precedents bolster this conclusion. In *Watts*, the context in which the defendant made the statement "if they ever make me carry a rifle the first man I want to get in my sights is L.B.J."—a public demonstration against the War in Vietnam—made clear to the Court that this "political hyperbole" was not a "true threat." 394 U.S. at 706, 708. Likewise, in *Rankin v. McPherson*, 483 U.S. 378 (1987), the Court held that a Deputy Constable's remark, after hearing of the attempted assassination of President Reagan, "if they go for him again, I hope they get him,"

---

[25] Devlin Barrett, *Blanche Says Others Who Post '86 47' Message Won't Be Charged Like Comey*, N.Y. TIMES (May 3, 2026), https://www.nytimes.com/2026/05/03/us/politics/blanche-comey-indictment-seashells.html [https://perma.cc/C5KJ-CD67].

"plainly dealt with a matter of public concern" and was protected political speech. *Id.* at 380, 386-87. Similarly here, as this Court noted, "it is difficult to fathom how the NPS (or the Secret Service) could have concluded that a reasonable observer would view the flag as a true threat." Mem. Op. at 14. Indeed, even after being provided an additional opportunity to do so, Defendants did not submit any evidence to demonstrate that they "engaged in any *case-specific* fact-finding or undertook any analysis of whether Plaintiff's usage of 8647 *in the context of its ongoing demonstration* violated 18 U.S.C. § 871." *Id.* The only "context" Defendants offer at all is the May 24 shooting outside the White House that the government implausibly views as an attempted assassination. *Id.* at 15. But that context does not, as this Court held, "change the meaning of Plaintiff's speech, which by any reasonable measure merely advocated for the President's impeachment and removal from office—that is, 'to throw [him] out.'" *Id.* at 16 (quoting *What Does 'Eighty-Six' Mean?*, *supra*).[26]

In *Virginia v. Black*, a state statute provided that the "burning of a cross shall be prima facie evidence of an intent to intimidate a person or group of persons." 538 U.S. at 348. The Court held that provision unconstitutional because it "ignore[d] all of the contextual factors that are necessary to decide whether a particular cross burning is intended to intimidate. The First Amendment does not permit such a shortcut." *Id*. at 367 (plurality opinion). Nor does the First Amendment permit the shortcut the government seeks to take here.

2.      <u>Plaintiff's display of the 8647 flag does not constitute incitement.</u>

Though the government only cited 18 U.S.C. § 871 and "[t]hreats against the President" when demanding that Plaintiff remove its flag, it now also argues that the flag is unprotected

---

[26] Because Defendants fail to meet the objective prong, this Court "need not consider whether and how the subjective standard applies to civil proceedings." Mem. Op. at 11.

speech because it is an incitement. *See* Second Carey Decl. ¶ 2; Federal Dfs.' Resp. to Pl.'s Appl. for TRO ("TRO Opp.") at 2 (ECF 13). But "[g]overnment 'justification[s]' for interfering with First Amendment rights 'must be genuine, not hypothesized or invented *post hoc* in response to litigation.'" *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 543 n.8 (2022) (quoting *United States v. Virginia*, 518 U.S. 515, 533 (1996)); *see also Grace v. Barr*, 965 F.3d 883, 903 (D.C. Cir. 2020) ("assessing the reasonableness of an agency's action, we look only to what the agency said at the time of the action—not to its lawyers' post-hoc rationalizations." (citation modified)). This Court should decline the government's invitation to consider such an invented rationalization here.

Even if this Court were to engage with the government's retrospective argument that "8647" is an incitement, that argument falters right out of the gate. Incitement is speech that "is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969). As with true threats and with speech in general, the context in which words are used determines their meanings. *See Counterman*, 600 at 76 (2023) ("[I]ncitement inheres in particular words used in particular contexts . . . ."); *Johnson v. United States*, 559 U.S. 133, 139 (2010) ("Ultimately, context determines meaning . . . ."). Showing that speech is unprotected incitement is an intentionally arduous task, as the Court recognizes "that incitement to disorder is commonly a hair's-breadth away from political 'advocacy'—and particularly from strong protests against the government and prevailing social order." *Counterman*, 600 U.S. at 81. And so there is a subjective requirement: "[T]he First Amendment precludes punishment, whether civil or criminal, unless the speaker's words were 'intended' (not just likely) to produce imminent disorder." *Id.* at 76. This specific intent standard, similar to purpose or knowledge, is "to ensure that efforts to prosecute incitement would not bleed over, either directly or through a chilling effect, to dissenting political speech at the First

20

Amendment's core." *Id.* at 81.

Plaintiff's "8647" flag is not "a hair's-breadth away" from political advocacy—it is in the heartland of political advocacy, and a mile away from incitement to imminent lawlessness. As the Court has noted, the slang term "86" is most often used to mean "throw out" or "remove[]." Mem. Op. at 9, 11-12, 14. And given that the flag was displayed as part of a demonstration advocating for impeachment and removal of the President—both lawful processes undertaken by Congress—context makes it all the more clear that Plaintiff and its volunteers intended "8647" not to encourage lawless action, but to call for the President to be "removed from Office" through the mechanism specified in Art. II sec. 4 of the Constitution.

Other key elements of incitement are missing. The flag does not include any language encouraging passersby to take imminent action. Nor does other speech displayed alongside the flag encourage viewers to take imminent (not to mention lawless) action. *See* ECF 19 (video clip) (https://photos.app.goo.gl/sgb28v6FSz6jLEQbA). In *Thompson v. Trump*, on which the government relies in its response to Plaintiff's TRO application, *see* TRO Opp. at 2, President Trump's speech to a crowd of rallygoers on January 6, 2021 plausibly amounted to incitement when he told them to "fight like hell" or they would not "have a country anymore," "moments before instructing them to march to the Capitol." 590 F. Supp. 3d 46, 116 (D.D.C. 2022), *aff'd sub nom.*, *Blassingame v. Trump*, 87 F.4th 1 (D.C. Cir. 2023). It was the imminent action President Trump directed, in the context of his broader speech, that pushed his speech over the line. *See id.* No such language or context is here.

Nor is the flag *likely* to incite violence, as *Brandenburg* requires. Deputy Director Quinn's declaration says only that, in his opinion, the phrase 8647 "*can* incite violence by others." Quinn Decl. at ¶ 8 (emphasis added). That is not enough. For example, Mr. Quinn points to no acts of

21

violence taken in response to viewing an "8647" flag. When appeals to action "do not incite lawless action, they must be regarded as protected speech." *N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 928 (1982). And the government provides no basis for this Court to conclude that something particular about this flag display was likely to incite violence, other than perhaps that the display was in Washington, D.C. and there have been shootings in the President's vicinity. *See* Defs.' Suppl. Filing at 1-2. That, too, is not enough. No reasonable observer would understand a widely available flag saying nothing but "8647"—a phrase used thousands of times across the country[27]—to be directing onlookers to imminently find and kill the President, simply because it is displayed in Washington, D.C. and other, unrelated people have engaged in acts of violence. Indeed, as discussed above, the display of the flag alongside multiple signs calling for the impeachment and removal of the President, near the front steps of the federal courthouse, would more likely lead a reasonable observer to interpret the flag as advocating for lawful, not unlawful, action.

Finally, the evidence in the record reveals a lack of requisite intent to incite on the part of Plaintiff or its volunteer. As Plaintiff's volunteer cheerfully explained to two uniformed Secret Service officers who approached her to inquire about the flag, she had "never heard of it standing for anything other than Trump shouldn't be in office." Pl.'s Suppl. Filing at 2. She then confirmed that she had no "ill-will" towards the President, explaining that she wanted him to "live forever" in jail. *Id.* There is no evidence to suggest Plaintiff or its volunteer intended to incite violence or

---

[27] *See* Defs.' Suppl. Filing at 2 (noting that "the Secret Service has investigated or is currently investigating over 1,300 instances of individuals using '86-47'"); *see also* Brett Forrest, *Thousands of National Park Comments Contained '8647'; DOI Says Threats Won't Be Tolerated*, KOAA News5 (June 8, 2026, at 17:44), https://www.koaa.com/news/local-news/thousands-of-national-park-comments-contained-8647-doi-says-threats-wont-be-tolerated [https://perma.cc/YL8P-KXLA] (last visited June 10, 2026).

disorder.

## II.    Plaintiff Will Suffer Irreparable Harm Without a Preliminary Injunction.

Plaintiff will suffer irreparable harm in the absence of a preliminary injunction. "[T]o obtain a preliminary injunction, a party must show that [its] 'First Amendment interests are either threatened or in fact being impaired at the time relief is sought.'" *Media Matters for Am. v. Paxton*, 138 F.4th 563, 585 (D.C. Cir. 2025) (quoting *Nat'l Treasury Emps. Union v. United States*, 927 F.2d 1253, 1254–55 (D.C. Cir. 1991)). "[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Mahmoud*, 606 U.S. at 569; *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (same).

It is clear that Plaintiff's First Amendment interests are threatened. In his response to Plaintiff about the signs, Superintendent Griess deemed them "unprotected obscenity" and demanded that they be removed. First Carey Decl. ¶ 7. Griess also threatened that NPS "may take further steps as appropriate to ensure compliance" if Plaintiff "chooses not to comply with a lawful direction to cease prohibited conduct." *Id.* Similarly, the NPS officer who visited the demonstration at 5 a.m. on May 27 to demand removal of the flag made clear that if the flag "comes back up[,] we'll be by here again, OK, and then it will be a violation of the permit." Second Carey Decl. ¶ 2; Fifth Carey Decl. ¶ 8. As this Court already determined, "[w]ithout preliminary relief, Plaintiff cannot display the flag without fear of retribution, and will likely suffer an ongoing and irreparable deprivation of its First Amendment rights." Mem. Op. at 18-19.

Combined with the recent experiences of other permit holders in Washington, D.C., *see* First Carey Decl. ¶ 9, Plaintiff faces an imminent and realistic threat of harm in the form of revocation of its permit, dismantling of its demonstration, or other sanctions should it continue to display its signs or its flag.

23

### III.    The Public Interest and Balance of Equities Weigh in Plaintiff's Favor.

If the Court finds that Plaintiff has shown a likelihood that its First Amendment rights are threatened, it follows that the balance of equities and public interest weigh in Plaintiff's favor. "'[T]here is always a strong public interest in the exercise of free speech rights otherwise abridged by an unconstitutional' government action." *Media Matters*, 138 F.4th at 585 (quoting *Pursuing Am.'s Greatness v. Fed. Election Comm'n*, 831 F.3d 500, 511 (D.C. Cir. 2016)). Indeed, as Judge Leon noted last month, "protecting the freedom of speech is 'always' in the public interest." *L.C. v. Trump*, 2026 WL 1329750, at \*12 (D.D.C. May 13, 2026) (quoting *Pursuing Am.'s Greatness*, 831 F.3d at 511). Thus, "in public debate [we] must tolerate insulting, and even outrageous, speech in order to provide adequate 'breathing space' to the freedoms protected by the First Amendment." *Snyder*, 562 U.S. at 458 (quoting *Boos v. Barry*, 485 U.S. 312, 322 (1988) (alteration in original)). Conversely, "the government 'cannot suffer harm from an injunction that merely ends an unlawful practice,'" *Susman Godfrey LLP v. Exec. Off. of President*, 789 F. Supp. 3d 15, 57 (D.D.C. 2025) (quoting *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015)), *appeal pending*, No. 25-5310 (D.C. Cir. argued May 14, 2026); "[t]here is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016).

### IV.    Plaintiff's Requested Relief Is Appropriate and Warranted.

In addition to allowing Plaintiff to display the signs and flag discussed above without fear of retribution, Plaintiff requests that this Court enjoin Defendants from taking any action in retaliation against Plaintiff for its display of any substantially similar signs or flags. At Plaintiff's demonstration, there is also a sign showing a raccoon waving an 8647 flag and a sign that says "Trump Assaults Children Obviously" ("T.A.C.O."). They are depicted below:

24

 

On June 8, 2026, an NPS officer came to Plaintiff's demonstration and took a photo of the raccoon sign and examined the T.A.C.O. sign. Fifth Carey Decl. ¶¶ 2-4. Plaintiff has also been displaying another flag with the legend "8647 Impeach Trump." *Id.* ¶ 5. And Plaintiff "regularly acquires new signs, flags, and banners to convey its message to the public." *Id.* ¶ 7.

These signs, and other similar posters or flags, are protected by the First Amendment for the same reasons Plaintiff's other signs and flag are. Plaintiff accordingly asks that the Court enjoin Defendants from taking action against Plaintiff for its display of substantially similar signs and flags as well. In addition, because of Plaintiff's concern that Defendants may revoke Plaintiff's demonstration permit without notice on the basis of these items or for some other purported reason, the attached proposed order would require Defendants to provide two business days' notice of any such revocation, thereby allowing Plaintiff to seek emergency relief if it believes the revocation is retaliatory or violates the First Amendment.

## CONCLUSION

For the foregoing reasons, this Court should grant this motion and enter the attached proposed order.

Because the entry of an injunction will not cause any financial harm to the Defendants, the security required by Fed. R. Civ. P. 65(c) should be set at $1, as it was for the TRO. *See, e.g.*, *DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999) ("The language 'in such sum as the court deems proper' [in Rule 65(c)] has been read to vest broad discretion in the district court to determine the appropriate amount of an injunction bond."); *J.G.G. v. Trump*, 2025 WL 1577811, at *83 (D.D.C. June 4, 2025), *vacated and remanded on other grounds*, 2025 WL 2317650 (D.C. Cir. Aug. 8, 2025) ("In light of the circumstances and nature of this case, [the Court] finds that a nominal amount is proper and exercises its discretion to require Plaintiffs to collectively post $1.00.").

June 10, 2026

Respectfully submitted,

*/s/ Aditi Shah*
Aditi Shah (D.C. Bar No. 90033136)
Laura K. Follansbee (D.C. Bar No. 1782046)
Arthur B. Spitzer (D.C. Bar No. 235960)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
  OF THE DISTRICT OF COLUMBIA
529 14th Street, N.W., Suite 722
Washington, D.C. 20045
(202) 457-0800
ashah@acludc.org
lfollansbee@acludc.org
aspitzer@acludc.org

*Counsel for Plaintiff*[*]

---

[*] Counsel wish to express their appreciation to ACLU-D.C. interns Ava Comeau and Isabelle Carlisle and paralegal Ameerah Adetoro for their assistance in the preparation of this motion.

26