**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ACCOUNTABILITY NOW USA, <br><br> *Plaintiff*, <br><br> v. <br><br> KEVIN GRIESS, *et al.*, <br><br> *Defendants*. | No. 26-cv-1385 (RDM) |

**<u>PLAINTIFF'S REPLY IN SUPPORT OF
RENEWED MOTION FOR A PRELIMINARY INJUNCTION</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

    I.    Plaintiff Is Likely To Succeed On the Merits Of Its Claims ............................................... 2

          A.    *Plaintiff's signs are not obscene as to minors* ...................................................... 2

               1.    There is no obscenity law applicable to Plaintiff's signs ............................ 2

               2.    In any event, Plaintiff's signs are not obscene ........................................... 4

          B.    *Plaintiff's 8647 message is neither threatening nor inciteful.* ......................... 10

    II.    The Remaining Preliminary Injunction Factors Weigh in Plaintiff's Favor ................... 14

    III.    Plaintiff's Requested Relief Is Appropriate and Warranted ......................................... 16

CONCLUSION ................................................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.*,
   594 U.S. 758 (2021) ................................................................................................ 15

*Brockett v. Spokane Arcades, Inc.*,
   472 U.S. 491 (1985) .................................................................................................. 5

*Butler v. Mich.*,
   352 U.S. 380 (1957) .................................................................................................. 5

*City Council of Los Angeles v. Taxpayers for Vincent*,
   466 U.S. 789 (1984) ................................................................................................ 14

*\*Cohen v. California*,
   403 U.S. 15 (1971) ........................................................................................... 14, 15

*Freedberg v. U.S. Dep't of Just.*,
   703 F. Supp. 107 (D.D.C. 1988) ............................................................................. 7

*Free Speech Coalition, Inc. v. Paxton*,
   606 U.S. 461 (2025) ....................................................................................... 5, 7, 8, 9

*Frisby v. Schultz*,
   487 U.S. 474 (1988) ................................................................................................ 14

*Ginsberg v. New York*,
   390 U.S. 629 (1968) .............................................................................................. 8, 9

*League of Women Voters of U.S. v. Newby*,
   838 F.3d 1 (D.C. Cir. 2016) .................................................................................. 15

*\*Miller v. California*,
   413 U.S. 15 (1973) ................................................................................................ 6, 7

*R.I.L-R v. Johnson*,
   80 F. Supp. 3d 164 (D.D.C. 2015) ........................................................................ 15

*\*Rankin v. McPherson*,
   483 U.S. 378 (1987) ......................................................................................... 12, 13

*Reno v. ACLU*,
   521 U.S. 844 (1997) .................................................................................................. 5

*Roth v. United States,*
354 U.S. 476 (1957) ........................................................................................................ 5, 7

*Susman Godfrey LLP v. Exec. Off. of President*,
789 F. Supp. 3d 15 (D.D.C. 2025) ...................................................................................... 15

*Susman Godfrey LLP v. Exec. Off. of President*,
No. 25-5310 (D.C. Cir. argued May 14, 2026) ................................................................ 15

*Texas v. Johnson,*
491 U.S. 397 (1989) .......................................................................................................... 15

*United States v. Davis*,
588 U.S. 445 (2019) ............................................................................................................ 4

*United States v. Guglielmi,*
819 F.2d 451 (4th Cir. 1987) ............................................................................................ 6, 7

*United States v. Hudson*,
11 U.S. 32 (1812) ................................................................................................................ 3

*\*Watts v. United States*,
394 U.S. 705 (1969) .......................................................................................................... 12

**Statutes**

D.C. Code § 22–2201(b)(1)(A)(ii) .......................................................................................... 4, 7

**Regulations**

36 C.F.R. § 2.34(a) ...................................................................................................................... 3

36 C.F.R. § 2.34(a)(2) .................................................................................................................. 3

**Other Authorities**

Aidan McLaughlin, *Trump's Bloody, Garish Birthday Gift to Himself: A White House UFC Fight*,
Vanity Fair (June 15, 2026), https://www.vanityfair.com/story/trump-white-house-ufc-fight?srsltid=AfmBOop17qRx30IpKOPUuKzQJ8UX84NQHBhG723Q51sexmz0f0SZBmfR (last visited June 22, 2026) [https://perma.cc/8GS8-E9A3] .................................................... 16

Alanna Durkin Richer & Eric Tucker, *Ex-FBI Director Comey indicted again, in a probe over an online post officials call a Trump threat*,
The Assoc. Press (Apr. 28, 2026, at 18:08 ET), https://apnews.com/article/comey-indicted-seashell-photo-86-47-a7fdd67891a7f74bc6fd8ce4d3d4170a [https://perma.cc/S245-8TNX] ................................................................................................ 11

Brandi Buchman, *Lawsuit Reveals An Incredibly Weird Detail About Trump's UFC Event*, Huffington Post (June 11, 2026, at 12:30 ET), https://www.huffpost.com/entry/lawsuit-reveals-an-incredibly-weird-detail-about-trumps-ufc-event_n_6a2ad2f3e4b01046d7173e5f [https://perma.cc/T3XZ-2LSR] ............................................................................................. 16

Dareh Gregorian, *'86 it': Restaurant workers say the term at the center of James Comey's indictment is 'everyday lingo'*, NBC News (Apr. 29, 2026, at 20:15 ET), https://www.nbcnews.com/politics/justice-department/86-james-comey-indicted-restaurants-rcna342674 [https://perma.cc/J2YN-XVFZ] ............................................................................................. 11

Devlin Barrett & Tyler Pager, *Trump Administration Secures New Indictment Against Comey*, N.Y. Times (Apr. 28, 2026), https://www.nytimes.com/2026/04/28/us/politics/james-comey-indictment.html (last visited June 22, 2026) [https://perma.cc/3TUV-CGDP]........................ 11

Fernando Cervantes Jr., *What does 8647 mean? What to know as James Comey is indicted again*, USA Today (Apr. 28, 2026, at 14:47 ET), https://www.usatoday.com/story/news/politics/2026/04/28/what-does-8647-mean-what-to-know-about-james-comey-indictment/89842950007/ [https://perma.cc/7L99-Z56R] ............ 11

Greg Norman-Diamond, *'86 47' slogan tied to James Comey resurfaces at May Day protests across US*, Fox News (May 2, 2026, at 13:04 ET), https://www.foxnews.com/us/86-47-slogan-tied-james-comey-resurfaces-may-day-protests-us [https://perma.cc/M73Z-QWRD] .................... 11

Jake Miller, *Donald Trump defends calling Mexican immigrants "rapists"*, CBS News (Jul. 2, 2015, at 15:07 ET), https://www.cbsnews.com/news/election-2016-donald-trump-defends-calling-mexican-immigrants-rapists/ [https://perma.cc/U7SG-E3ML]............. 1

Jamal Walker & Marcus Reichley, *Trump's White House UFC spectacle: Blood, profanity and military pomp*, Cronkite News (June 15, 2026), https://cronkitenews.azpbs.org/2026/06/15/trump-ufc-spectacle/ (last visited June 22, 2026) [https://perma.cc/SN7P-H87F]..................................... 16

Jon Levine, *Gretchen Carlson Says She Showed Trump's 'Access Hollywood' Tape to Her Children*, The Wrap (Oct. 17, 2017, at 19:39 ET), https://www.thewrap.com/gretchen-carlson-says-she-showed-trumps-access-hollywood-to-her-children/ [https://perma.cc/9F4M-RMUG] ............. 9

Kaia Hubbard, Jacob Rosen & Caitlin Huey-Burns, *Trump's anti-immigrant, domestic "enemy" rhetoric in focus in final stretch to Election Day*, CBS News (Oct. 14, 2024, at 16:23 ET), https://www.cbsnews.com/news/donald-trump-rhetoric-enemy-anti-immigrant/ [https://perma.cc/EPU9-QWNX] ........................................... 1

Lalee Ibssa, Soo Rin Kim & Kendall Ross, *Trump again defends infamous 'Access Hollywood' comments and warns Biden, 'Be very careful'*,

ABC News (Dec. 10, 2023, at 14:49 ET), https://abcnews.com/Politics/trump-defends-infamous-access-hollywood-comments-warns-biden/story?id=105530533 [https://perma.cc/Y44P-8547] ................................................................................................ 2

Mariel Padilla, *Sexual Misconduct Allegations Against Trump's Government Picks: A Running List*,
Teen Vogue (Nov. 21, 2024), https://www.teenvogue.com/story/sexual-misconduct-allegations-trump-government-picks (last visited June 22, 2026) [https://perma.cc/SC8A-563L] ........................................................................................................................ 6

Meredith Kyle, *FBI Received Rape Allegation Against Trump During Epstein Probe*,
People Mag. (Dec. 23, 2025, at 15:41 ET), https://people.com/epstein-files-rape-allegation-against-trump-11875364 [https://perma.cc/9ZD8-TAVL] ............................................................ 6

Morgan Winsor, *What Donald Trump Has Said About Mexico and Vice Versa*,
ABC News (Aug. 31, 2016, at 10:09 ET), https://abcnews.com/Politics/donald-trump-mexico-vice-versa/story?id=41767704 [https://perma.cc/2Z7Y-78QC] ............................................... 1

Phillip M. Carter, *To '86' occasionally means to kill but usually doesn't: A linguistic investigation into the Instagram threat charge against James Comey*,
The Conversation (May 28, 2026, at 08:43 ET), https://theconversation.com/to-86-occasionally-means-to-kill-but-usually-doesnt-a-linguistic-investigation-into-the-instagram-threat-charge-against-james-comey-283016 [https://perma.cc/5D2M-5H2S] ......................... 12

*Transcript: Donald Trump's Taped Comments About Women*,
N.Y. Times (Oct. 8, 2016), https://www.nytimes.com/2016/10/08/us/donald-trump-tape-transcript.html (last visited June 22, 2026) [https://perma.cc/MX49-2KHE] ........................ 1, 8

**INTRODUCTION**

Defendants' opposition to Plaintiff's motion for a preliminary injunction, ECF 31 ("Opp."), distorts fundamental principles of free speech doctrine.

With respect to Plaintiff's signs calling attention to alleged sexual misconduct by President Trump, Defendants' argument rests on an incoherent conception of the narrow obscenity exception to First Amendment protection. Under Defendants' theory, any reference to a criminal sexual act that minors may see is obscene and unprotected. That is preposterous: if Plaintiff's signs raising awareness about child sexual abuse allegations against President Trump, displayed to the general public including minors, are unprotected because they are "obscene for minors," Opp. at 1, then so are President Trump's campaign remarks referring to Mexican immigrants as "rapists,"[1] and his bragging about being able to "[g]rab [women] by the pussy" without their consent,[2] comments heard by children whose parents had any mainstream news channel playing on their televisions during the 2016 presidential campaign. If Defendants are worried about speech that "invokes in minors a 'shameful or morbid interest' in violent and unlawful sex," Opp. at 13, it is the President's so-called "locker room talk,"[3] rather than Plaintiff's signs condemning sexual misconduct, that

---

[1] Morgan Winsor, *What Donald Trump Has Said About Mexico and Vice Versa*, ABC News (Aug. 31, 2016, at 10:09 ET), https://abcnews.com/Politics/donald-trump-mexico-vice-versa/story?id=41767704 [https://perma.cc/2Z7Y-78QC]; Jake Miller, *Donald Trump defends calling Mexican immigrants "rapists"*, CBS News (Jul. 2, 2015, at 15:07 ET), https://www.cbsnews.com/news/election-2016-donald-trump-defends-calling-mexican-immigrants-rapists/ [https://perma.cc/U7SG-E3ML]; Kaia Hubbard, Jacob Rosen & Caitlin Huey-Burns, *Trump's anti-immigrant, domestic "enemy" rhetoric in focus in final stretch to Election Day*, CBS News (Oct. 14, 2024, at 16:23 ET), https://www.cbsnews.com/news/donald-trump-rhetoric-enemy-anti-immigrant/ [https://perma.cc/EPU9-QWNX].

[2] *Transcript: Donald Trump's Taped Comments About Women*, N.Y. Times (Oct. 8, 2016), https://www.nytimes.com/2016/10/08/us/donald-trump-tape-transcript.html (last visited June 22, 2026) [https://perma.cc/MX49-2KHE].

[3] Lalee Ibssa, Soo Rin Kim & Kendall Ross, *Trump again defends infamous 'Access Hollywood' comments and warns Biden, 'Be very careful'*, ABC News (Dec. 10, 2023, at 14:49 ET),

1

should cause them concern.

Defendants' arguments against Plaintiff's 8647 message fare no better. Their suggestion that Plaintiff must have known the threatening import of those numbers because it began displaying an 8647 flag "[j]ust after widespread reporting that '86-47' may encourage political violence against the President," Opp. at 6, is factually incorrect. Plaintiff began displaying its 8647 flag in October 2025, long before the April 2026 Comey indictment and media reporting of the government's theory that 8647 is a threat. Sixth Declaration of Anita Carey ("Sixth Carey Decl.") ¶ 2 (ECF 33-1). Likewise, Plaintiff's display of a sign, "PARTY . . . WHEN HE'S DEAD," does not change the meaning of 8647; anticipated happiness at a future event does not signify that one plans to commit serious crimes to bring the event about. Thus, Defendants offer no basis for this Court to reach a different conclusion from its previous decision: a reasonable person would not regard Plaintiff's display of 8647 in the context of its peaceful demonstration as conveying a threat to the President, and it is that perspective, rather than Defendants' unfounded speculation, that controls under the First Amendment.

## ARGUMENT

**I.     Plaintiff Is Likely To Succeed On the Merits Of Its Claims.**

**A.     *Plaintiff's signs are not obscene as to minors.***

1.     There is no obscenity law applicable to Plaintiff's signs.

Defendants contend that Plaintiff's sexual assault allegation signs are unprotected because they are "directed at minors" and "obscene to minors." Opp. at 10. But before considering whether that may be true, Defendants' efforts to ban Plaintiff's signs fail because Defendants have

---

https://abcnews.com/Politics/trump-defends-infamous-access-hollywood-comments-warns-biden/story?id=105530533 [https://perma.cc/Y44P-8547].

2

identified no law that Plaintiff would violate by displaying its signs, even if they were obscene as to minors (which they are not).

This case began when Defendants informed Plaintiff that "[t]he The National Park Service may impose and enforce permit conditions to prevent unlawful conduct, including the display of obscene materials prohibited under federal law. . . . If a permittee chooses not to comply with a lawful direction to cease prohibited conduct, the National Park Service may take further steps as appropriate to ensure compliance." ECF 9 (Amended Complaint) ¶ 12. But if there is no law prohibiting the display of Plaintiff's signs, then "further steps" by Defendants to "ensure compliance" would amount to naked censorship of Plaintiff's speech. And there is no such law.

Defendants point to 36 C.F.R. § 2.34(a)(2). Opp at 3. That Park Service regulation prohibits disorderly conduct on Park Service land, including "Us[ing] language, an utterance, or gesture, or engag[ing] in a display or act that is obscene." But such conduct is an offense only if engaged in "with intent to cause public alarm, nuisance, jeopardy or violence, or knowingly or recklessly creating a risk thereof." 36 C.F.R. § 2.34(a). Plaintiff displayed these signs in response to February 24, 2026 news reports about allegations in the Epstein files, and removed them when threatened by Defendants on April 16. First Declaration of Anita Carey ("First Carey Decl.") ¶¶ 9-12 (ECF 8-1). While Plaintiff displayed the signs, they created no public alarm, nuisance, jeopardy or violence, and Defendants have not asserted—in this litigation, in their communications with Plaintiff, or otherwise—that they did, or that Plaintiff has acted with such intent, knowledge, or recklessness. Nor could they. There is not a smidgen of evidence that could support such an assertion.

Defendants cannot create a free-floating offense of "obscenity" out of whole cloth. There are no federal common law crimes, *United States v. Hudson*, 11 U.S. 32, 34 (1812); *United States*

*v. Davis*, 588 U.S. 445, 451 (2019), and while there are many federal statutes addressing the importation, sale, mailing, transmission, etc. of obscene materials, Defendants have identified none, and Plaintiff has found none, that could be construed to prohibit Plaintiff's signs. Nor is there a District of Columbia law that could be construed to prohibit Plaintiff's signs; the District of Columbia obscenity statute makes it unlawful to "sell, deliver, distribute, or provide to a minor . . . [a]ny . . . printed matter . . . which contains explicit and detailed verbal descriptions or narrative accounts of sexual excitement, sexual conduct, or sado-masochistic abuse and which taken as a whole is patently offensive because it affronts prevailing standards in the adult community as a whole with respect to what is suitable material for minors." D.C. Code § 22–2201(b)(1)(A)(ii). Plaintiff's signs have no such content.

### 2.    In any event, Plaintiff's signs are not obscene.

Even if there were a relevant law prohibiting the display of "obscene" words where minors could see them—which there is not—Plaintiff's signs could not be considered obscene as to minors.

*First*, Defendants are wrong to suggest that Plaintiff's signs are directed at minors. Although one of the signs begins with the word "KIDS," the other sign simply says, "TRUMP RAPED LITTLE GIRLS," and is not addressed to minors at all. Because the signs were at Plaintiff's public demonstration site, they were visible to passersby of all ages and their messages were relevant to all observers. As Plaintiff has explained, "[t]he sign that begins with 'KIDS' may well make parents think about what lessons their children are learning if they see their parents still supporting an adjudicated sex criminal like President Trump." Sixth Carey Decl. ¶ 4. Defendants therefore are incorrect that their "request that Accountability NOW take down its two child-rape signs pertained only to speech directed at minors." Opp. at 11. The government's "interest in

4

protecting children from harmful materials . . . does not justify an unnecessarily broad suppression of speech addressed to adults." *Reno v. ACLU*, 521 U.S. 844, 875 (1997). As Justice Frankfurter put it long ago, when describing a law that made it an offense to make available to the general public materials found to have a potentially harmful influence on minors, "[s]urely, this is to burn the house to roast the pig." *Butler v. Mich.,* 352 U.S. 380, 383 (1957). Defendants' narrow tailoring arguments, Opp. at 19-22, therefore falter right out of the gate: by forbidding Plaintiff from displaying these signs, Defendants are not regulating speech that is directed to minors; they are regulating speech that is directed to all members of the public—adults and minors—who come across Plaintiff's demonstration.

*Second*, in any event, Plaintiff's signs are not obscene even as to minors. Defendants agree that to be obscene as to minors, the material must "(a) taken as a whole, and under contemporary community standards, appeal to the prurient interest of minors; (b) depict or describe specifically defined sexual conduct in a way that is patently offensive for minors; and (c) taken as a whole, lack serious literary, artistic, political, or scientific value for minors." *Free Speech Coal., Inc.*, 606 U.S. at 474 (emphases omitted). "[P]rurience may be constitutionally defined for the purposes of identifying obscenity as that which appeals to a shameful or morbid interest in sex." *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 504 (1985) (citing *Roth v. United States,* 354 U.S. 476 (1957)).

Plaintiff's signs raise awareness of sexual assault allegations against the President. Its signs *condemn* the sexual abuse of minors and are part of Plaintiff's challenge to the President's fitness to remain in office. It is difficult to fathom how signs that reference sexual assault allegations in the context of condemning them appeal to a "shameful or morbid interest in sex." *Id.* If that were the case, any reference to any allegation of rape or sexual assault that minors may come across

5

would be obscene as to minors and unprotected. Nearly every article in the regular "Sexual Assault" section of *Teen Vogue* would be unprotected obscenity.[4] Television shows, movies, and books that involve sexual assault and sexual abuse would be unprotected obscenity. As would be all of the news reports calling attention to the same alleged crimes referenced in Plaintiff's signs.[5] Defendants have provided no authority, and Plaintiff is unaware of any, suggesting that messages calling attention to and condemning the rape of minors appeals to the prurient interest of the average minor under any contemporary community standard, much less the standard of this community. Defendants may respond that articles in *Teen Vogue* and news reports have "serious literary, artistic, political, or scientific value" for minors, *Miller v. California*, 413 U.S. 15, 24 (1973), but so do Plaintiff's signs—the internet and cable television have not supplanted handmade signs as constitutionally-meaningful channels of political and social information.

Defendants' reliance on the non-binding decision in *United States v. Guglielmi*, 819 F.2d 451 (4th Cir. 1987), is entirely inapt. In that case, the defendant conceded that the materials, two videos featuring bestiality and six videos featuring sex acts between humans, were "disgusting and repellent"—indeed, his principal argument was that "the materials are so disgusting and repellent that they could not be found to appeal to the prurient interest of the average person, nor to the average zoophiliac," because the average person would be too disgusted by the videos to be sexually aroused by them. *Id.* at 452, 455. The court rejected this argument, reasoning that "[s]urely

---

[4] *See, e.g.*, Mariel Padilla, *Sexual Misconduct Allegations Against Trump's Government Picks: A Running List*, Teen Vogue (Nov. 21, 2024), https://www.teenvogue.com/story/sexual-misconduct-allegations-trump-government-picks (last visited June 22, 2026) [https://perma.cc/SC8A-563L] ("Several of Donald Trump's top picks to lead his government have been accused of sexual assault, harassment or child sex trafficking.").

[5] *See, e.g.*, Meredith Kyle, *FBI Received Rape Allegation Against Trump During Epstein Probe*, People Mag. (Dec. 23, 2025, at 15:41 ET), https://people.com/epstein-files-rape-allegation-against-trump-11875364 [https://perma.cc/9ZD8-TAVL].

Guglielmi is right that the reaction of most people to these films would be one of rejection and disgust, not one of sexual arousal, but that cannot lead to the conclusion that the most offensive material has constitutional protection while less offensive material does not." *Id.* at 455. Plaintiff agrees that tending to arouse sexual desire in the average person is not strictly necessary for material to be legally obscene, but its signs calling attention to allegations of sexual misconduct by a public servant bear no resemblance to hard-core pornographic films featuring bestiality.

Nor do Plaintiff's signs "depict or describe specifically defined sexual conduct in a way that is patently offensive for minors." *Free Speech Coal., Inc.*, 606 U.S. at 474 (2025). Referencing the alleged criminal sexual conduct—rape of little girls—does not "depict or describe" the conduct in an offensive manner. The signs do not "depict or describe" the sexual conduct at all; they simply label it. Defendants' contention that the signs "accost[] children with a graphic description of violent sexual crimes," Opp. at 15, is hallucinatory. Defendants offer no counterpoint to this Court's holding that "[s]ex and obscenity, . . . as the Supreme Court has held, are not synonymous." *Freedberg v. U.S. Dep't of Just.*, 703 F. Supp. 107, 109 n.3 (D.D.C. 1988) (citing *Roth,* 354 U.S. at 487). The D.C. Council recognized as much when it specified that written material could be obscene as to minors only if it contained "explicit and detailed verbal descriptions or narrative accounts of sexual excitement, sexual conduct, or sado-masochistic abuse." D.C. Code § 22–2201(b)(1)(A)(ii). If simply using the word "rape" or the phrase "raped little girls" in the context of a peaceful protest against the President "affronts contemporary community standards of decency," *Miller*, 413 U.S. at 31, then every high school in America that requires students to read Harper Lee's *To Kill a Mockingbird* is, under Defendants' definition, exposing minors to unprotected obscenity.

In sharp contrast to Plaintiff's signs are President Trump's own words in the leaked *Access*

*Hollywood* tape. In 2017, a women's advocacy group played the *Access Hollywood* video on a 10-by-16 feet screen, with sound and subtitles, on the National Mall in front of the Washington Monument "[f]or 12 hours straight."[6] The demonstration was permitted by the National Park Service as an exercise of the group's free speech rights.[7] One couple, visiting from Ohio, "stopped briefly and said they thought it was 'great' that the advocacy group was showing it so prominently" and "a good way to shed light on sexual harassment and sexual exploitation, especially in the shadows of George Washington's monument."[8] In contrast to this demonstration from President Trump's first term in office depicting for a broad audience, including minors, profane, vulgar, and sexually explicit language used by the President ("I moved on her like a bitch." "Grab 'em by the pussy."),[9] Plaintiff's signs simply restate publicly reported allegations of criminal sexual behavior.

Defendants designate *Ginsberg v. New York*, 390 U.S. 629 (1968) and *Free Speech Coalition, Inc. v. Paxton*, 606 U.S. 461 (2025) as authorities on which they chiefly rely. Opp. at ii. But the holding of neither case is even relevant to the question before the Court here. In *Ginsberg*, the magazine-seller's "contention [was] the broad proposition that the scope of the constitutional freedom of expression secured to a citizen to read or see material concerned with sex cannot be made to depend upon whether the citizen is an adult or a minor." 390 U.S. at 636. In other words, he argued that there could be no such thing as "obscene for minors." The Court rejected that contention, ruling that a state could draw such a line. *Id*. at 636-37. Plaintiff does not dispute that

---

[6] Perry Stein, *Trump's lewd 'Access Hollywood' tape is playing on repeat for 12 hours on the Mall*, N.Y. Times (Oct. 6, 2017), https://www.washingtonpost.com/local/the-trump-access-hollywood-tape-is-playing-on-repeat-for-12-hours-on-the-mall/2017/10/06/c19a4d52-aaa2-11e7-92d1-58c702d2d975_story.html (last visited June 22, 2026) [https://perma.cc/8ZZN-K5W8].

[7] *Id.*

[8] *Id.*

[9] N.Y. Times, *supra* note 2.

8

settled proposition. It is not an issue here. Mr. Ginsberg "ma[de] no argument that the magazines [he sold] are not 'harmful to minors' within the definition" of the New York statute, *id*. at 635, and the Court did not address that question. The holding in *Ginsberg* thus tells us nothing about what is or is not obscene as to minors, which *is* the issue here.

Free Speech Coalition* likewise said nothing about whether any given material is or is not obscene for minors. The question there was whether Texas could require proof of age by adults who wished to access pornographic material that was not obscene for adults but was obscene for minors. *See* 606 U.S. at 465-66. The Court answered yes. *Id*. The obscenity *vel non* of any material was, again, not before the Court.

Finally, Plaintiff's volunteers' actual experiences with minors who visit Plaintiff's demonstration contradict Defendants' argument that the signs are obscene for minors. As Ms. Carey reports, "[w]e have had no complaints from children or their parents of the sort one would expect if we were displaying obscene material." Sixth Carey Decl. ¶ 4. Similar to how former Fox News host Gretchen Carlson showed President Trump's *Access Hollywood* tape to her children "to see how not to treat human beings,"[10] it is entirely reasonable to expect that Plaintiff's signs may "engender[] healthy political discussion among minors or between minors and their parents," Opp. at 18; *see* Sixth Carey Decl. ¶ 4 ("The sign that begins with 'KIDS' may well make parents think about what lessons their children are learning if they see their parents still supporting an adjudicated sex criminal like President Trump."). Moreover, Plaintiff's signs are quintessential political speech designed to spark conversations with members of the public about the President's

---

[10] Jon Levine, *Gretchen Carlson Says She Showed Trump's 'Access Hollywood' Tape to Her Children*, The Wrap (Oct. 17, 2017, at 19:39 ET), https://www.thewrap.com/gretchen-carlson-says-she-showed-trumps-access-hollywood-to-her-children/ [https://perma.cc/9F4M-RMUG].

9

conduct and his fitness to remain in office, the very topic of Plaintiff's demonstration. First Carey Decl. ¶ 4.

Defendants' arguments against Plaintiff's signs therefore fail on all grounds.

**B.**    ***Plaintiff's 8647 message is neither threatening nor inciteful.***

Plaintiff is also likely to succeed on the merits of its claim that its use of the phrase 8647 is protected by the First Amendment. Defendants offer nothing but a generalized opinion unconnected to the facts of this case in trying to rebut Plaintiff's evidence showing that its flags and raccoon sign did not convey a threat to the President. The context in which Plaintiff displayed the flag makes this clear. Plaintiff purchased the flag from Amazon.com in October 2025 and has been displaying it at its demonstration on and off since then. Sixth Carey Decl. ¶ 2. One of the key premises of Defendants' argument—that Plaintiff started displaying its flag only after the Comey indictment and related reporting—therefore is factually incorrect; Plaintiff was displaying the 8647 flag for months before the Acting Attorney General announced that the seashell photograph was a threat.

Defendants also misrepresent the reporting that followed the Comey indictment: media outlets reported that the *prosecution alleged* that James Comey's social media post of seashells assembled to read 8647 was a threat, not that people were actually using 8647 to convey a threat. The Associated Press article Defendants cite did not report that "'folks associate' '86-47' with political violence," Opp. at 24—that quote came from Mr. Comey, who "said he assumed that the numbers reflected a political message, not a call to violence," but deleted the post because he "didn't realize some folks associate those numbers with violence."[11] Much of the post-Comey

---

[11] Alanna Durkin Richer & Eric Tucker, *Ex-FBI Director Comey indicted again, in a probe over an online post officials call a Trump threat*, The Assoc. Press (Apr. 28, 2026, at 18:08 ET),

indictment reporting in fact cast doubt on the President's and Department of Justice's position. For example, the New York Times explained that Mr. Comey was indicted for posting a photograph of "seashells arranged to say '86 47,' combining the slang term '86,' often used to mean dismiss or remove, with an apparent reference to Mr. Trump, the country's 47th president."[12] Similarly, USA Today explained that "Comey's post was interpreted by some as saying to '86' No. 47 — Trump is the 47th president. According to Merriam-Webster, '86' is used as a colloquial term meaning 'to throw out,' 'to get rid of,' or 'to refuse service to.'"[13] Even Fox News noted that "[i]n the slang often used in the service industry, to '86' something means to eject, cancel or get rid of it. And President Donald Trump is the 47th president."[14] Restaurant workers, in particular, called the Justice Department's interpretation "ridiculous,"[15] and a "linguistic investigation" found that "[a] general speaker of contemporary American English would interpret Comey's post as an

---

https://apnews.com/article/comey-indicted-seashell-photo-86-47-a7fdd67891a7f74bc6fd8ce4d3d4170a [https://perma.cc/S245-8TNX].

[12] Devlin Barrett & Tyler Pager, *Trump Administration Secures New Indictment Against Comey*, N.Y. Times (Apr. 28, 2026), https://www.nytimes.com/2026/04/28/us/politics/james-comey-indictment.html (last visited June 22, 2026) [https://perma.cc/3TUV-CGDP].

[13] Fernando Cervantes Jr., *What does 8647 mean? What to know as James Comey is indicted again*, USA Today (Apr. 28, 2026, at 14:47 ET), https://www.usatoday.com/story/news/politics/2026/04/28/what-does-8647-mean-what-to-know-about-james-comey-indictment/89842950007/ [https://perma.cc/7L99-Z56R].

[14] Greg Norman-Diamond, *'86 47' slogan tied to James Comey resurfaces at May Day protests across US*, Fox News (May 2, 2026, at 13:04 ET), https://www.foxnews.com/us/86-47-slogan-tied-james-comey-resurfaces-may-day-protests-us [https://perma.cc/M73Z-QWRD] (featuring photographs of demonstrators carrying "8647" signs, including one sign reading "86 THE WHOLE REGIME.").

[15] Dareh Gregorian, *'86 it': Restaurant workers say the term at the center of James Comey's indictment is 'everyday lingo'*, NBC News (Apr. 29, 2026, at 20:15 ET), https://www.nbcnews.com/politics/justice-department/86-james-comey-indicted-restaurants-rcna342674 [https://perma.cc/J2YN-XVFZ].

11

expression of opinion, a desire to 'eject' the president from office."[16]

That was certainly Plaintiff's understanding of the post-Comey indictment reporting. Sixth Carey Decl. ¶ 2 ("[M]uch of the widespread reporting about Mr. Comey's indictment actually debunked the Justice Department's risible allegation about the meaning of those numbers."); *see also* ECF 15 at 2-3 (Plaintiff's volunteer explaining to Secret Service officers regarding the 8647 flag that "I never heard of it standing for anything other than Trump shouldn't be in office.").

Defendants also argue that a sign reading "PARTY . . . WHEN HE'S DEAD" changes the context of the 8647 message to a threat. It does not. As Plaintiff explains, "party when he's dead" is a "sentiment [that] is widely shared on social media by people who believe that President Trump is destroying democracy." Sixth Carey Decl. ¶ 6. But "it is in no way a call to do physical harm to the President." *Id.* This is just common sense. A sports player may hope his team wins the big game so they can all celebrate; that does not mean he will cheat to achieve that result. A lawyer may hope to party when she wins a big case; that does not mean she will try to bribe opposing counsel to throw the case. And the sentiment itself is fully protected speech: it is far less direct than the Deputy Constable's remark in *Rankin v. McPherson*, 483 U.S. 378 (1987), upon hearing of the assassination attempt on President Reagan, "if they go for him again, I hope they get him." *Id.* at 378. It is likewise far less direct than the defendant's statement in *Watts v. United States*, 394 U.S. 705 (1969), that, "if they ever make me carry a rifle the first man I want to get in my sights is L.B.J." *Id.* at 706. "[T]he inappropriate or controversial character of a statement is irrelevant to

---

[16] Phillip M. Carter, *To '86' occasionally means to kill but usually doesn't: A linguistic investigation into the Instagram threat charge against James Comey*, The Conversation (May 28, 2026, at 08:43 ET), https://theconversation.com/to-86-occasionally-means-to-kill-but-usually-doesnt-a-linguistic-investigation-into-the-instagram-threat-charge-against-james-comey-283016 [https://perma.cc/5D2M-5H2S].

the question whether it deals with a matter of public concern." *Rankin*, 483 U.S. at 387. If these statements did not qualify as true threats (as they did not), it is impossible to believe that Plaintiff's use of 8647 was a true threat.

Defendants also call attention to what they call "a balloon depicting a green man sexually assaulting the President." Opp. at 24. In fact, the balloon depicts President Trump and Jeffrey Epstein engaging in a sex act. Sixth Carey Decl. ¶ 7. It is one of a set of balloons, manufactured by a company in Denmark, depicting President Trump engaging in sex acts with his friends Vladimir Putin, Benjamin Netanyahu, Elon Musk, and ICE. *Id*. It is a political statement—perhaps uncouth—but well within the bounds of political commentary and entirely irrelevant to the question of whether 8647 is a true threat.[17]

Finally, Defendants argue that their "request to take [the flag] down . . . furthered a compelling governmental interest [in presidential safety] in a narrowly tailored fashion." Opp. at 10. Although Defendants have a compelling interest in protecting the safety of the President, prohibiting Plaintiff from displaying its flag does not serve that interest in a narrowly tailored

---

[17] This 1872 *Harper's Weekly* cartoon by Thomas Nast, depicting presidential candidate Horace Greeley and Tammany Hall/KKK eating each other, perhaps falls in the same category of an uncouth but powerful graphic political statement (the paper in Greeley's pocket reads, "What I know about swallowing, by Horace Greeley."):



fashion—or in any fashion at all—unless the flag is a true threat. A restriction on speech "is narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." *Frisby v. Schultz*, 487 U.S. 474, 485 (1988) (citing *City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 808-810 (1984)). Because Plaintiff's flag does not convey any threat, eliminating it targets no "evil" at all. Defendants might as well tell Plaintiff to take down its rainbow flag and call that narrowly tailored. Absent a true threat, Plaintiff has the right to decide how to express its impeachment and removal message, *see Cohen v. California*, 403 U.S. 15, 24 (1971) (the "usual rule" is that "governmental bodies may not prescribe the form or content of individual expression"). In our democracy, the government does not get to dictate what words private individuals use to convey their ideas.[18]

## II.    The Remaining Preliminary Injunction Factors Weigh in Plaintiff's Favor.

Defendants agree that assuming Plaintiff prevails on the merits, it will suffer irreparable harm without a preliminary injunction. Opp. at 25.

With respect to the balance of the equities and the public interest, Defendants attempt to minimize the harm they would inflict upon Plaintiff by asserting that it may continue to display messages that convey the same ideas using government-approved words. Opp. at 27. But "we cannot indulge the facile assumption that one can forbid particular words without also running a substantial risk of suppressing ideas in the process. Indeed, governments might soon seize upon

---

[18] Defendants note that Plaintiff "does not allege or argue that Defendants regulated its speech based on viewpoint." Opp. at 19 n.14. There is no doubt that if Plaintiff posted a sign saying, "Trump Loves Little Girls" or "Trump Supports Women," or flew a flag saying, "Re-elect 47," no action against it would be threatened. Nevertheless, if the signs are legally obscene and the flag is a true threat, the viewpoint discrimination is irrelevant. But if, as Plaintiff has shown, the signs are not obscene and the flag is not a threat, then any action taken based on that expression would self-evidently be viewpoint discriminatory.

the censorship of particular words as a convenient guise for banning the expression of unpopular views." *Cohen*, 403 U.S. at 26. Defendants' argument thus contravenes the "bedrock principle underlying the First Amendment . . . that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989).

Although Defendants have an interest in protecting children from obscenity and the President from true threats, prohibiting Plaintiff from displaying its signs and flags do not serve these interests. The government "cannot suffer harm from an injunction that merely ends an unlawful practice." *Susman Godfrey LLP v. Exec. Off. of President*, 789 F. Supp. 3d 15, 57 (D.D.C. 2025) (quoting *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015)), *appeal pending*, No. 25-5310 (D.C. Cir. argued May 14, 2026); *see also League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("There is generally no public interest in the perpetuation of unlawful agency action."). This applies even in contexts where the government claims that its preferred course of action would save lives. *Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 766 (2021) ("It is indisputable that the public has a strong interest in combating the spread of the COVID–19 Delta variant. But our system does not permit agencies to act unlawfully even in pursuit of desirable ends.").

Defendants' invocation of the events the White House has planned in honor of the 250th anniversary of the signing of the Declaration of Independence does not help them. Defendants' argument that children visiting the Nation's Capital will be disturbed by Plaintiff's two small signs repeating publicly reported sexual assault allegations in non-graphic terms is especially unconvincing in light of the fact that children were present and actively invited to participate in the recent Ultimate Fighting Championship ("UFC") event held on the White House lawn on June

15

14, during which each fighter entered the Lincoln Memorial chamber "accompanied by a child."[19] This was an event featuring blood, profanity, and violence.[20] Indeed, as the Huffington Post put it, "[t]he presence of children at the notoriously violent sport strikes a somewhat unusual chord."[21] If minors can handle the gore and vulgarity at a White House-hosted UFC fight, it is reasonable to assume they can handle two small signs at a demonstration on Constitution Avenue that call attention to alleged sex crimes by the President.

## III.    Plaintiff's Requested Relief Is Appropriate and Warranted.

Plaintiff's requested relief is especially appropriate in light of Defendants' calling attention to Plaintiff's other signs at its demonstration, such as its sign showing a raccoon waiving an 8647 flag and a sign that says, "Trump Assaults Children Obviously," Opp. at 8, hinting that the government may consider them not be protected speech. Plaintiff therefore has standing to seek relief with respect to its substantially similar signs and flags, which are protected by the First Amendment for the same reasons Plaintiff's sexual assault allegation signs and 8647 flag are. *See* ECF 29 at 3 (extending TRO to include Plaintiff's "raccoon sign and [other] '8647' flags" "for the reasons explained in the Court's [earlier] memorandum opinion"). They are not obscene as to

---

[19] Brandi Buchman, *Lawsuit Reveals An Incredibly Weird Detail About Trump's UFC Event*, Huffington Post (June 11, 2026, at 12:30 ET), https://www.huffpost.com/entry/lawsuit-reveals-an-incredibly-weird-detail-about-trumps-ufc-event_n_6a2ad2f3e4b01046d7173e5f [https://perma.cc/T3XZ-2LSR].

[20] *See, e.g.*, Jamal Walker & Marcus Reichley, *Trump's White House UFC spectacle: Blood, profanity and military pomp*, Cronkite News (June 15, 2026), https://cronkitenews.azpbs.org/2026/06/15/trump-ufc-spectacle/ (last visited June 22, 2026) [https://perma.cc/SN7P-H87F]; Aidan McLaughlin, *Trump's Bloody, Garish Birthday Gift to Himself: A White House UFC Fight*, Vanity Fair (June 15, 2026), https://www.vanityfair.com/story/trump-white-house-ufc-fight?srsltid=AfmBOop17qRx30IpKOPUuKzQJ8UX84NQHBhG723Q51sexmz0f0SZBmfR (last visited June 22, 2026) [https://perma.cc/8GS8-E9A3].

[21] Buchman, *supra* note 20.

minors or adults and do not convey a true threat or incite violence.

Plaintiff withdraws its request for an order requiring Defendants "to give Plaintiff two business days' notice before revoking their demonstration permit for any other purported reason" for the reasons explained in the Court's order extending the TRO. ECF 29 at 3 n.1. A revised proposed order is attached.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for a preliminary injunction should be granted.

June 22, 2026                                          Respectfully submitted,

*/s/ Aditi Shah*
Aditi Shah (D.C. Bar No. 90033136)
Laura K. Follansbee (D.C. Bar No. 1782046)
Arthur B. Spitzer (D.C. Bar No. 235960)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
  OF THE DISTRICT OF COLUMBIA
529 14th Street, N.W., Suite 722
Washington, D.C. 20045
(202) 457-0800
ashah@acludc.org
lfollansbee@acludc.org
aspitzer@acludc.org

*Counsel for Plaintiff**

---

* Counsel wish to express their appreciation to ACLU-D.C. paralegal Ameerah Adetoro for her assistance in the preparation of this brief.

17