IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ACCOUNTABILITY NOW USA,

    *Plaintiff*,

    *v.*

KEVIN GRIESS, *Superintendent of the National Mall and Memorial Parks*, *et al.*,

    *Defendants*.

Civil Action No. 26-1385 (RDM)

**DEFENDANTS' SURREPLY IN OPPOSITION TO**
**PLAINTIFF'S RENEWED MOTION FOR A PRELIMINARY INJUNCTION**

At the preliminary-injunction hearing on June 23, 2026, the Court invited Defendants to file a surreply to address issues raised in Plaintiff's reply brief and at oral argument.  Defendants submit this short surreply to point out that (1) Plaintiff's briefs never argued that Defendants could not rely on the obscenity-for-minors doctrine (and instead addressed that doctrine on the merits); (2) Plaintiff's arguments reflected its apparent understanding that Defendants were motivated by protecting children; (3) Plaintiff's argument that the National Park Service was not enforcing any applicable obscenity law is forfeited; and (4) even if that argument is not forfeited, the National Park Service was enforcing obscenity law.

***First***, any argument that the obscenity-for-minors doctrine does not apply to Defendants' regulation of signs directed at minors because Defendant Dr. Griess's April 15, 2026, email used the term "obscenity" instead of "obscenity for minors" is not properly before the Court.  The principle of party presentation, which is "basic to our adversary system," provides that courts must "rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter

1

of matters the parties present." *Maalouf v. Islamic Republic of Iran*, 923 F.3d 1095, 1109 (D.C. Cir. 2019) (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008)).

Here, Plaintiff's briefs did not argue that the agency's stated basis ("unprotected obscenity") for asking that the signs be taken down affects the First Amendment analysis or did not encompass obscenity for minors. Nor did they argue that Dr. Griess's request to take down signs about child rape, one of which was explicitly directed at "KIDS," was not motivated by an interest in protecting minors from obscenity.

To the contrary, Plaintiff first discussed the obscenity-for-minors doctrine in its original preliminary-injunction brief. Dkt. No. 8 (Prelim. Inj. Mot.) at 11–12. There, Plaintiff explained that on the same day that Plaintiff filed its Complaint, a Department of the Interior spokesman responded to a question about Plaintiff's lawsuit by stating, "As a reminder, we are approaching America's 250th and we have visitors of all ages coming to our nation's capital." Prelim. Inj. Mot. at 11 n.23 (quoting BrieAnna J. Frank, *National Park Service faces free speech lawsuit over anti-Trump signs*, USA Today (Apr. 23, 2026), https://perma.cc/9SKA-KFQ5)); Dkt. No. 27 (Renewed Mot.) at 15 n.23 (same). Plaintiff never disputed that these remarks reflected Defendants' motives.

In its Reply, Plaintiff thoroughly addressed Defendants' obscenity-for-minors argument without ever arguing that the obscenity-for-minors doctrine was inapplicable because Dr. Griess's email said "obscenity" instead of "obscenity for minors." Dkt. No. 34 (Pl.'s Reply Br.) at 6–10; Renewed Mot. at 14–15. Notably, Plaintiff argued that Defendants' incitement argument with respect to the "86-47" flag was an impermissible post hoc rationalization, *see* Renewed Mot. at 20, without making that same argument with respect to obscenity for minors.

The Court should not consider an argument that Plaintiff did not timely raise and the parties did not brief, particularly when doing so hinges on fashioning a rule about the degree of detail required in contemporaneous government communications absent any final agency action.

***Second***, even if this argument were properly before the Court, it does not follow that a reference to "obscenity" means only "obscenity for adults" or "obscenity for the public at large" and excludes "obscenity for minors." Although much speech that might be obscene for minors would not be obscene for adults, as a doctrinal matter, the obscenity-for-minors standard is just the obscenity standard adjusted for minors. *See Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461, 474 (2025) (explaining that "a State may broaden *Miller*'s 'definition of obscenity' to cover that which is obscene from a child's perspective" and describing the obscene-for-minors standard with reference to *Miller*); *see also Ginsberg v. New York*, 390 U.S. 629, 635 (1968) (describing the challenged harmful-to-minors statute as "a variable from the formulation for determining obscenity under *Roth*"); *id.* at 636 (accepting the proposition that "the concept of obscenity or of unprotected matter may vary according to the group to whom the questionable material is directed or from whom it is quarantined" (quoting *Bookcase, Inc. v. Broderick*, 18 N.Y.2d 71, 75 (1966))).

This all makes sense in the light of National Park Service regulations. For example, 36 C.F.R. § 2.34 provides that "engaging in a display or act that is obscene" is a prohibited act in certain circumstances. It says nothing about minors. But it would be highly counterintuitive if that regulatory use of "obscene" did not embrace obscenity for minors. And if that is true of a formal statute or regulation, it should be true for an agency email. Especially when one of the signs was expressly directed at "KIDS" and Plaintiff did not dispute this motive.

***Third***, the Court should treat Plaintiff's argument in reply that the National Park Service was not enforcing any applicable obscenity law as forfeited. "It is a well-settled prudential doctrine

that courts generally will not entertain new arguments first raised in a reply brief." *Aleutian Pribilof Islands Ass'n, Inc. v. Kempthorne*, 537 F. Supp. 2d 1, 12 n.5 (D.D.C. 2008) (citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 196 (D.C. Cir. 1992)).  Considering late-breaking arguments is "manifestly unfair" and "risks the possibility of an improvident or ill-advised opinion." *Herbert*, 974 F.2d at 196 (citation and quotation marks omitted).  True, the opportunity for a surreply can alleviate concerns with unfairness.  *Id.*  But Plaintiff raised this argument for the first time late in the day before the hearing.  And Plaintiff's lack-of-authority argument is not necessary to resolve claim with respect to the signs about child rape.  The Court need only consider whether the speech is categorically unprotected and then apply the appropriate constitutional standard.

*Finally*, even if the Court reaches Plaintiff's late argument, the National Park Service has the authority to ask individuals to take obscene signs down from National Park System lands.  The Secretary of Interior and Director of the National Park Service are charged with promoting and regulating the use of the National Park Service "to provide for the enjoyment of the scenery" and "natural and historic objects."  54 U.S.C. § 100101(a).  Given that mandate and its rulemaking authority, 54 U.S.C. § 100751(a), the National Park Service may regulate conduct on National Park System lands and revoke permits for violations of applicable law.  36 C.F.R. § 7.96(g)(6).

One applicable regulation is 36 C.F.R. § 2.34, which prohibits "engag[ing] in a display or act that is obscene" when doing so would "recklessly creat[e] a risk" of causing "public alarm." That would at least generally be the case as to speech that qualifies as obscene for minors when it is apparent that families with minors are likely to encounter the speech.  If it were otherwise, the National Park Service's authority on National Park System lands to ask someone to cease an act or display that is obscene for minors would be significantly curtailed.

D.C. Code § 22-2201 also applies.  This statute makes it unlawful to "sell, deliver, distribute, or provide to a minor … [a]ny … printed matter … which contains explicit and detailed verbal descriptions or narrative accounts of sexual excitement, sexual conduct, or sado-masochistic abuse and which taken as a whole is patently offensive because it affronts prevailing standards in the adult community as a whole with respect to what is suitable material for minors."  D.C. Code § 22-2201(b)(1)(ii).  In practice, the D.C. Court of Appeals has indicated that this statute tracks the Supreme Court's obscenity doctrine.  *Lakin v. United States*, 363 A.2d 990, 996 (D.C. Cir. 1976) (explaining that the D.C. Court of Appeals has "followed the lead of the Supreme Court in reading the *Miller* guidelines" into the D.C. Code § 22-2201's predecessor).  And Defendants are unaware of any cases construing the statute's "explicit and detailed verbal descriptions" requirement to demand more detail than *Miller*'s second prong, which deems material to be patently offensive if it "goes substantially beyond customary limits of candor and affronts contemporary community standards of decency."  *Miller v. California*, 413 U.S. 15, 31 (1973).  Under *Ginsberg*, the customary limits of candor would logically be "variable" in an obscenity-for-minors analysis.  390 U.S. 635.  Although Plaintiff's signs do not contain the degree of graphic detail that would be obscene for adults, their references to child rape go beyond customary limits of candor for speech expressly directed at "KIDS."

June 25, 2026

Respectfully submitted,

STANLEY E. WOODWARD, JR.
D.C. Bar No. 997320
Associate Attorney General

JOHN K. ADAMS
Illinois Bar No. 6323541
Deputy Associate Attorney General

MICHAEL WEISBUCH
D.C. Bar. No. 1743257
Senior Counsel to the Associate Attorney General

*/s/      Devin A. Froseth*
DEVIN A. FROSETH
Florida Bar No. 1074655
Counsel to the Associate Attorney General

U.S. Department of Justice
950 Pennsylvania Avenue, Northwest
Washington, D.C. 20530
202-514-2000
devin.a.froseth@usdoj.gov

*Counsel for Defendants*