**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ACCOUNTABILITY NOW USA,<br><br>*Plaintiff*,<br><br>*v.*<br><br>KEVIN GRIESS, *et al.*,<br><br>*Defendants*. | No. 26-cv-1385 (RDM) |

**PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

## TABLE OF CONTENTS


INTRODUCTION ........ 1

RELEVANT FACTS ........ 1

ARGUMENT ........ 4

I. Plaintiff Is Entitled To Fees Under § 2412(b). ........ 5

A. Accountability NOW Is a Prevailing Party Under EAJA. ........ 5

B. The National Park Service's Pre-Litigation Conduct Justifies the Award of Fees at Market Rates. ........ 6

II. Plaintiff is Entitled to Fees Under § 2412(d)(1)(A). ........ 10

A. Plaintiff Meets the Statutory Net-Worth and Size Requirements. ........ 10

B. Defendants Cannot Show That Their Position Was Substantially Justified Or That There Are Special Circumstances Making An Award Unjust. ........ 11

III. Accountability NOW's Requested Fee Award Is Reasonable. ........ 13

A. Plaintiff's Counsel's Hourly Rates Are Reasonable. ........ 14

1. Plaintiff's Counsel's Market Rates Are Reasonable. ........ 14

2. Plaintiff's Counsel's Adjusted Statutory Rates Are Reasonable. ........ 14

B. Plaintiff's Counsel's Efforts Were Reasonable. ........ 15

C. Plaintiff's Fee Claim is Reasonable. ........ 17

CONCLUSION ........ 18

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Am. Hosp. Ass'n v. Sullivan*,
1990 WL 91808 (D.D.C. May 24, 1990) ... 7

**Am. Hosp. Ass'n v. Sullivan*,
938 F.2d 216 (D.C. Cir. 1991) ... 4, 5, 6, 7, 8

*Asylumworks v. Mayorkas*,
2023 WL 2733722 (D.D.C. Mar. 31, 2023) ... 4

*Burnaman v. Bay City Independent School District*,
445 F. Supp. 927 (S.D. Tex. 1978) ... 7

*Cobell v. Norton*,
319 F. Supp. 2d 36 (D.D.C. 2004) ... 4

*Comm'r, I.N.S. v. Jean*,
469 U.S. 154 (1990) ... 1

*Davis v. Kijakazi*,
2023 WL 4234656 (D.D.C. June 28, 2023) ... 14, 15

*F.J. Vollmer Co. v. Magaw*,
102 F.3d 591 (D.C. Cir. 1996) ... 11

*Fitzgerald v. Hampton*,
545 F. Supp. 53 (D.D.C. 1982) ... 6, 7

*Grano v. Barry*,
783 F.2d 1104 (D.C. Cir. 1986) ... 6

*Haselwander v. McHugh*,
797 F.3d 1 (D.C. Cir. 2015). ... 5, 14

**Infusino v. Cardona*,
2022 WL 16713059 (D.D.C. Nov. 4, 2022) ... 6, 8

*Ivy Sports Med., LLC v. Burwell*,
174 F. Supp. 3d 130 (D.D.C. 2016) ... 4

*Louise Trauma Ctr. LLC v. U.S. Dep't of Homeland Sec.*,
2023 WL 3478479 (D.D.C. May 16, 2023) ... 13

**Markel v. Cao*,
2026 WL 2283087 (D.D.C. Aug. 7, 2026) ... 11, 13

*Mitchell-Jenkins v. Colvin*,
2016 WL 10677600 (D.D.C. March 31, 2016) ... 15

*Nat'l L. Ctr. on Homelessness & Poverty v. United States Dep't of Veteran*,
10 F. Supp. 3d 21 (D.D.C. 2013) ... 4

*Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*,
247 F. Supp. 3d 76 (D.D.C. 2017). .......... 6

*Pursuing Am.'s Greatness v. Fed. Election Comm'n*,
463 F. Supp. 3d 11 (D.D.C. 2020) .......... 11

*Porter v. Astrue*,
999 F.Supp.2d 35 (D.D.C. 2013) .......... 15

*Rolax v. Atlantic Coast Line R. Co.*,
4th Cir., 186 F.2d 473 (1951) .......... 7

*Role Models Am., Inc. v. Brownlee*,
353 F.3d 962 (D.C. Cir. 2004) .......... 11, 13

*SecurityPoint Holdings, Inc. v. Transportation Sec. Admin.*,
836 F.3d 32 (D.C. Cir. 2016) .......... 5, 6

*Sprague v. Ticonic Nat. Bank*,
307 U.S. 161 (1939) .......... 7

*Taucher v. Brown-Hruska*,
396 F.3d 1168 (D.C. Cir. 2005) .......... 11

*Thomas v. Nat'l Sci. Found.*,
330 F.3d 486 (D.C. Cir. 2003) .......... 6

**True the Vote, Inc. v. Internal Revenue Serv.*,
2019 WL 2304659 (D.D.C. May 30, 2019) .......... 8

*True the Vote, Inc. v. Internal Revenue Serv.*,
2020 WL 5656694 (D.D.C. Sept. 23, 2020) .......... 8

*Vaughan v. Atkinson*,
369 U.S. 527 (1962) .......... 6, 7

*Zhang v. USCIS*,
350 F.R.D. 577 (D.D.C. 2025) .......... 1

**Statutes** **Page(s)**

28 U.S.C. § 2412 .......... 1, 4

28 U.S.C. § 2412(b) .......... 4, 5, 6, 17, 18

28 U.S.C. § 2412(d) .......... 5, 17

28 U.S.C. § 2412(d)(1)(A) .......... 4, 5, 10, 18

28 U.S.C. § 2412(d)(2) .......... 4

28 U.S.C. § 2412(d)(2)(B) .......... 10

**Other Authorities** **Page(s)**

*Adjusted Laffey Matrix*,
http://www.laffeymatrix.com/index.html ........................................................................ 14

Devlin Barrett, *Blanche Says Others Who Post '86 47' Message Won't Be Charged Like Comey*, N.Y. Times (May 3, 2026), https://www.nytimes.com/2026/05/03/us/politics/blanchecomey-indictment-seashells.html [https://perma.cc/C5KJ-CD67] ...................................................... 10

*Mid-Atlantic Information Office: Summary of annual and semi-annual indexes*, U.S. Bureau of Lab. Stat. (last visited Nov. 12, 2026), https://www.bls.gov/regions/mid-atlantic/data/consumerpriceindexannualandsemiannual_table.html [https://perma.cc/6TG3-MAB2] ........................................................................................................................ 15

*Summary of annual and semi-annual indexes*,
U.S. BUREAU OF LABOR STATISTICS, https://www.bls.gov/regions/mid-atlantic/data/consumerpriceindexannualandsemiannualtable.htm
(last visited Jun. 21, 2023)...........................................................................................15

*The Fitzpatrick Matrix*,
U.S. Att'y Off. D.C. (last visited Nov. 12, 2026), https://www.justice.gov/usao-dc/media/1449156/dl?inline [https://perma.cc/T39K-X9AT] ................................................. 14

## INTRODUCTION

Pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA"), Plaintiff moves for an award of $211,381.40 in attorneys' fees and costs as the prevailing party in this action.[1] Pursuant to Local Civil Rule 7(m), counsel for the parties conferred and Defendants' counsel informed Plaintiff's counsel that Defendants oppose this motion.

This litigation resulted in a complete victory by Plaintiff against the United States on important issues involving the First Amendment rights of demonstrators in the Nation's Capital. The government's position, both before and during the litigation, was legally baseless, as government counsel implicitly recognized by promptly dismissing the appeal they had filed. "[T]he specific purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions." *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 163 (1990). Plaintiff is an "average person"—a grassroots volunteer organization that has no employees and virtually no net worth. This is precisely the kind of case for which the Equal Access to Justice Act was enacted.

## RELEVANT FACTS

Although this litigation was short-lived, it was fast-moving and required substantial work. Plaintiff Accountability NOW USA ("Accountability NOW") filed this action on April 23, 2026, in response to the National Park Service's ("NPS") demand that Plaintiff remove certain signs alleging sexual misconduct by President Trump from its ongoing and permitted political demonstration in Washington, D.C. One sign read "TRUMP RAPED LITTLE GIRLS," and the other read "KIDS, IF YOUR PARENTS ARE MAGA THEY LOVE CHILD RAPISTS." In the

[1] In its reply, Plaintiff will supplement this amount with the fees incurred in preparing this motion and the reply, which are compensable. *See Comm'r, I.N.S. v. Jean*, 469 U.S. 154, 162-64 (1990); *Zhang v. USCIS*, 350 F.R.D. 577, 598 (D.D.C. 2025).

exchanges between NPS officials and Plaintiff, the NPS officials labeled the signs “unprotected obscenity” and stated that NPS “may take further steps as appropriate” if Plaintiff refused to remove the signs. ECF 8-1, First Declaration of Anita Carey ¶¶ 5, 8. None of the NPS officials’ communications with Plaintiff regarding the signs “suggested that they were concerned that children might see the signs or that the signs, even if protected as to adults, were obscene as to minors.” ECF 40 (Mem. Op.) at 7.

Plaintiff filed a motion for a preliminary injunction on May 26. Sixteen hours later, at approximately 5 a.m. on May 27, a U.S. Park Police officer informed Plaintiff that a flag with the legend “8647,” which Plaintiff had been displaying on and off for more than two weeks, was a threat to the President and must be removed, and that if it were displayed again it would be deemed a violation of Plaintiff’s permit. ECF 10-2, Second Declaration of Anita Carey ¶ 2. That same day, Plaintiff filed an amended complaint (ECF 9) and moved for a temporary restraining order regarding its right to display the flag (ECF 10).

This Court heard Plaintiff’s motion for a temporary restraining order the day after it was filed, and the following day both parties submitted supplemental memoranda. ECF 15 (Pl. Suppl. Mem.); ECF 16 (Defs. Suppl. Mem.); ECF 18 (Pl. Reply). At the Court’s request, Plaintiff submitted additional photographic evidence of Plaintiff’s demonstration, providing a video that showed the context in which the flag was displayed. ECF 19 (Pl. Photographic Filing). On June 1, 2026, this Court granted Plaintiff’s motion for a temporary restraining order, ECF 21, and later extended it for an additional fourteen days, ECF 29.

Meanwhile, on June 10, Plaintiff filed a second motion for a preliminary injunction, seeking relief regarding the signs, the flag, and substantially similar displays. It was fully briefed on June 22, and the Court heard argument on June 23. The parties subsequently agreed that “there

are no materially disputed facts relevant to Plaintiff's claim" and did not object to treating Plaintiff's motion for a preliminary injunction as a motion for summary judgment. ECF 35 (Joint Status Report). After the argument, Defendants filed a surreply, ECF 36, and Plaintiff submitted a response, ECF 37-1; 43.

On June 29, the Court granted Plaintiff's motion for summary judgment and entered a permanent injunction in Plaintiff's favor. The Court concluded that Plaintiff "is entitled to prevail as a matter of law" because Plaintiff's signs "do not, by any measure, cross the line from protected political speech to unprotected obscenity" and that "is true . . . even under the less demanding obscene-as-to-minors standard." Mem. Op. at 3. It further concluded that Plaintiff's 8647 flag and similar displays "do not constitute a 'true threat' or criminal 'incitement' to violence" but rather "represent core protected speech." *Id.* The Court observed that "[a]lthough [its] opinion is lengthy, that does not mean that this is a hard case. It is not." *Id.* at 4. The Court's order permanently enjoined Defendants and their agents from revoking Plaintiff's demonstration permit in response to Plaintiff's display of its 8647 flag, the two signs accusing President Trump of sexual assault, or substantially similar displays in substantially similar contexts, or from ordering the removal of or seizing the flag, signs, or substantially similar displays. ECF 41 (Order).

This Court agreed to hold fee proceedings in abeyance pending resolution of any appeal. July 7, 2026 Min. Order. On August 28, Defendants noticed their appeal. ECF 45. Less than a month later, on September 25, Defendants filed a consent motion to dismiss their appeal. The court of appeals granted that motion and dismissed the appeal on October 13. ECF 47 (Mandate). The parties attempted but were unable to settle Plaintiff's fee request. This motion followed.

**ARGUMENT**

Fees are available to prevailing parties in actions against the United States under two provisions of EAJA, 28 U.S.C. § 2412. First, § 2412(b) provides that "[t]he United States shall be liable for [reasonable] fees and expenses to the same extent that any other party would be liable under the common law[.]" "Implicit in this provision is '[a] narrow exception' to the American Rule 'where the losing party has acted in "bad faith"'. . . as part of the conduct giving rise to the lawsuit." *Asylumworks v. Mayorkas*, 2023 WL 2733722, at *6 (D.D.C. Mar. 31, 2023) (quoting *Am. Hosp. Ass'n v. Sullivan*, 938 F.2d 216, 219 (D.C. Cir. 1991)). "There is no statutory ceiling on the hourly rate used to calculate attorneys fees under § 2412(b) and so an award of attorney's fees for bad faith can be calculated at market rates." *Cobell v. Norton*, 319 F. Supp. 2d 36, 43 (D.D.C. 2004) (internal quotation marks and citation omitted).

Second, § 2412(d)(1)(A) provides in pertinent part that "a court shall award to a prevailing party. . . fees and other expenses, . . . incurred by that party in any civil action . . . brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." The party moving to recover fees and expenses bears "an initial burden to demonstrate that [it] is a prevailing party; after [it] does so, the burden shifts to the government, which must show that its legal position was substantially justified or that special circumstances exist making an award unjust." *Ivy Sports Med., LLC v. Burwell*, 174 F. Supp. 3d 130, 138 (D.D.C. 2016). The party seeking fees also "has the burden of proving the reasonableness of those fees," *Nat'l L. Ctr. on Homelessness & Poverty v. United States Dep't of Veteran Affs.*, 10 F. Supp. 3d 21, 28 (D.D.C. 2013), and must meet certain financial requirements. Under § 2412(d)(2), "the appropriate fee rate is the statutory rate under EAJA, $125 per hour, adjusted by the increase in

the Consumer Price Index ('CPI-U') for the Washington, D.C. area." *Haselwander v. McHugh*, 797 F.3d 1, 3 (D.C. Cir. 2015).

Plaintiff is entitled to fees at the market rates of its counsel under § 2412(b) because NPS acted in bad faith when it threatened to shut down Plaintiff's demonstration to prevent its clearly protected speech. "Bad faith in conduct giving rise to the lawsuit may be found where a party, confronted with a clear statutory or judicially-imposed duty towards another, is so recalcitrant in performing that duty that the injured party is forced to undertake otherwise unnecessary litigation to vindicate plain legal rights." *Am. Hosp. Ass'n*, 938 F.2d at 220 (internal quotation marks and citation omitted). The fact that NPS's actions were taken without any "plausible basis for suppressing Plaintiff's core, political speech," Mem. Op. at 4, demonstrates that all the time and resources expended on this case could have been avoided but for NPS's willful refusal to abide by the First Amendment.

Alternatively, Plaintiff seeks fees and costs under § 2412(d)(1)(A) because it is a prevailing party that meets the statutory net-worth and size requirements, while Defendants cannot show that their position was substantially justified, and there are no special circumstances here that would make an award unjust.

## I. Plaintiff Is Entitled To Fees Under § 2412(b).

### A. Accountability NOW Is a Prevailing Party Under EAJA.

To recover fees under § 2412(b) or § 2412(d), Plaintiff must establish that it is the "prevailing party." To determine whether a litigant is a "prevailing party" under EAJA, the D.C. Circuit applies a three-part test: "(1) there must be a court-ordered change in the legal relationship of the parties; (2) the judgment must be in favor of the party seeking the fees; and (3) the judicial pronouncement must be accompanied by judicial relief." *SecurityPoint Holdings, Inc. v.*

*Transportation Sec. Admin.*, 836 F.3d 32, 36 (D.C. Cir. 2016) (citation omitted).

Plaintiff indisputably satisfies each requirement. The Court's order changed the legal relationship of the parties by enjoining Defendants and their agents from revoking Plaintiff's demonstration permit or otherwise seizing or destroying its displays because of Plaintiff's protected political speech. Mem. Op. at 52; Order at 1-2. "The injunction produced a lasting change in the parties' legal circumstances and gave [Plaintiff] the precise relief that [it] had sought." *Thomas v. Nat'l Sci. Found.*, 330 F.3d 486, 493 (D.C. Cir. 2003) (describing *Grano v. Barry,* 783 F.2d 1104, 1108-09 (D.C. Cir. 1986)). There is "no doubt" that granting Plaintiff's motion for summary judgment and entering a permanent injunction in its favor "is a form of judicial relief in [Plaintiff's] favor that alters the legal relationship between the parties." *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, 247 F. Supp. 3d 76, 114 (D.D.C. 2017).

### B. The National Park Service's Pre-Litigation Conduct Justifies the Award of Fees at Market Rates.

It is well established that under 28 U.S.C. § 2412(b), attorneys' fees can be awarded at market rates based on the improper underlying conduct of a federal agency "where 'a party, confronted with a clear statutory or judicially-imposed duty towards another, is so recalcitrant in performing that duty that the injured party is forced to undertake otherwise unnecessary litigation to vindicate plain legal rights.'" *Infusino v. Cardona*, 2022 WL 16713059, at *9 (D.D.C. Nov. 4, 2022) (quoting *Am. Hosp. Ass'n v. Sullivan*, 938 F.2d 216, 220 (D.C. Cir. 1991)) (in turn quoting *Fitzgerald v. Hampton*, 545 F. Supp. 53, 57 (D.D.C. 1982)). That is what happened here.[2]

[2] The phrase "judicially-imposed duty" might be thought to mean only a duty imposed by a court order, but its meaning is not so limited. The phrase was first used in the context of EAJA litigation in *Fitzgerald v. Hampton*, 545 F. Supp. 53, 57 (D.D.C. 1982), which was also the first case in this Circuit to award fees under § 2412(b). There, Judge Bryant explained that "the seminal case allowing recovery of fees for prelitigation vexation" was *Vaughan v. Atkinson*, 369 U.S. 527

In the *American Hospital Association* case, the district court awarded market-rate fees where the Department of Health and Human Services ("HHS") issued a regulation regarding Medicare reimbursement that was contrary to a stipulation HHS had recently signed. The court reasoned that the agency's action "could have, at best, been calculated to confuse plaintiffs' member hospitals. At worst, it was an attempt to chill plaintiffs' member hospitals' assertion of their rights as they had been defined by this court's Stipulation and Order." *Am. Hosp. Ass'n v. Sullivan*, 1990 WL 91808, at *2 (D.D.C. May 24, 1990). The court of appeals affirmed, explaining that an award of market-rate fees was warranted because "HHS effectively forced AHA to sue to enforce the plain legal rights defined by the Stipulation." 938 F.2d at 220.

Similarly, and more closely analogous to this case, this Court awarded market rate fees where the Internal Revenue Service had applied discriminatory criteria and procedures to

---

(1962), a suit in admiralty in which a shipowner had ignored a seaman's claim for maintenance and cure until the seaman "was required to hire an attorney and sue in the courts to recover maintenance and cure, agreeing to pay the lawyer a 50% contingent fee." *Id.* at 529. Fees were awarded based on the shipowner's "callous[ness]" and "recalcitrance," *id.* at 530-31; no violation of a statute or court order was involved. The Supreme Court noted that "[c]ounsel fees have been awarded in equity actions, as where Negroes were required to bring suit against a labor union to prevent discrimination. *Rolax v. Atlantic Coast Line R. Co.*, 4[th] Cir., 186 F.2d 473, 481 [(1951)]. As we stated in *Sprague v. Ticonic Nat. Bank*, 307 U.S. 161, 164 [(1939)], allowance of counsel fees and other expenses entailed by litigation, but not included in the ordinary taxable costs regulated by statute, is 'part of the historic equity jurisdiction of the federal courts.'" *Id.* at 530.

In *Fitzgerald v. Hampton,* Judge Bryant provided further examples: "Courts have extended the Vaughan principle to nonadmiralty cases which present many different factual situations. The most common extension has occurred in suits which charge that a policy of a large governmental institution, such as a school system or a prison, violates the constitutional rights of a number of citizens. In those cases courts have awarded attorney's fees when the institution, in clear default of constitutional duty, contested liability[.]" 545 F. Supp. at 57 (footnote and citations omitted). The principle "has also been applied to suits involving individual plaintiffs forced to sue to redress injury unique to the individual," *id.* at 57, such as in *Burnaman v. Bay City Independent School District*, 445 F. Supp. 927 (S.D. Tex. 1978), where a teacher was awarded fees against a school district where he was compelled to sue to rectify the district's "bad faith conduct of [his] evaluation." 545 F. Supp. at 58.

Subsequent decisions in this Court have quoted Judge Bryant's language without exploring its meaning, but there is no reason to believe its meaning has changed.

organizations seeking tax-exempt status that were perceived to have political views at odds with the incumbent administration. The Court explained:

> as to the defendants' underlying conduct, the Court concludes that this conduct does in fact rise to the level of pre-litigation bad faith sufficient to justify an award of attorneys' fees above the EAJA statutory cap[.] . . . The Court reaches this conclusion because the defendants "were confronted with a clear . . . judicially-imposed duty," *Am. Hosp. Ass'n*, 938 F.2d at 220, not to engage in viewpoint discrimination as required by the First Amendment.

*True the Vote, Inc. v. Internal Revenue Serv.*, 2019 WL 2304659, at *11 (D.D.C. May 30, 2019), *on reconsideration in part,* 2020 WL 5656694 (D.D.C. Sept. 23, 2020). Here, too, the National Park Service faced a "clear. . . duty" not to violate the First Amendment rights of persons engaged in peaceful political speech in the Nation's Capital, and thereby "forced [Accountability NOW] to undertake otherwise unnecessary litigation to vindicate [its] plain legal rights." *Infusino*, 2022 WL 16713059 at *9 (quoting *Am. Hosp. Ass'n*, 938 F.2d at 220).

This Court's memorandum opinion, ECF 40, canvassed the many reasons why the National Park Service's actions here violated Plaintiff's clear constitutional rights. Two examples highlight why its conduct qualifies as bad faith and merits an award of market-rate fees.

As to Plaintiff's signs, when NPS first advised Plaintiff that they must be removed, Ms. Carey

> responded to [Defendant] Griess directly, "seeking clarification of NPS's position and asking, in particular, why NPS believes the signs meet the legal definition of obscenity and what would happen if the signs remain on display." [ECF 8-1] at 3 (Carey Decl. ¶ 6). Griess responded as follows on April 15, 2026:
>
>> Thank you for your message. We appreciate your cooperation as we work to ensure that all permitted activities remain in compliance with federal requirements.
>>
>> To clarify, the material displayed under your permit *has been evaluated under all appropriate standards and tests* and is deemed unprotected obscenity, which the Court has established is not protected by the First Amendment. *This determination is supported by federal law which*

> *prohibits obscene material on federal property*.
>
> Because obscenity is unlawful on federal land, we must ask that the material be removed.
>
> The National Park Service may impose and enforce permit conditions to prevent unlawful conduct, *including the display of obscene materials prohibited under federal law*. All activities conducted under an NPS permit must remain lawful and in compliance with permit conditions. If a permittee chooses not to comply with a lawful direction to cease prohibited conduct, the National Park Service may take further steps as appropriate to ensure compliance.

Mem. Op. at 6-7 (emphasis added) (quoting ECF 8-1, First Carey Decl. ¶¶ 6-7). Contrary to Defendant Griess's statement, however, it is clear that Plaintiff's signs had not, in fact, "been evaluated under all appropriate standards and tests" and that Griess's "determination" was not "supported by federal law which prohibits obscene material on federal property." Defendants never identified *any* federal law that even arguably prohibited obscene material on federal property, and Plaintiff was unable to find any such law. *See* ECF 34 (Plaintiff's Reply in Support of Renewed Motion For a Preliminary Injunction) Part I.A.1. ("There is no obscenity law applicable to Plaintiff's signs."). And Defendants ultimately conceded that neither of the two signs are obscene as to adults and that "Plaintiff's second sign is neither obscene as to adults nor children." *Id.* at 28. Neither Griess nor Marisa Richardson, another NPS official with whom Ms. Carey communicated, "suggested that they were concerned that children might see the signs or that the signs, even if protected as to adults, were obscene as to minors," Mem. Op. at 7, even though that was Defendants' principal argument in this litigation. Thus, Defendant Griess's threatening statements were false when he made them, which certainly qualifies as bad faith conduct by NPS.

Regarding Plaintiff's 8647 flag, no less an authority than then-Acting Attorney General Todd Blanche recognized that the 8647 message "is used constantly," and that "[e]very one of

those statements do not result in indictments." Devlin Barrett, *Blanche Says Others Who Post '86 47' Message Won't Be Charged Like Comey*, N.Y. Times (May 3, 2026), https://www.nytimes.com/2026/05/03/us/politics/blanchecomey-indictment-seashells.html [https://perma.cc/C5KJ-CD67]. Mr. Blanche asserted that the Justice Department had additional evidence showing why James Comey's use of the phrase was criminal, and he "acknowledged that proving Mr. Comey's intent would be crucial to his prosecution." *Id*. Here, by contrast, Defendants had "*no evidence* or explanation regarding how (and why) the NPS understood Plaintiff's specific use of the term" to be a threat, Mem. Op. at 32 (emphasis added), and there was *"[n]o evidence* support[ing] Defendants' contention that the flag represented an unprotected true threat on the life or physical well-being of the President of the United States." *Id.* at 43 (emphasis added). Threatening to shut down Plaintiff's protest for a reason Defendants must have known was bogus likewise qualifies as bad faith conduct justifying an award of market-rate fees.

Finally, the fact that Defendants' conduct arose in the context of this administration's widespread efforts to suppress speech it dislikes, *see* ECF 27 (Pl. Second Mot. for Preliminary Injunction) at 1-3, reinforces the grounds to conclude that bad faith was involved here.

## II. Plaintiff is Entitled to Fees Under § 2412(d)(1)(A).

### A. Plaintiff Meets the Statutory Net-Worth and Size Requirements.

Plaintiff is a "prevailing party" as required to recover fees under § 2412(d)(1)(A) for the reasons explained above.

It also satisfies EAJA's requirements that the net worth of an association must not "exceed $7,000,000 at the time the civil action was filed" and that it must not have had "more than 500 employees at the time the civil action was filed." 28 U.S.C. § 2412(d)(2)(B). Plaintiff, an all-volunteer unincorporated association, had a net worth three orders of magnitude less than

$7,000,000 at the time this action was filed and had no employees. Seventh Declaration of Anita Carey Declaration ¶¶ 3-4.

**B. Defendants Cannot Show That Their Position Was Substantially Justified Or That There Are Special Circumstances Making An Award Unjust.**

Defendants will be unable to satisfy their burden of showing that their position was substantially justified. "In order to meet this standard, the government must show that its position was 'justified to a degree that could satisfy a reasonable person or otherwise having a reasonable basis both in law and fact.'" *Pursuing Am.'s Greatness v. Fed. Election Comm'n*, 463 F. Supp. 3d 11, 16 (D.D.C. 2020) (quoting *Taucher v. Brown-Hruska*, 396 F.3d 1168, 1172 (D.C. Cir. 2005)). The government "must demonstrate the reasonableness not only of its litigation position, but also of the *agency's* actions." *Markel v. Cao*, 2026 WL 2283087, at *4 (D.D.C. Aug. 7, 2026) (quoting *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 967 (D.C. Cir. 2004)). Although "distinct from the merits inquiry, 'the court's merits reasoning may be quite relevant to the resolution of the substantial justification question.'" *Markel*, 2026 WL 2283087, at *4 (quoting *F.J. Vollmer Co. v. Magaw*, 102 F.3d 591, 595 (D.C. Cir. 1996)). And indeed, the Court here has already concluded that Defendants' position had no reasonable basis in law or fact. *E.g.*, Mem. Op. at 4; 25, 33-37.

As a legal matter, this was an "easy case[]." Mem. Op. at 4. The Court concluded that "Plaintiff's signs and flag fall well within the heartland of protected First Amendment speech, and Defendants offer *no plausible basis* for suppressing Plaintiff's core, political speech." *Id.* (emphasis added). On Plaintiff's sexual assault allegation signs, Defendants conceded that the signs are not obscene as to adults, *id.* at 21, and even conceded that one of the signs is not obscene as to minors, *id.* at 28, despite which NPS had demanded the removal of that sign. The Court rejected Defendants' arguments regarding the signs being obscene as to minors as "a stretch." *Id.* at 22-23. Even setting aside the "threshold difficulty" of whether the signs in fact targeted minors

at all, the Court held that the signs are not obscene as to minors "for multiple reasons," including for the reason that the signs do not appeal to the prurient interests of minors. *Id.* at 24. The Court remarked that Defendants' argument to the contrary "borders on the absurd," as rape accusations "do not pique a shameful or morbid interest in that repugnant and criminal act," particularly as here "Plaintiff's signs unequivocally condemn 'child rapists' or those who 'raped little girls.'" *Id.* at 25. Defendants' other arguments with respect to Plaintiff's signs were premised on the "incorrect[] suggest[ion] that the NPS may exercise its permitting authority to police the content of speech and to ensure that it is not misleading—at least as to minors," which this Court labeled "most problematic[]" because "[e]mphatically, that is not the role of the government or the Court." *Id.* at 26. There was no reasonable basis in law or fact for Defendants' litigation position or NPS's actions with respect to Plaintiff's signs.

Nor was there any reasonable basis for Defendants' position on Plaintiff's 8647 flag. Defendants offered "no evidence or explanation regarding how (and why) the NPS understood Plaintiff's specific use of the term" other than the Deputy Director of the Secret Service's attestation that he "generally 'regard[s] the statement '86-47' as a potential call for acts of violence directed at the President.'" *Id.* at 32 (alteration in original) (emphasis omitted). Moreover, in the context of Plaintiff's peaceful, permitted political demonstration, the Court concluded that "it is difficult to fathom how any reasonable observer, much less the NPS (or the Secret Service), which had the benefit of a personal conversation about the flag with Plaintiff's volunteer, would view the flag as a true threat." *Id.* at 34. Despite having "ample opportunity to explain how a reasonable observer could have possibly viewed the display of the '8647' flag, in context, as a true threat to President Trump's well-being," Defendants "failed to offer any analysis or consideration of the specific context surrounding Plaintiff's display of the flag that would inform the views of a

reasonable observer." *Id.* at 36. Defendants' *post hoc* criminal incitement theory was similarly unreasonable. "[T]he uncontroverted evidence shows that Plaintiff displayed the '8647' flag to urge that Congress impeach and remove President Trump from office," and "[t]he record contains *no evidence* that a reasonable observer would have viewed the flag as an incitement to imminent violence or that Plaintiff intended to incite political violence." *Id.* at 45 (emphasis added).

There are no special circumstances here that would make an award unjust. In fact, the circumstances of this case emphatically support awarding Plaintiff its fees and costs, because Defendants' actions against Plaintiff here are part of this administration's broader pattern of seeking to suppress speech it dislikes. *See* ECF 27 (Pl. Second Mot. for Preliminary Injunction) at 1-3 (citing multiple examples of this administration's ongoing efforts to restrain unwelcome speech in violation of the First Amendment). Thus, the "special circumstances," if any, in this case counsel in favor of granting Plaintiff's fee request.

## III. Accountability NOW's Requested Fee Award Is Reasonable.

Plaintiff must show that its requested award is reasonable. *Role Models Am.*, 353 F.3d at 968. "The touchstone for attorney's fees is reasonableness, so the Court must 'exclude hours that are excessive, redundant, or otherwise unnecessary.'" *Louise Trauma Ctr. LLC v. U.S. Dep't of Homeland Sec.*, 2023 WL 3478479, at *6 (D.D.C. May 16, 2023) (citation omitted). This Court has "broad discretion in determining the reasonableness of fees and need not engage in 'nitpicking' of plaintiff's filings." *Markel*, 2026 WL 2283087, at *4 (citation omitted). Plaintiff's requested attorneys' fees award was calculated "by multiplying the hours reasonably expended by a reasonable hourly fee." *Id.*

### A. Plaintiff's Hourly Rates are Reasonable.

#### 1. Plaintiff's Market Rates are Reasonable.

For purposes of § 2412(b), counsel's market rates have been taken from the "Fitzpatrick Matrix" published by the United States Attorney's Office for the District of Columbia, available at https://www.justice.gov/usao-dc/media/1449156/dl?inline [https://perma.cc/T39K-X9AT]. That webpage represents that "[f]or matters in which a prevailing party agrees to payment pursuant to this fee matrix, the United States Attorney's Office will not request that a prevailing party offer the additional evidence that the law otherwise requires." *The Fitzpatrick Matrix*, U.S. Att'y Off. D.C. (last visited Nov. 12, 2026), https://www.justice.gov/usao-dc/media/1449156/dl?inline [https://perma.cc/T39K-X9AT].[3]

Pursuant to the Fitzpatrick Matrix, counsel's rates are as follows:

Arthur Spitzer (Yale Law School 1974) …………………………….. $998

Scott Michelman (Harvard Law School 2004) ……………………… $929

Aditi Shah (Harvard Law School 2020) …………………………….. $703

Laura Follansbee (Harvard Law School 2021) ……………………… $684

#### 2. Plaintiff's Adjusted Statutory Rates are Reasonable.

For purposes of § 2412(d), counsel's EAJA rates were calculated by adjusting the statutory rate of $125 per hour "by the increase in the Consumer Price Index ('CPI-U') for the Washington, D.C. area." *Haselwander v. McHugh*, 797 F.3d 1, 3 (D.C. Cir. 2015). In *Davis v. Kijakazi*, 2023 WL 4234656 (D.D.C. June 28, 2023), Judge Kollar-Kotelly recently awarded fees using this

[3] Undersigned counsel generally seek the rates reflected in the Adjusted Laffey Matrix, http://www.laffeymatrix.com/index.html, which are substantially higher and which better reflect the actual billing rates of comparable Washington lawyers. However, to avoid adding another litigation issue to this fee application, Plaintiff is seeking only Fitzpatrick Matrix rates, without prejudice to counsel's use of the Adjusted Laffey Matrix in other cases.

calculation and explained the methodology:

> The adjusted hourly rate itself is calculated by "multiplying the regional CPI by the amount stated in the statutory cap, and then dividing the remainder by the applicable regional CPI at the time the statutory cap was increased in 1996."

*Id.* at *2 (quoting *Mitchell-Jenkins v. Colvin*, 2016 WL 10677600, at *3 (D.D.C. March 31, 2016)). Thus,

> [a]ll of the work that Plaintiff's counsel is seeking reimbursement for occurred during 2021. . . . As such, the Court will use the regional CPI-U for 2021, which was $277.728.[1] The regional CPI at the time the statutory cap was increased in 1996 was $100. *See Porter* [*v. Astrue*], 999 F. Supp. 2d [35,] 31 [(D.D.C. 2013)]. Thus, the adjusted billable rate is $125 × $277.728 / $100 = $347.16. Therefore, the Court will apply an adjusted billable rate of $347.16.
>
> ———
>
> [1] *See Summary of annual and semi-annual indexes*, U.S. BUREAU OF LABOR STATISTICS, https://www.bls.gov/regions/mid-atlantic/data/consumerpriceindexannualandsemiannual_table.htm (last visited Jun. 21, 2023).

*Id.* Applying the same methodology to the work done in this case, in the first half of 2026, the regional CPI-U for the Washington-Arlington-Alexandria area was $330.978. *See Mid-Atlantic Information Office: Summary of annual and semi-annual indexes*, U.S. Bureau of Lab. Stat. (last visited Nov. 12, 2026), https://www.bls.gov/regions/mid-atlantic/data/consumerpriceindexannualandsemiannual_table.html [https://perma.cc/6TG3-MAB2] ("Consumer Price Indexes for All Urban Consumers (CPI-U), U.S. city average and selected metropolitan areas, Semiannual average and percent change, 2016-2026"). Thus, the adjusted billable rate is $125 × $330.978 / $100 = $413.7225, or $413.72.

**B. Plaintiff's Efforts Were Reasonable.**

While this case lasted only 68 days from the filing of the complaint to the entry of summary judgment, the litigation was intense and fast-paced. As the docket reflects, in those 68 days, there were 41 filings (not counting minute orders and the like). Plaintiff filed a complaint, a motion for

a preliminary injunction, an amended complaint, a motion for a temporary restraining order, a second motion for a preliminary injunction (which was converted to a motion for summary judgment), and multiple declarations, supplements and replies. The Court heard oral argument twice. Plaintiff's counsel's attached fee logs showing 244 billing entries detailing a total of 260.9 hours attest to the volume of work required. Declaration of Aditi Shah ("Shah Decl."), Ex. A.

The work was not duplicative or administrative, and the vast majority of it was conducted by three attorneys, and much of it by only two, as one of the three was out of the office for her wedding during the period when the second motion for a preliminary injunction (converted to a motion for summary judgement) and related filings were made. *See id.*

Because of the pressure of time and counsel's need to accommodate other commitments, different lawyers took the lead on different parts of the case. Mr. Michelman, the Legal Director of ACLU-DC, spent only 6.4 hours on the case, largely providing high-level guidance and conferring with co-counsel. Shah Decl. ¶ 7. Mr. Spitzer was the principal drafter of the complaint and the TRO motion and argued that motion. Ms. Shah and Ms. Follansbee shared the drafting of the first motion for a preliminary injunction, with Mr. Spitzer editing; Ms. Shah was the principal drafter of the second motion for a preliminary injunction, with Mr. Spitzer editing, and she argued that motion. *See id.* ¶ 4; *see also id.* Ex. A. Nearly all of the six declarations submitted by Anita Carey on behalf of the Plaintiff were drafted under severe time constraints; whichever lawyers were available worked with Ms. Carey on them. Indeed, this entire litigation was a tag-team effort, and it was necessary for each of the lawyers to keep abreast of developments and be ready to pitch in when needed as a fact-gatherer, a drafter, an editor, or a client counselor. *See id.* Ex. A. For just one example, Mr. Spitzer spent several hours during the preparation of the reply brief canvassing the U.S. Code, the Code of Federal Regulations, the D.C. Code, and D.C. regulations, looking for

any obscenity law that Plaintiff's signs might have violated so as to give Defendants grounds to assert that Plaintiff had violated the condition of their permit requiring them to obey the law. No such statute or regulation could be found (or was found by Defendants). *See* ECF 34 (Plaintiff's Reply in Support of Renewed Motion For a Preliminary Injunction) Part I.A.1. ("There is no obscenity law applicable to Plaintiff's signs.").

The total of 260.9 hours spent by all of Plaintiff's counsel thus reflects time that was necessarily spent on this case, and is therefore reasonable.

**C. Plaintiff's Fee Claim is Reasonable.**

Multiplying Plaintiff's counsel's reasonable hourly rates by the reasonable hours they expended results in the following claim under 28 U.S.C. § 2412(b):

| | |
|---|---|
| Arthur Spitzer: 91.8 hours x $998/hr = | $91,616.40 |
| Scott Michelman: 6.4 hours x $929/hr = | $5,945.60 |
| Aditi Shah: 111.4 hours x $703/hr = | $78,314.20 |
| Laura Follansbee: 51.3 hours x $684/hr = | $35,089.20 |
| **Total** | **$210,965.40** |

Alternatively, should the Court determine to award fees under 28 U.S.C. § 2412(d), multiplying Plaintiff's counsel's adjusted EAJA rates by their reasonable hours results in the following claim:

| | |
|---|---|
| Arthur Spitzer: 91.8 hours x $413.72/hr = | $37,979.50 |
| Scott Michelman: 6.4 hours x $413.72/hr = | $2,647.81 |
| Aditi Shah: 111.4 hours x $413.72/hr = | $46,088.41 |
| Laura Follansbee: 51.3 hours x $413.72/hr = | $21,223.84 |
| **Total** | **$107,939.56** |

Additionally, the Court should award Plaintiff its civil action filing fee of $405, *see* Apr. 23, 2026 Docket Entry "Payment for 1 Complaint. ($405; Receipt number ADCDC-12378009)), and the $11 it posted in bonds to effectuate the TRO, *see* June 1, 2026 Docket Entry "Deposit of Bond Payment in the amount of $1.00, Receipt Number 211962"; June 30, 2026 Docket Entry "Deposit of Funds into the Court's Registry in the amount of $10.00, Receipt Number 212140."

The total amounts are therefore $211,381.40 and $108,355.56, respectively.

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiff's motion and award Plaintiff $211,381.40 in fees and costs under 28 U.S.C. § 2412(b). Alternatively, the Court should award Plaintiff $108,355.56 in fees and costs under 28 U.S.C. § 2412(d)(1)(A).

November 12, 2026

Respectfully submitted,

*/s/ Aditi Shah*
Aditi Shah (D.C. Bar No. 90033136)
Arthur B. Spitzer (D.C. Bar No. 235960)
Laura K. Follansbee (D.C. Bar No. 1782046)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
OF THE DISTRICT OF COLUMBIA
529 14th Street, N.W., Suite 420
Washington, D.C. 20045
(202) 457-0800
ashah@acludc.org
aspitzer@acludc.org
lfollansbee@acludc.org

*Counsel for Plaintiff*[*]

[*] Counsel wish to express their appreciation to ACLU-D.C. legal fellows Lauren Pelosi and Sarah Al-Shalash and paralegal Ameerah Adetoro for their assistance in the preparation of this motion.